1  Barrett S. Litt, SBN 45527
   E-Mail: blitt@kmbllaw.com
2  David S. McLane, SBN 124952
   E-Mail: dmclane@kmbllaw.com
3  Ronald O. Kaye, SBN 145051
   E-Mail: rok@kmbllaw.com
4  Kaye, McLane, Bednarski & Litt, LLP
   234 East Colorado Boulevard, Suite 230
5  Pasadena, California 91101
   Telephone: 626-844-7660
6  Facsimile: 626-844-7670
7
8  Melissa Goodman, SBN 289464
   E-Mail: MGoodman@aclusocal.org
9  Brendan M. Hamme, SBN 285293
   E-Mail: BHamme@aclusocal.org
10 Peter J. Eliasberg, SBN 189110
   E-Mail: PEliasberg@aclusocal.org
11 ACLU Foundation of Southern CA
   1313 West 8th Street
12 Los Angeles, California 90017
   Telephone: 213-977-9500
13 Facsimile: 213-977-5299
14

15              UNITED STATES DISTRICT COURT
16              CENTRAL DISTRICT OF CALIFORNIA
17

| | |
|---|---|
| DAN MCKIBBEN, PEDRO GUZMAN, NICK OU, SEAN LINT, TIMOTHY WALKER, ILICH VARGAS, WILLIAM KENNEDY, JONATHAN ROBERTSON, STEVE aka LYNN PRICE, BRYAN BAGWELL, CHRISTOPHER CRAWFORD, FREDERICK CROCKAN, TAHEASH WHITE, MICHAEL aka MADISON HATFIELD, and KEVIN aka VERONICA PRATT, all individually and as class representatives, <br><br> Plaintiffs, <br><br> vs. <br><br> (continued on next page) | Case No. <br><br> CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF <br><br> 1. 42 U.S.C. §1983 (Equal Protection) <br> 2. Ca. Civ. Code §52.1 <br> 3. Cal Civ. Code §815.6 <br> 4. Cal. Const. Art. I, §7 and Cal. Govt. Code §11135(a) (Injunctive Relief Only) <br><br> DEMAND FOR JURY TRIAL |

1   SHERIFF JOHN MCMAHON, individually    )
    and in his official capacity; GREG    )
2   GARLAND, individually and in his official    )
    capacity; JEFF ROSE, individually and in his    )
3   official capacity; SARGEANT  JAMESMAHAN,    )
    individually and in his official capacity;    )
4   CORPORAL CASTILLAS, individually and in his    )
    official capacity; COUNTY OF SAN    )
5   BERNARDINO, a governmental entity; SAN    )
    BERNARDINO COUNTY SHERIFF'S    )
6   DEPARTMENT, a California public entity;    )
    and DOES 1 through 10,    )
7                                                              )
8                                                              )
                       Defendants.    )
9   _____    )

10

11   **I.    INTRODUCTION AND GENERAL ALLEGATIONS**

12          1.    San Bernardino County Jail (hereafter "the Jail") is run by the San

13   Bernardino County Sheriff's Department (hereafter "SBCSD"). The Jail maintains

14   an "Alternative Lifestyle Tank" (hereafter "ALT") at the West Valley Detention

15   Center (hereafter "WVDC") to which all inmates who self-identify as gay,

16   bisexual, and/or transgender (hereinafter "GBT inmates") are automatically

17   transferred and isolated from the general population.  References in this Complaint

18   to "GBT" inmates refer to such inmates housed in the ALT.   The WVDC is the

19   only SBCSD jail facility that houses self-identified GBT inmates.

20          2.    Plaintiffs, and the classes they seek to represent, bring this action to

21   challenge the systematic discrimination and denial of equal treatment experienced

22   by GBT inmates at the WVDC. GBT inmates are not given equal access to

23   opportunities to reduce their sentences, services, programs and facilities, and are

24   often treated in an abusive and neglectful manner. In short, GBT inmates at

25   WVDC serve longer sentences and endure substantially worse conditions of

26   confinement simply because they are gay, bisexual or transgender. The conditions,

27   restrictions, denials of access and opportunities, and unequal treatment for GBT

28   inmates are the same regardless of whether one is gay, bisexual or transgender.

1

3.     One of the major purposes of sentencing is rehabilitation. Yet, GBT inmates have no access to drug treatment, education and work programs designed to help inmates succeed in society when released. To the extent they may have limited access on rare occasions, it is substantially less than that available to non-GBT inmates and wholly at the arbitrary whim of WVDC officials. Thus, not only are GBT inmates denied equal opportunities for rehabilitation inside jail, they suffer more on the outside since they are not provided the tools to increase their odds of rehabilitation. Unlike the male, non-GBT general population, sentenced GBT inmates at WVDC are generally not allowed to participate in the inmate work program, and, to the extent they may occasionally have limited access, it is substantially less than that available to non-GBT inmates. GBT inmates serve longer sentences than non-GBT inmates because they cannot enjoy the sentence-reduction benefits that come with work credits. GBT inmates also do not get the privileges that come with working, which include day-long access to the day room, and getting a longer amount of time to spend with visitors. GBT inmates cannot be trustees and, in the event they may be, are denied the full benefits afforded other trustees.

4.     GBT inmates are allowed substantially less time outside their cells on a daily basis and given substantially less access to recreational and other activities than both non-GBT general population inmates and non-GBT inmates placed in other forms of special housing. They are living in a locked down status without any security justification.  GBT inmates who are housed in the ALT are generally locked inside their cells for approximately 22 and one-half hours or more a day, regardless of their security classification. Time out of cells for ALT inmates during the two years prior to this lawsuit was, for a long period, only 45 minutes to an hour a day. Recently, in response to Plaintiffs' notice of potential litigation, Plaintiffs' investigation of  Defendants' violations of Plaintiffs' rights,  Plaintiffs' counsel's letter to WVDC and Plaintiffs' 910 claims, there has been some increase,

but it is still far less than time afforded non-GBT inmates, who generally are housed in dorms where they are allowed out of their cells all day, or in cells where they are allowed out of their cells for longer periods of time.  There is no legitimate security justification to deny GBT inmates equal time out of their cells, particularly given that they have access to their own segregated day room, which could protect their security and allow them greater time out of their cells. Moreover, when a GBT inmate in the ALT causes a disturbance, all ALT inmates get locked down in their cells all day whereas in general population only the inmates involved in the disturbance are locked down.

5.      Unlike non-GBT general population inmates, GBT inmates are not allowed to access religious services outside their unit, or religious services inside the unit, including chaplains and bibles. To the extent they may occasionally have limited access, it is substantially less than that available to non-GBT inmates and wholly at the arbitrary whim of WVDC officials.

6.      Unlike non-GBT general population inmates, GBT inmates are not allowed to access educational programming such as occupational classes, vocational classes, and GED classes. GBT inmates are not allowed to participate in educational programs provided to general population inmates. They are also not provided with separate educational programs.

7.      Unlike non-GBT general population inmates, GBT inmates do not have access to drug rehabilitation programs. This is true even if GBT inmates are sentenced to serve their time in a rehabilitation program. GBT inmates cannot earn time off their sentences for participating in programs such as "Inroads" at Glen Helen, as GBT inmates cannot be housed at Glen Helen. Thus, GBT inmates serve longer sentences than non-GBT inmates.

8.      Plaintiffs are informed and believe that, unlike the non-GBT population inmates, due to unwarranted dislike by SBCSD employees and an unwarranted fear of AIDS, deputies generally do not conduct the required safety

3

checks for GBT cells mandated by Title 15, which are required to ensure inmate safety.

9.     GBT inmates are regularly subjected to abusive conduct and derogatory name-calling by SBCSD deputies based on their sexual orientation and gender identity.

10.     Some GBT inmates have been retaliated against by SBCSD deputies when they have complained about conditions in the ALT, and the discriminatory treatment of GBT inmates.

11.     The foregoing conditions of confinement violate Plaintiffs' rights to equal protection of the laws under both Article I §7 of the California Constitution and the Fourteenth Amendment to the United States Constitution, and related statutes incorporating, *inter alia*, equal protection standards. Although jails have an obligation to protect the safety of inmates who may be subject to victimization and thus can, when appropriate, place such inmates in some form of protective custody, such placements are not a permissible basis upon which to subject GBT inmates to significantly worse conditions, deprive them of access to programs and privileges, or subject to them to abuse based on their sexual orientation or their gender identity.

12.     This action is brought independently under the California Constitution and California statutes incorporating those provisions directly or indirectly, as well as under the United States Constitution through 42 U.S.C. §1983. Plaintiffs emphasize the independent character of the California claims because the California Supreme Court has expressly held that differential treatment of gay people is subject to strict constitutional scrutiny, an issue not yet squarely addressed by the United States Supreme Court. In addition, California claims are not subject to the requirements, limitations and restrictions of the Prison Litigation Reform Act ("PLRA"). Plaintiffs contend that the conduct alleged herein is unconstitutional whatever level of scrutiny is employed – whether it is strict

4

scrutiny, heightened scrutiny or rational basis scrutiny, for there is no legitimate penological reason to treat GBT inmates worse than non-GBT inmates just because of their sexual orientation or gender identity.

13.    Plaintiffs bring this action as a class action and seek injunctive relief and damages under both state and federal law.

**II.    JURISDICTION AND VENUE**

14.    Plaintiffs present federal claims for relief under 42 U.S.C. §1983. Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343. Plaintiffs' state law claims are so related to their federal law claims that they form part of the same case or controversy.  Accordingly, supplemental jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. §1367.

15.    Plaintiffs' claims arise out of acts of the San Bernardino County Sheriff's Department in the County of San Bernardino, State of California. Accordingly, venue is proper within the Eastern Division of the Central District of California.

**III.    PARTIES**

*A.    Plaintiffs*

16.    **Class Representatives No Longer In Custody**:  Plaintiffs Dan McKibben, Peter Guzman, Nick Ruttana Ou, and Sean Lint were, but are not presently, incarcerated at WVDC, held in the ALT, and subjected to unequal treatment and access to services and programs, and other violations of law as is elaborated further on in this Complaint. The unequal treatment and access and other violations of law were based on Plaintiffs' sexual orientation or gender identity, and their classification as GBT inmates. The four are not prisoners within the meaning of the Prison Litigation Reform Act ("PLRA") at the time of the filing of this Complaint. They seek to act as class representatives for the federal damages class – they are the only representatives of this class – and are also state damages

5

1  class representatives as they have filed and been denied state administrative 910

2  claims. They are at times referred to as the "Federal Damages Class

3  Representatives." They are also among the California Damages Class

4  Representatives.

5      17.   **Class Representatives In Custody At WVDC**:  Plaintiffs Timothy

6  Walker, Ilich Vargas, William Kennedy, Jonathan Robertson, Steve aka Lynn

7  Price[1], and, Michael aka Madison Hatfield are currently incarcerated at WVDC.

8  They have been subjected, and will continue to be subjected, to unequal treatment

9  and access to services and programs, and other violations of law as is elaborated in

10 this Complaint. The unequal treatment, unequal access and other violations of law

11 elaborated in this Complaint were and are based on Plaintiffs' sexual orientation or

12 gender identity, and their classification as GBT inmates.

13      a. Plaintiffs Walker, Vargas, Kennedy, Robertson, Price and

14         Hatfield are the only class representatives for the state

15         injunctive relief classes and are at times referred to as the

16         "California Injunctive Relief Class Representatives."

17      b. Plaintiffs Walker, Vargas, Kennedy, Robertson, Price and

18         Hatfield are also among the "California Class Damages

19         Representatives" because either they have filed an

20         administrative 910 claims on behalf of all GBT inmates at the

21         WVDC which have been rejected, or are covered by such

22         claims because all 910 claims were filed as class claims.

23      c. Walker and Vargas (but **not** Kennedy, Robertson, Price and

24         Hatfield) are also the only class representatives for the federal

[1]Steve Price, aka Lynn Price, Michael Hatfield aka Madison Hatfield and Kevin aka Veronica Pratt, are transgender persons who, out of respect and preference, will be referred to as Lynn Price, Madison Hatfield and Veronica Pratt, and with use of the pronoun "she" throughout this Complaint.

6

injunctive relief class and are at times referred to as the "Federal Injunctive Relief Class Representatives."

18. **Class Representatives In Custody At Facilities Other Than WVDC:** Plaintiffs Bryan Bagwell, Christopher Crawford, Fredrick Crockan, Taheash White, and Kevin aka Veronica Pratt, are currently incarcerated in different County or California Department of Corrections and Rehabilitation facilities, and have filed and been denied state administrative 910 claims. They are *solely* California damages class representatives. Every named class representative filed an administrative 910 claim on behalf of all GBT inmates at the WVDC which has been rejected, or are covered by such claims because all 910 claims were filed as class claims. They are among the class representatives for the California damages class. The "California Damages Class Representatives" are at times collectively referred to by that name.

19. Different and overlapping Plaintiffs are acting as representatives for different classes. The classes and class representatives identified in this Complaint are: 1) Federal Damages Class (McKibben, Guzman, Ou and Lint); 2) California Damages Class (McKibben, Guzman, Ou, Lint, Walker, Vargas, Kennedy, Robertson, Price, Bagwell, Crawford, Crockan, White, Hatfield and Pratt); 3) Federal Injunctive Relief Class (Walker, Vargas) and 4) California Injunctive Relief Class (Walker, Vargas, Kennedy, Robertson, Price, and Hatfield). While the various class representatives overlap in certain respects, they differ as follows:

a. The Federal Damages Class representatives are individuals who were, within the relevant time periods, GBT inmates housed in the ALT, but are not currently in custody in any detention facility, jail or prison and are not "prisoners" within the meaning of the PLRA. The Federal Damages Class extends to all former or present GBT inmates detained at WVDC within two years prior to the filing of this lawsuit, and extending into

7

the future until such time as the unlawful conduct alleged herein
ceases or resolution of this case.

b.    The California Damages Class representatives are individuals
who are or were, within the relevant time periods, GBT inmates
housed in the ALT. Unlike the Federal Damages Class
representatives, the California Damages Class representatives
include individuals who are currently "prisoners" within the
meaning of the PLRA, which statute does not apply to their
claims under California law. All such class representatives were
in custody at WVDC on or after October 9, 2013 (six months
prior to the filing by Veronica Pratt of a Govt. Code § 910
claim on behalf of all similarly situated individuals on April 9,
2014, which makes the beginning of the California class
damages period October 9, 2013). The California Damages
Class extends to all former or present GBT inmates detained at
WVDC beginning October 9, 2013, and extending into the
future until such time as the unlawful conduct alleged herein
ceases or resolution of this case.

c.    The Federal Injunctive Relief Class representatives are
individuals who are currently in custody at WVDC, confined in
the ALT, who have exhausted or attempted to exhaust, or could
not exhaust because they were prevented through the conduct of
the SBCSD from exhausting their remedies within the SBCSD.

d.    The California Injunctive Relief Class representatives are
individuals who are currently in custody at WVDC, and
confined in the ALT.

20.    The following chart identifies each Named Plaintiff, what class or
classes each seeks to represent, and their current inmate status.

8

| NAME | CLASS | INMATE STATUS |
|------|-------|---------------|
| Dan McKibben | Federal and California Damages Classes | Not Currently Incarcerated |
| Pedro Guzman | Federal and California Damages Class | Not Currently Incarcerated |
| Nick Ou | Federal and California Damages Class | Not Currently Incarcerated |
| Sean Lint | Federal and California Damages Class | Not Currently Incarcerated |
| Tim Walker | Federal and California Injunctive Relief Classes, California Damages Class | Inmate at WVDC |
| Ilich Vargas | Federal and California Injunctive Relief Classes, California Damages Class | Inmate at WVDC |
| William Kennedy | California Injunctive Relief Class,California Damages Class | Inmate at WVDC |
| Jonathan Robertson | California Injunctive Relief Class,California Damages Class | Inmate at WVDC |
| Steve Price, aka Lynn Price | California Injunctive Relief Class,California Damages Class | Inmate at WVDC |
| Christopher Crawford | California Damages Class | Inmate at Valley State Prison |
| Kevin Pratt, aka Veronica Pratt | California Damages Class | Inmate at Riverside County Jail |
| Bryan Bagwell | California Damages Class | Inmate at C.I.M., Chino |
| Fredrick Crockan | California Damages Class | Inmate in North Kern State Prison |

9

| NAME | CLASS | INMATE STATUS |
|---|---|---|
| Taheash White | California Damages Class | Inmate at C.I.M., Chino |
| Michael Hatfield, aka Madison Hatfield | California Injunctive Relief Class, California Damages Class | Inmate at WVDC |

21.    All Plaintiffs identified in the foregoing paragraphs have filed 910 Administrative Claims with the State and County both on an individual basis and as class representatives, or as set forth above, are included in the 910 claims because all 910 claims were filed as class claims to include all GBT persons at the WVDC. All 910 claims have been rejected by both the County of San Bernardino and the State of California as of the date of filing of this Complaint.

B.    *Defendants*

22.    Defendant County of San Bernardino (hereafter "County") is a public entity organized and existing under the laws of the State of California. Defendant San Bernardino County Sheriff's Department is a public entity within the meaning of California law, and is a County agency. These Defendants are sued in their own right for a County and/or SBCSD policy, practice or custom that caused Plaintiffs' injuries in violation of one or more federal constitutional guarantees under 42 U.S.C. §1983, and on Plaintiffs' state law claims for injunctive relief based on violations of mandatory duties under California Government Code §815.6, the state constitutional provisions identified above and Civil Code §52.1.

23.    Defendant John McMahon (hereafter "McMahon") is the Sheriff of San Bernardino County, and is the policy maker for the SBCSD. He is sued in his official and individual capacities for both injunctive relief and damages under both California and Federal law.

24.     Defendant Greg Garland (hereafter "Garland") is the Deputy Chief in charge of the Corrections Bureau which oversees all San Bernardino County jail facilities, including the WVDC, Central, Glen Helen and Adelanto facilities. Garland is sued in his individual capacity for damages only under both California and Federal law.

25.     Defendant Jeff Rose (hereafter "Rose") is a deputy sheriff holding the rank of captain. He is the commanding officer of WVDC. Rose is sued in his individual capacity for damages only under both California and Federal law.

26.     Defendant Sergeant James Mahan  is a deputy sheriff holding the rank of sergeant. He is involved in handling grievances by GBT persons in the ALT at WVDC, and is responsible for determining programs to which GBT inmates are eligible. Mahan is sued in his individual capacity for damages only under both California and Federal law.

27.     Defendant Castillas is a deputy sheriff holding the rank of corporal. He is in charge of classification and placement of GBT inmates in the ALT, and is involved in reviewing grievances by inmates in the ALT. Castillas is sued in his individual capacity for damages only under both California and Federal law.

28.     All Defendants' discriminatory conduct was intentional, and/or was done with reckless disregard for, and/or deliberate indifference toward, Plaintiffs' rights.

29.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will give notice of this Complaint, and of one or more DOES' true names and capacities, when ascertained.

30.     Plaintiffs are informed and believe, and based thereon allege, that Defendants DOES 1 through 5 are responsible in some manner for the damages and injuries hereinafter complained of.

11

31.    DOES 6 through 10 (hereinafter collectively referred to as "SBCSD
Supervisory Defendants") were and/or are now responsible for the SBCSD jails.
Among other duties, they are responsible for the training, supervision, control,
assignment and discipline of both sworn and civilian personnel of the SBCSD and
County who work in, operate, administer and manage the jails, and for the
formulation, promulgation, adoption, application, administration and enforcement
of the policies, rules, regulations and practices of the SBCSD jails.

32.    Upon information and belief, Plaintiffs further allege that, at all times
relevant herein, Defendants participated in, approved, and/or ratified the
unconstitutional or illegal acts that occurred within SBCSD jails which are
complained of herein.

33.    Plaintiffs are informed and believe, and thereupon allege that, at all
times relevant herein, the individual Defendants, and each of them, were the
agents, servants and employees of their respective employers (Defendants SBCSD
and the County) and were acting at all times within the scope of their agency and
employment with the knowledge and consent of their principals and employers. At
all times herein, Defendants, and each of them, were acting under the color of state
law.

## IV.    COMMON FACTUAL ALLEGATIONS

34.    Inmates in SBCSD custody who self-identify as GBT during the
booking process are automatically transferred to the ALT at WVDC. The ALT is
currently located in Unit 1F and consists of 16 cells, each of which house two
inmates, that are isolated from the general population dorms and cells at WVDC.
There are two tiers or levels – the upper tier and the lower tier – each of which has
8 cells. The ALT has its own day room. The ALT is closed off from other inmates.
GBT inmates are denied the opportunity to participate in programs that are offered
to non-GBT inmates as described below, are not allowed to participate in the same
rehabilitation programs as offered non-GBT inmates, are not allowed the same

opportunities to earn time off their sentences as non-GBT inmates, and are not allowed equal time out of their cells as non-GBT inmates.

35.    For most of the past two years, GBT inmates housed in the ALT were locked inside their cells for approximately 23 hours or more a day, regardless of their level of custody. Prior to approximately March 2014, SBCSD allowed GBT inmates to exit their cell for only 45 minutes to 1 hour per day. Inmates in general population during this entire period either lived in dormitory style units, where they are not confined to cells at all, or lived in cells in which they were generally allowed out of their cells most non-sleeping hours. Non-GBT inmates placed in special housing due to their status, e.g. informants and gang members, were generally let out of their cells three hours or more daily. Thus, GBT inmates' cell confinement was dramatically different and more limited than non-GBT inmates in special housing during this period. After being notified on March 28, 2014 that their housing of GBT inmates was being investigated, after the initial 910 class claims were filed on April 9, 2014, and after being notified by Plaintiffs' counsel that its GBT practices were discriminatory on May 2, 2014, SBCSD began to allow GBT inmates living on the top tier of the ALT out of their cells for about an hour to an hour and a half a day, and to continue to allow GBT inmates living on the bottom tier approximately forty five minutes out of their cells.

36.    Defendants do not provide GBT inmates time out of their cells equal to general population inmates, who are generally housed in dorm settings, and allowed outside cell access all day.

37.    Unlike inmates in general population, ALT inmates get locked down in their cells all day when any GBT inmates cause disturbances, whereas in general population only the inmates involved in the disturbance are locked down.

38.    The increased lock down for GBT inmates does not further any legitimate penological purpose, and there is no reasonable necessity for the differential treatment. Up to 32 GBT inmates can be housed in the ALT cells, and

there are 5 tables that can seat 32 inmates in the ALT day room. Thus, the GBT inmates could be let out of their cells all day without compromising their safety. They also could be housed dormitory style in a unit that would protect their safety, or other SBCSD facilities that could safely afford them equal time out of their cells, including Adelanto, Glen Helen and Central facilities.

39.     On information and belief, SBCSD generally prohibits GBT inmates who have been sentenced and are housed in the ALT from participating in the inmate work program. Sentenced inmates can receive 1 day of work time credit for each 4 days they do not refuse to satisfactorily perform labor as assigned by the sheriff. Cal. Penal Code §4019. Additionally, by depriving them of jobs, GBT inmates are denied access to the day room all day like non-GBT inmates; they do not get increased visiting time of 30 to 45 minutes like non-GBT inmates (but rather receive only the regular 20 minutes); and they do not have the opportunity or ability to go beyond their immediate area like non-GBT inmates who work. Consequently, sentenced GBT inmates serve longer sentences than non-GBT inmates because SBCSD denies them access to work assignments. In contrast, SBCSD permits sentenced, non-GBT inmates in general population to receive such credit. Thus, sentenced non-GBT inmates receive work time credits, whereas GBT inmates do not. Separate GBT crews could be created and work together as a separate crew (e.g., in the law library, work crews outside the jail, work in the kitchen or laundry all in one shift, or as trustees in the ALT). They could also work with non-GBT inmates when it is safe to do so, as there is no legitimate penological reason categorically to forbid them from working together. There are numerous occasions when GBT inmates are together with non-GBT inmates such as in the medical unit, in holding tanks prior to being transported to court, and when being transported back and forth to court.

40.     On information and belief, and only in response to Plaintiffs' Counsel's letters, Plaintiffs' investigation into the conditions of the ALT at the

14

WVDC, Plaintiffs' 910 claims and the threat of a separate lawsuit by Plaintiff
Guzman, SBCSD has just recently begun allowing a single GBT inmate at a time
to work.  Plaintiff Guzman and, after his release, class member Robert Torres,
were permitted to work in the law library.  They were and are, however, denied
work credit and additional privileges that other non-GBT workers receive, such as
day-long access to the day room, and getting a longer amount of time to spend with
visitors.  As a result, even the single GBT inmate who is allowed to work is treated
in a discriminatory manner and forced to serve a longer sentence than their
similarly situated non-GBT counterparts.

41.    On information and belief, SBCSD prohibits GBT inmates from being
trustees while non-GBT inmates are allowed to serve as trustees. Both pretrial and
sentenced inmates may act as trustees. Trustees are let out of their cells all day,
have longer visits, and get more time outside. GBT inmates cannot even be trustees
in the ALT. There is no legitimate penological purpose served by not allowing
GBT inmates to serve as trustees since they interact with non-GBT inmates, as set
forth in paragraph above. Even non-GBT inmates who are charged with violent
crimes, including murder, are allowed to be trustees for the ALT, including one
inmate charged with triple murder, two with double murder, and one with
manslaughter. Yet GBT inmates may not be so assigned.

42.    On information and belief, SBCSD refuses to provide educational
programs or training to GBT inmates at WVDC. SBCSD prohibits GBT inmates
from participating in regional occupational classes, vocational educational classes,
and GED classes along with the general population. Non-GBT inmates have access
to such educational and other programming. SBCSD also does not provide
educational or other programs separately for GBT inmates.

43.    On information and belief, SBCSD denies GBT inmates access to
religious services. SBCSD prohibits GBT inmates from attending congregational
prayer with other inmates or having group services inside the ALT, denies them

15

access to bibles, and prevents chaplains from visiting their cells. In contrast, non-GBT inmates have access to religious services and materials.

44. On information and belief, SBCSD provides GBT inmates with unequal access to drug rehabilitation programs. GBT inmates who request to participate in the "INROADS" drug rehabilitation program at the Glen Helen Rehabilitation Center are denied access because they cannot be housed there. In contrast, SBCSD transfers non-GBT inmates to the "INROADS" drug treatment program. GBT inmates who were sent to Glen Helen for drug treatment were sent back to the WVDC once it was learned by sheriff's officials at Glen Helen they were GBT. On information and belief GBT inmates are sometimes given access instead to a self-study, "journaling," rehabilitation program. This program is nothing like the full rehabilitation program at Glen Helen and, even if it were comparable, GBT inmates in the self-study program do not earn time off their sentences like inmates in the Glen Helen program.

45. On information and belief, SBCSD deputies regularly fail to perform hourly safety checks or walk-throughs in the ALT as required by Title 15 Code of Regulations. Plaintiffs are informed and believe that SBCSD deputies intentionally avoid going near the cells in the ALT. In contrast, deputies conduct regular walk-throughs of non-GBT inmates' cells and the general population dorms.

46. GBT inmates at the WVDC are subjected to a pattern of harassing behavior by SBCSD deputies, which includes derogatory name calling, neglect, and humiliation. Deputies call GBT inmates "faggots," "sissies," "bitches," and "freak shows," in addition to other derogatory and demeaning names, on a regular basis.

47. On information and belief, GBT inmates housed in the ALT also receive harsher punishments than non-GBT inmates in general population. SBCSD deputies discipline inmates housed in the ALT with group punishment, but discipline non-GBT inmates in general population on an individual basis. SBCSD deputies use scare tactics as disciplinary measures by placing GBT inmates who

16

are at risk of physical or sexual assault in cells with intimidating non-GBT inmates.

48.    On information and belief, SBCSD deputies have retaliated against GBT inmates who have complained about the discriminatory treatment and refused to then move to general population out of concern for their safety.  On April 30, 2014, Defendant Castillas told class representatives Christopher Crawford, Bryan Bagwell, Fredrick Crockan, Madison Hatfield, Timothy Walker and class member Larry Meyer that they now had the option to live in general population. Crawford, Walker and Crockan had already filed 910 claims, while Bagwell and Meyer had already received correspondence from Plaintiffs' counsel and a questionnaire concerning the treatment of GBT inmates at the WVDC. The above-mentioned inmates refused to transfer to the general population out of concern for their safety and well-being, and because they felt they would be forced to hide their sexual orientation or gender identity. On information and belief, the jail's rationale for housing GBT inmates in the ALT is inmate safety, and the offer to place them in the general population as identified GBT inmates was a cynical attempt to defend against the Plaintiffs' claims of discrimination and to force GBT inmates to the Hobson's choice of exposure to extreme violence in the general population, or acceptance of the discrimination against GBT inmates housed in the ALT. On information and belief, SBCSD then retaliated against these six inmates by giving them less time outside of their cells.

49.    In addition to filing Govt. Code §910 claims, Plaintiffs have engaged in pre-litigation settlement efforts. Specifically, Plaintiffs sent Defendants a letter consisting of the aforementioned complaints, and asked that Defendants immediately cease and desist their unlawful practices. Defendants declined to attempt to resolve Plaintiffs' claims without the need for litigation, and have denied Plaintiffs' administrative 910 claims that have been filed. To date, and to Plaintiffs' knowledge, Defendants continue to engage in the unlawful practices detailed in this complaint.

50.     Defendants will continue their aforementioned policies and practices unless enjoined and restrained by the Court. Without injunctive relief applicable to the class as a whole, the class members will suffer irreparable harm for which there is no adequate remedy at law in that their constitutional and statutory rights will be systematically violated. Without the intervention of this Court, Defendants will continue these unconstitutional practices.

51.     Defendants have the resources and money to properly house and provide programmatic access to GBT inmates in a constitutional manner that does not violate their equal protection rights. On or about February 6, 2014, the SBCSD opened the Adelanto Jail facility, a state-of-the-art facility that cost the County $145.4 million. Adelanto opened with over 200 available beds, yet Defendants continue to house the GBT inmates in a dehumanizing and discriminatory manner.

52.     The differential treatment outlined in this Complaint serves neither a legitimate compelling interest, nor a substantial state interest, nor is it narrowly tailored to serve any such interests.

53.     In engaging in the conduct alleged in this Complaint, Defendants, and each of them, acted with a discriminatory intent toward GBT inmates, and/or with deliberate indifference to, or a reckless disregard for the rights of GBT inmates.

54.     As a result of the discriminatory conduct alleged herein, Plaintiffs have suffered damages, including emotional distress damages and pain and suffering, in amounts to be determined at trial.

55.     In engaging in the conduct alleged in this Complaint, Defendants, and each of them, acted maliciously, fraudulently and oppressively, and otherwise in a manner entitling Plaintiffs to an award of punitive damages.

V.    **CLAIMS OF CLASS REPRESENTATIVES**

A.    *TIMOTHY WALKER*

56.     Timothy Walker was arrested by SBCSD on or around April 8, 2013. Upon self-identifying as gay during the booking process, he was transferred to the

18

1    ALT at the WVDC. He is currently housed there, and will be housed there for the

2    foreseeable future.

3        57.    From approximately April 8, 2013 to the present, Mr. Walker has

4    been housed in the ALT, first located in Unit 12A and currently in Unit 1F. During

5    that time, Mr. Walker was let out of his cell, on average, approximately 45 minutes

6    to an hour and one-half a day. Although some inmates on the top tier, including

7    Walker, have very recently been given up to three hours of time out of cell in

8    response to Plaintiffs' Counsel's letters and the threat of litigation, they are still

9    subject to discriminatory treatment compared to the time out of cell provided to

10   non-GBT inmates, as discussed above. He, along with the other ALT inmates, has

11   been required to eat meals in his cell, unlike non-GBT inmates.

12       58.    Unlike other non-GBT inmates in the general population, as an inmate

13   in the ALT Walker was not permitted to work. Walker requested participation in

14   the work program by submitting official Inmate Request Slips on June 4, 2013,

15   July 1, 2013, and July 25, 2013. SBCSD denied each request by stamping his

16   requests slips "DENIED" or "NOTHING AVAILABLE AT THIS TIME". On

17   information and belief, positions were, in fact, available even when the denial

18   stated that nothing was available. Thus, Mr. Walker could not earn money and

19   work credit, and will serve a longer sentence than if he had been able to work and

20   receive early release credits. See Cal. Penal Code §4019.

21       59.    Recently, in response to grievances he filed in early September 2014

22   and notice of this pending lawsuit, Walker was told he was eligible to obtain a job.

23   Plaintiffs are informed and believe that, to date, Mr. Walker has not been given a

24   job. Out of the hundreds of inmates housed in the ALT since Mr. Walker has been

25   there, only two others have had jobs. Pedro Guzman, who threatened legal action,

26   was allowed to work in the library, and Robert Torres, who replaced Mr. Guzman

27   when he was released. No others have been permitted to work.

28       60.    Nor has Mr. Walker been permitted to be a trustee in the ALT.

     Plaintiffs are informed and believe that the trustees who work in the ALT--

1   bringing food to the cells of inmates housed in the ALT-- are non-GBT pre-trial

2   inmates, and in the past have been awaiting trial on serious charges such as murder

3   and manslaughter. Yet, they have been allowed to work as trustees while the GBT

4   inmates have not.

5       61.    Mr. Walker properly filed grievances on June 28, 2013 and May 15,

6   2014 regarding SBCSD's policy of not allowing GBT inmates to participate in the

7   inmate work program. SBCSD responded on June 26, 2013, concluding that

8   Walker's allegations were unfounded because he was involved in a mutual combat

9   fight, and thus ineligible for work assignment on that basis. On June 27, 2013, Mr.

10  Walker filed a grievance appeal disagreeing with these findings, stating that he was

11  disciplined for the fight prior to receiving his sentence and before he could even be

12  considered for work assignment, and thus should have been eligible for a work

13  assignment. SBCSD responded on July 3, 2013 concluding that, "regardless of

14  when Mr. Walker received his discipline, that discipline automatically excludes

15  him from becoming an inmate worker at any time while in Sheriff's custody per

16  Detention/Correction's policy." Plaintiffs are informed and believe that SBCSD's

17  policy prohibiting Mr. Walker from work assignment is pretextual because straight

18  inmates have participated in the work program even though they were disciplined

19  for fighting. Moreover, in a vague manner, he was recently told by Defendant

20  Mahan that he was eligible for a job, though he has not been given one.  Because

21  he has not been permitted to work, Mr. Walker is serving a longer sentence than

22  non-GBT inmates who can earn work credits.

23      62.    Mr. Walker is unable to participate in regional occupational classes,

24  vocational education classes, or GED classes along with the general population of

25  inmates at WVDC. Mr. Walker requested educational programs by submitting an

26  official Inmate Request Slip on July 1, 2013. SBCSD denied his request, stamping

27  "NOTHING AVAILABLE AT THIS TIME" on to his request slip. On information

28  and belief, however, educational programs were available to non-GBT inmates.

63.    Mr. Walker is unable to participate in religious services inside the ALT in person, and does not have access to religious services outside the ALT.

64.    Unlike non-GBT general population inmates, Mr. Walker is unable to participate in the "INROADS" drug rehabilitation program at Glen Helen Rehabilitation Center. Since he filed his 910 claim, the jail has given him "IN ROADS" in the form of a self-study program, but not at Glen Helen. He is not receiving credit off his sentence like non-GBT inmates who participate in the program.  The self-study program itself is not proper or effective drug rehabilitation programming.

65.    Mr. Walker's cell in the ALT at WVDC is not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skip cell checks and sign the log sheet, even though they never check Mr. Walker's or other inmate's cells.

66.    Mr. Walker has been and remains subject to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC, including being referred to as a "bitch" and "high school girl."

67.    Mr. Walker has been retaliated against for complaining about his treatment. On April 30, 2014, Defendant Castillas asked Mr. Walker to sign a paper agreeing to go to general population where he would be responsible for his own safety. He declined as being housed in general population and identified as GBT would subject him to violence. The SBCSD offered the same transfer to Plaintiffs Crockan, Bagwell and Hatfield, and to class member Larry Meyer. They all declined due to safety concerns. Jail personnel then retaliated by placing these inmates on the bottom tier of the ALT, which meant less time out of their cells. All of these inmates had previously filed 910 administrative claims against the county.

68.    As a result of the treatment and isolation of GBT inmates at WVDC, Mr. Walker has experienced severe emotional distress and depression.

69.    During all times Mr. Walker has been in custody at WVDC, he has been subjected to all the conditions of confinement explained in Section IV, *supra*.

21

### B.   Dan MᴄKɪʙʙᴇɴ

70.   Dan McKibben was arrested for a probation violation and booked into SBCSD on or around March 21, 2014. Upon self-identifying as gay during the booking process, he was automatically transferred to the ALT at WVDC. He was released in or around June 2014, and is currently out of custody.

71.   During all times Mr. McKibben was in custody at WVDC, he was confined to his cell for approximately 23 hours a day. He was only allowed out of his cell for 45 minutes to one hour per day, which time was used for the showers. Meals were given inside the cell, not outside in the day room where there were tables. Non-GBT inmates in general population either lived in dormitory style units, where they are not confined to cells at all, or lived in cells in which they were generally out of their cells most non-sleeping hours. Non-GBT inmates placed in special housing due to their status, e.g. informants and gang members, were and are generally let out of their cells three hours or more daily.

72.   Unlike non-GBT inmates in the general population, as an inmate in the ALT Mr. McKibben was not permitted to be a trustee or work at WVDC. Because he was not permitted to work, he could not earn money or good time work credits. As a result, Mr. McKibben served a longer sentence than he would have had he been able to work and receive early release credits. See Cal. Penal Code §4019.

73.   Mr. McKibben was unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC.

74.   Mr. McKibben was unable to participate in religious services inside the ALT in person, and did not have access to religious services outside the ALT.

75.   Mr. McKibben's cell in the ALT at WVDC was not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skipped cell checks and signed the log sheet, even though they never checked Mr. McKibben's cell. Mr. McKibben was subject to

22

harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC. The deputies called the ALT the "fag bin" or "queer quarters".

76.     As a result of the treatment and isolation of GBT inmates at WVDC, Mr. McKibben has experienced severe emotional distress and depression.

77.     Mr. McKibben did not file grievances about the conditions due to his fear of retaliation. To avoid trouble with the guards that he knew others experienced, he "kept his mouth shut."

78.     During all times Mr. McKibben was in custody at WVDC, he was subjected to all the conditions of confinement explained in Section IV, *supra*.

79.     Mr. McKibben is not currently in custody and, thus, is not an inmate within the meaning of the PLRA.

### C.     PEDRO GUZMAN

80.     Pedro Guzman was housed by SBCSD beginning on approximately January 21, 2014. Upon self-identifying as gay during the booking process, he was automatically transferred to the ALT at WVDC. He was subsequently released in or about late August, 2014, and is currently out of custody.

81.     During all times Mr. Guzman was in custody at WVDC, he was confined to his cell for approximately 22 and one-half hours a day. He was only allowed out of his cell for one and one half hours a day, except when he got a job (see the following  paragraph) and was allowed out to work. Non-GBT inmates in general population either lived, or continue to live in dormitory style units. They were and are not confined to cells at all, or lived in cells in which they were generally out of their cells during most non-sleeping hours. Non-GBT inmates placed in special housing due to their status, e.g. informants and gang members, were generally let out of their cells three hours or more daily.

82.     On or about June 24, 2014, after threatening litigation, Mr. Guzman was the first GBT person allowed to work.  He was placed in the law library. However, Mr. Guzman is informed and believes, based on statements made to him by Sergeant Mahan, that he did not earn work credit, unlike non-GBT inmates.  As

23

a result, Mr. Guzman served a longer sentence than he would have had he been able to work and receive early release credits. See Cal. Penal Code §4019. Further, unlike non-GBT inmates, Plaintiffs are informed and believe that Mr. Guzman did not received the perks of being a worker. For example, he did not receive access to the day room all day, his visits were limited to 15 minutes rather than 30 to 45 minutes, and he did not have additional access to the outside, all in contrast to non-GBT workers. Plaintiffs are informed and believe that Mr. Guzman and Robert Torres, after Mr. Guzman was released, have been the only GBT persons allowed to work at WVDC, and only in response to the threat of litigation.  Mr. Guzman was not allowed the opportunity to work as a trustee.

83.     Mr. Guzman was unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC.

84.     Mr. Guzman was unable to participate in religious services inside the ALT in person, and did not have access to religious services outside the ALT.

85.     Mr. Guzman's cell in the ALT at WVDC was not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skipped cell checks and signed the log sheet, even though they never checked Mr. Guzman's cell. Mr. Guzman was subjected to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC, including being called a "damn faggot", and having his face slammed against the bars by a deputy for no reason other than being GBT.

86.     As a result of the treatment and isolation of GBT inmates at WVDC, Mr. Guzman has experienced severe emotional distress and depression.

87.     During all times that Mr. Guzman was in custody at WVDC, he was subjected to all the conditions of confinement explained in Section IV, *supra*.  Mr. Guzman is not currently in custody and, thus, is not an inmate within the meaning of the PLRA.

1

       **D.**    ***NICK OU***

2        88.    Nick Ou was arrested by the Colton Police Department on or about

3  April 25, 2014, and was booked into the WVDC on that date. Upon self-

4  identifying as gay during the booking process, he was transferred to the ALT at

5  WVDC after a brief placement in the general population. He was subsequently

6  released in or about late August 2014, and is currently out of custody.

7        89.    During all times Mr. Ou was in custody at WVDC, he was confined to

8  his cell for approximately 22 to 23 hours a day. He was only allowed out of his

9  cell, on average, for 1 to one and a half hours a day . He was required to eat in his

10  cell, like all GBT inmates, even though there was seating for 32 in the day room

11  that could accommodate all 32 inmates in the ALT. Non-GBT inmates in general

12  population either lived in dormitory style units, where they were not confined to

13  cells at all, or lived in cells in which they were generally out of their cells at least 3

14  hours a day. Non-GBT inmates placed in special housing due to their status, e.g.

15  informants and gang members, were generally let out of their cells three hours or

16  more daily.

17        90.    Unlike non-GBT inmates in the general population, Mr. Ou was not

18  permitted to be a trustee, or work as an inmate in the ALT at WVDC. He attempted

19  to work and put in a work request slip, but was told he was ineligible due to his

20  "medical condition," which SBCSD claimed would not allow him to climb stairs,

21  even though he was housed on the upper tier and had to climb stairs several times a

22  day. He filed a subsequent request and was told he was not medically cleared.  He

23  then sought medical clearance from his doctor, which he received.  He submitted

24  another request, which was denied. Defendants' rationale for denying him work

25  was discriminatory and pretextual. As a result of Defendants' discriminatory

26  conduct, Mr. Ou could not earn money or good time work credits, and thereby

27  served a longer sentence than he would have had he been able to work and receive

28  early release credits. See Cal. Penal Code §4019.

91.     Mr. Ou was unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC.

92.     Mr. Ou was unable to participate in religious services inside the ALT in person, a chaplain did not visit, and did not have access to religious services outside the ALT.

93.     Mr. Ou's cell in the ALT at WVDC was not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skipped cell checks and signed the log sheet, even though they never checked Mr. Ou's cell. Mr. Ou was subjected to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC.

94.     As a result of the treatment and isolation of GBT inmates at WVDC, Mr. Ou has experienced severe emotional distress and depression.

95.     During all times when Mr. Ou was in custody at WVDC, he was subjected to all the conditions of confinement explained in Section IV, *supra*.  Mr. Ou is not currently in custody and, thus, is not an inmate within the meaning of the PLRA.

**E.    SEAN LINT**

96.     Sean Lint was arrested by the Barstow Police Department and booked by the SBCSD into the WVDC in or around April or May, 2014. Upon self-identifying as gay during the booking process, he was automatically transferred to the ALT at WVDC. He was released in or around June or July 2014, and is currently out of custody.

97.     During all times Mr. Lint was in custody at WVDC, he was confined to his cell for approximately 23 hours a day. He was only allowed out of his cell for 45 minutes to one hour per day. Non-GBT inmates in general population either lived and continue to live in dormitory style units. They were and are not confined to cells at all, or lived in cells in which they were generally out of their cells most non-sleeping hours. Non-GBT inmates placed in special housing due to their

26

status, e.g. informants and gang members, were generally let out of their cells three hours or more daily.

98.    Unlike non-GBT inmates in the general population, Mr. Lint was not permitted to be a trustee or work as an inmate in the ALT at WVDC. Because he was not permitted to work, he could not earn money or good time work credits. As a result, Mr. Lint served a longer sentence than he would have had he been able to work and receive early release credits. See Cal. Penal Code §4019.

99.    Mr. Lint was unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC.

100.    Mr. Lint was unable to participate in religious services inside the ALT in person, and did not have access to religious services outside the ALT.

101.    Mr. Lint's cell in the ALT at WVDC was not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skipped cell checks and signed the log sheet, even though they never checked Mr. Lint's cell. He was subjected to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC, including being called a "faggot."

102.    As a result of the treatment and isolation of GBT inmates at WVDC, Mr. Lint has experienced severe emotional distress and depression.

103.    During all times Mr. Lint was in custody at WVDC, he was subjected to all the conditions of confinement explained Section IV, *supra*.  Mr. Lint is not currently in custody and, thus, is not an inmate within the meaning of the PLRA.

**F.    *Lynn Price***

104.    Lynn Price was arrested by SBCSD in late July of 2014.  Upon self-identifying as transgender during the booking process, she was transferred to the ALT at the WVDC.        She is currently housed there and will be housed there for the foreseeable future.  Ms. Price has also been housed in the ALT during past

periods of incarceration at WVDC as well, including in 2012 and February of 2014.

105.    During all times Ms. Price has been in the ALT tank, she has been confined to her cell anywhere from 22 to 23 hours a day, and only allowed out of her cell for approximately one hour to two hours a day. That is only very recently in response to Plaintiffs' counsel's letter and the threat of litigation. She is informed and believes that non-GBT inmates in general population either live in dormitory style units, where they are not confined to cells at all, or live in cells in which they are generally out of their cells most non-sleeping hours. Non-GBT inmates placed in special housing due to their status, e.g. informants and gang members, are generally let out of their cells three hours or more daily.

106.    Unlike non-GBT inmates in the general population, Ms. Price has not been permitted to be a trustee, or work as an inmate in the ALT at WVDC. Thus, she could not earn money or good time work credits. As a result, Ms. Price is serving a longer sentence than she would have if she were allowed to work and receive early release credits. See Cal. Penal Code §4019.

107.    Ms. Price is unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC.  On or about September 13, 2014, Ms. Price requested a GED program.  On or about September 24, 2014, Ms. Price was verbally told that a GED program had to be court ordered.  Shortly thereafter, she filed a grievance on that and other issues related to the discriminatory treatment of GBT inmates. The grievance was returned to her by Deputy Allen, who informed her that she could only file a grievance on a single issue, and if she wanted to work she would have to go to general population.

108.    Ms. Price is unable to participate in religious services inside the ALT in person, and does not have access to religious services outside the ALT.

109.    Unlike non-GBT general population inmates, Ms. Price is unable to participate in the "INROADS" drug rehabilitation program at Glen Helen

Rehabilitation Center.  In the 1980s, Ms. Price was housed at Glen Helen, at which time they were aware of her gender identity. They did not then offer the rehabilitation programs currently offered.

110.    Ms. Price's cell in the ALT at WVDC is not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skip cell checks and sign the log sheet, even though they never check Ms. Price's cell.

111.    Ms. Price is subjected to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC.

112.    As a result of the treatment and isolation of GBT inmates at WVDC, Ms. Price has experienced severe emotional distress and depression.

113.    During all times Ms. Price has been in custody at WVDC, she has been subjected to all the conditions of confinement explained in Section IV, *supra*.

### G.    ILICH VARGAS

114.    Ilich Vargas was housed by the SBCSD at the WVDC on or about December 13, 2012 in the general population, as he did not disclose his bisexual orientation. Upon self-identifying as bisexual in general population, he was transferred to the WVDC ALT tank in October 2013.  He is currently housed as a pre-trial inmate in the ALT.

115.    During all times Mr. Vargas has been in the ALT tank, he has been confined to his cell anywhere from 22 to 23 hours a day, and only allowed out for approximately one hour to two hours a day. That is only very recently in response to Plaintiffs' counsel's letter and the threat of litigation. He is informed and believes that non-GBT inmates in general population either live in dormitory style units where they are not confined to cells at all, or live in cells in which they were generally out of their cells during most non-sleeping hours. Non-GBT inmates placed in special housing due to their status, e.g. informants and gang members, are generally let out of their cells three hours or more daily.

116.   Unlike non-GBT inmates in the general population, Mr. Vargas has not been permitted to be a trustee in the ALT, and thereby be out of his cell all day.

117.   Mr. Vargas is unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC.

118.   Mr. Vargas is unable to participate in religious services inside the ALT in person, and does not have access to religious services outside the ALT.

119.   Mr. Vargas' cell in the ALT at WVDC is not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skip cell checks and sign the log sheet, even though they never checked Mr. Vargas' cell.

120.   Mr. Vargas is subjected to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC, including being called a "faggot" by nursing staff.

121.   As a result of the treatment and isolation of GBT inmates at WVDC, Mr. Vargas has experienced severe emotional distress and depression.

122.   During all times Mr. Vargas has been in custody at WVDC, he has been subjected to all the conditions of confinement explained in Section IV, *supra*.

### H.   WILLIAM KENNEDY

123.   William Kennedy was arrested by the Redlands Police Department, and was booked into WVDC by the SBCSD on or around June 13, 2014. Upon self-identifying as gay during the booking process, he was automatically transferred to the ALT at WVDC. He has been at the WVDC since that time in the ALT, and is currently still in custody.

124.   During all times Mr. Kennedy has been in custody at WVDC, he has been confined to his cell approximately 22 to 23 hours a day, during which time he has to take a shower and make any necessary phone calls. Mr. Kennedy is informed and believes that non-GBT inmates in general population either live in dormitory style units, where they are not confined to cells at all, or live in cells in

30

which they were generally out of their cells for many hours a day. Non-GBT inmates placed in special housing due to their status, e.g. informants and gang members, are generally let out of their cells three hours or more daily.

125.   Unlike non-GBT inmates in the general population, Mr. Kennedy has not been permitted to be a trustee, and thus be allowed out of his cell all day.

126.   Mr. Kennedy is unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC.

127.   Mr. Kennedy is unable to participate in religious services inside the ALT in person, and does not have access to religious services outside the ALT. He has asked for religious services and a chaplain, but has never received a response.

128.   Kennedy is unable to participate in the "INROADS" mental health program at Glen Helen Rehabilitation Center.

129.   Mr. Kennedy's cell in the ALT at WVDC is not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skip cell checks and sign the log sheet, even though they never check Mr. Kennedy's or other inmate's cells.

130.   Mr. Kennedy is subjected to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC. For example, the inmates are called "girls" or are told "hot dogs are what you like" by deputies.

131.   As a result of the treatment and isolation of GBT inmates at WVDC, Mr. Kennedy has experienced severe emotional distress and depression.

132.   During all times Mr. Kennedy has been in custody at WVDC, he has been subjected to all the conditions of confinement explained in Section IV, *supra*.

I.    JONATHAN ROBERTSON

133.   Jonathan Robertson has been at the WVDC from August 22, 2012, and upon self-identifying as gay on or about January 5, 2014, he was automatically transferred to the ALT at WVDC. Since that time he has primarily been housed in

the ALT in pre-trial confinement, although he has been transferred to general population for brief periods, on information and belief, as retaliation.

134.    During all times Mr. Robertson has been in custody at WVDC, he has been confined to his cell approximately 23 hours a day. Non-GBT inmates in general population either live in dormitory style units, where they are not confined to cells at all and are out all day, or live in cells in which they were generally out of their cells at least 3 hours a day. Non-GBT inmates placed in special housing due to their status, e.g. informants and gang members, were generally let out of their cells three hours or more daily.

135.    Unlike non-GBT inmates in the general population, Mr. Robertson is not permitted to be a trustee and be allowed out of his cell during the day like other trustees.

136.    Mr. Robertson is unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC.

137.    Mr. Robertson is unable to participate in religious services inside the ALT in person, and does not have access to religious services outside the ALT.

138.    Mr. Robertson's cell in the ALT at WVDC is not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skip cell checks and sign the log sheet, even though they never check Mr. Kennedy's or other inmate's cells.

139.    Mr. Robertson is subjected to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC. For example, Mr. Robertson and other inmates in the WVDC are called "bitches", "fags", "girls", "punks", "motherfucker", and "disgusting" and told to "stop being a little bitch," by the deputies.

140.    As a result of the treatment and isolation of GBT inmates at WVDC, Mr. Robertson has experienced severe emotional distress and depression and has

made multiple suicide attempts without having been given a psychological evaluation.

141.   During all times Robertson has been in custody at WVDC, he has been subjected to all the conditions of confinement explained in Section IV, *supra*.

**J.   CHRISTOPHER CRAWFORD**

142.   Christopher Crawford was booked into the WVDC by the SBCSD on multiple occasions including in February 2012, December 2013, and most recently, on February 10, 2014. Each time, upon self-identifying as gay during the booking process, he was automatically transferred to the ALT at WVDC.

143.   Christopher Crawford was transferred to state custody on or around April 12, 2014 and is no longer in SBCSD custody. He is currently a prisoner within the meaning of the PLRA.

144.   During all times Mr. Crawford was in custody at WVDC, he was confined to his cell for approximately 23 hours a day. He was only allowed out of his cell for 45 minutes to one hour per day. Non-GBT inmates in general population either lived and continue to live in dormitory style units, where they are not confined to cells at all, or lived and continue to live in cells in which they are generally out of their cells most non-sleeping hours. Non-GBT inmates placed in special housing due to their status, e.g. informants and gang members, were generally let out of their cells three hours or more daily.

145.   Unlike other non-GBT inmates in the general population, Mr. Crawford  was not permitted to be a trustee, or work as an inmate in the ALT at WVDC.  Because he was not permitted to work, he could not earn money or good time work credits. As a result, Crawford served longer sentences than he would have had he been able to work and receive early release credits. See Cal. Penal Code §4019.

146.   Crawford was unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC. He and other inmates in the ALT were not allowed access to

33

educational programming provided to general population inmates and were also not given access to any separate educational programming.

147.   Mr. Crawford was unable to participate in religious services inside the ALT in person, and did not have access to religious services outside the ALT.

148.   Mr. Crawford's cell in the ALT at WVDC was not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skipped cell checks and signed the log sheet, even though they never checked Mr. Crawford's or other inmate's cells.

149.   Mr. Crawford was subjected to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC.

150.   Mr. Crawford was subjected to disproportionate punishment compared to non-GBT inmates in general population. On one occasion, SBCSD deputies punished Mr. Crawford for participating in mutual combat with another inmate by placing him in a cell with a high-power, straight inmate.

151.   Unlike non-GBT general population inmates, Mr. Crawford and other inmates in the "ALT" were subjected to group, rather than individual, punishment. For example, after the incident where Mr. Crawford engaged in mutual combat, all inmates in the ALT were punished as a group, and were permitted even less time out of their cells than the scant amount of time they were normally allowed. When two non-GBT inmates in general population get into mutual combat typically only those two individuals are punished, not the entire dorm.

152.   As a result of the treatment and isolation of GBT inmates at WVDC, Mr. Crawford has experienced severe emotional distress and depression.

153.   Mr. Crawford was unable to file any grievances at WVDC because, when he attempted to do so, deputies told him his grievances were "ungrievable."

154.   During all times Mr. Crawford was in custody at WVDC, he was subjected to all the conditions of confinement explained in Section IV, *supra*.

1

### K.    VERONICA PRATT

2    155.    Veronica Pratt was arrested by SBCSD on or around August 4, 2013.

3    Upon self-identifying as transgender during the booking process, she was

4    automatically transferred to the ALT at WVDC. Pratt was subsequently released.

5    156.    Ms. Pratt was booked into the WVDC by the SBCSD and once again,

6    Ms. Pratt was placed in the ALT.   She was released a second time on or about

7    June 6, 2014 to the custody of the Riverside County Jail, and is currently in that

8    facility.

9    157.    During all times Ms. Pratt was in custody at WVDC, she was confined

10    to her cell approximately 23 hours a day. She was only allowed out of her cell for

11    45 minutes to one hour per day. Non-GBT inmates in general population either

12    lived and continue to live in dormitory style units, where they are not confined to

13    cells at all, or lived and continue to live in cells in which they were generally out of

14    their cells most non-sleeping hours. Non-GBT inmates placed in special housing

15    due to their status, e.g. informants and gang members, were generally let out of

16    their cells three hours or more daily.

17    158.    Unlike non-GBT inmates in the general population,  Ms. Pratt was not

18    permitted to be a trustee, or work as an inmate in the ALT at WVDC. Because she

19    was not permitted to work, she could not earn money or good time work credits.

20    As a result, Ms. Pratt served a longer sentence than she would have had she had

21    been able to work and receive early release credits. See Cal. Penal Code §4019.

22    159.    Ms. Pratt was unable to participate in regional occupational classes,

23    vocational education classes, or GED classes along with the general population of

24    inmates at WVDC. On November 27, 2013, Ms. Pratt filed a grievance requesting

25    access to vocational education classes. SBCSD responded on December 3, 2013,

26    stating that her grievance was unfounded because vocational programs and

27    INROADS are court ordered programs, and she was not sentenced to these

28    programs.

160.   Ms. Pratt was unable to participate in religious services inside the ALT in person, and did not have access to religious services outside the ALT.

161.   Ms. Pratt was unable to participate in the "INROADS" mental health program at Glen Helen Rehabilitation Center.

162.   Ms. Pratt's cell in the ALT at WVDC was not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skip cell checks and sign the log sheet, even though they never checked Ms. Pratt's or other inmate's cells.

163.   Ms. Pratt was subject to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC.

164.   As a result of the treatment and isolation of GBT inmates at WVDC, Ms. Pratt has experienced severe emotional distress and depression.

165.   During all times Pratt was in custody at WVDC, she was subjected to all the conditions of confinement explained in Section IV, *supra*.

L.   *BRYAN BAGWELL*

166.   Bryan Bagwell was booked by SBCSD into the WVDC on or about December 13, 2013. Upon self-identifying as gay during the booking process, he was automatically transferred to the ALT at WVDC. As of June 4, 2014, he was transferred to California Institute for Men of the California Department of Corrections and Rehabilitation.

167.   During all times Mr. Bagwell was in custody at WVDC, he was confined to his cell for approximately 23 hours a day. He was only allowed to be out for approximately one hour per day. Non-GBT inmates in general population either live in dormitory style units, where they are not confined to cells at all, or live in cells in which they were generally out of their cells during most non-sleeping hours. Non-GBT inmates placed in special housing due to their status, e.g. informants and gang members, were generally let out of their cells three hours or more daily.

168.    Unlike non-GBT inmates in the general population, Mr. Bagwell was not permitted to be a trustee, or work as an inmate in the ALT at WVDC. Because he was not permitted to work, he could not earn money or good time work credits. As a result, Mr. Bagwell is serving a longer sentence than he would have had he was able to work and receive early release credits. See Cal. Penal Code §4019.

169.    Unlike non-GBT inmates in the general population, Mr. Bagwell was not permitted to work as a trustee.

170.    Mr. Bagwell was unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC.

171.    Mr. Bagwell was unable to participate in religious services inside the ALT in person, and did not have access to religious services outside the ALT.

172.    Mr. Bagwell's cell in the ALT at WVDC was not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skipped cell checks and signed the log sheet, even though they never checked Mr. Bagwell's cell.

173.    Mr. Bagwell was subjected to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC.

174.    Mr. Bagwell has been retaliated against for complaining about his treatment. On April 30, 2014, Defendant Castillas asked him to sign a paper to go to general population where he would be responsible for his own safety. Mr. Bagwell declined the offer as being housed in general population and identified as GBT would subject him to violence. SBCSD offered the same transfer to Plaintiffs Crockan, Hatfield and Walker, and to class member Larry Meyer. All said "no" due to safety concerns. Jail personnel retaliated by placing these inmates on the bottom tier of the ALT and giving them less time out of their cells. All of these inmates had previously filed 910 administrative claims against the county.

175.    As a result of the treatment and isolation of GBT inmates at WVDC, Mr. Bagwell has experienced severe emotional distress and depression.

176.   When trying to file a grievance, Mr. Bagwell was told that he would not get one, and that he could "shut the f___ up!" When he tried to file a grievance about guards routinely turning off the TV in the day room during the very short period of time ALT inmates were allowed out of their cells, the guards would not give him a form. Mr. Bagwell was able to file a grievance only after great effort.

177.   During all times Mr. Bagwell was in custody at WVDC, he was subjected to all the conditions of confinement explained in Section IV, *supra*.

### M.   FREDRICK CROCKAN

178.   Fredrick Crockan was booked into the WVDC by the SBCSD on or around October 13, 2013. Upon self-identifying as gay during the booking process, he was automatically transferred to the ALT at WVDC. He is currently housed in State prison.

179.   During all times Mr. Crockan was in custody at WVDC, he was confined to his cell for approximately 23 hours a day. He was only allowed out of his cell for 45 minutes to one hour per day. Non-GBT inmates in general population either live in dormitory style units, where they are not confined to cells at all, or live in cells in which they were generally out of their cells during most non-sleeping hours. Non-GBT inmates placed in special housing due to their status, e.g. informants and gang members, are generally let out of their cells three hours or more daily.

180.   Unlike other non-GBT inmates in the general population, Mr. Crockan was not permitted to be a trustee, or work as an inmate in the ALT at WVDC. Because he was not permitted to work, he could not earn money or good time work credits. As a result, Mr. Crockan will serve a longer sentence than he would have if he was able to work and receive early release credits. See Cal. Penal Code §4019.

181.   Crockan was unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC.

38

182.   Crockan was unable to participate in religious services inside the ALT in person, and does not have access to religious services outside the ALT.

183.   Crockan was unable to participate in the "INROADS" mental health program at Glen Helen Rehabilitation Center.

184.   Mr. Crockan's cell in the ALT at WVDC was not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skipped cell checks and signed the log sheet, even though they never checked Mr. Crockan's cell.

185.   Mr. Crockan was subjected to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC.

186.   Mr. Crockan was retaliated against for complaining about his treatment. On April 30, 2014, Defendant Castillas asked Crockan to sign a paper to go to general population where he would be responsible for his own safety. Mr. Crockan declined because being housed in general population would identify him as being GBT and would subject him to violence. SBCSD offered the same transfer to Plaintiffs Hatfield, Bagwell and Walker, and to class member Larry Meyer. All declined the offer due to safety concerns. Jail personnel then retaliated by placing Hatfield, Bagwell, Walker and Meyer on the bottom tier of the ALT and gave them less time out of their cells. All of these inmates had previously filed 910 administrative claims against the county.

187.   As a result of the treatment and isolation of GBT inmates at WVDC, Mr. Crockan has experienced severe emotional distress and depression.

188.   Mr. Crockan filed several grievances regarding the conditions of confinement for GBT inmates at WVDC, but all of his requests have been denied.

189.   During all times Mr. Crockan was in custody at WVDC, he was subjected to all the conditions of confinement explained in Section IV, *supra*.

### N.   TAHEASH WHITE

190.   Taheash White was arrested by SBCSD on or about February 24, 2014. Upon self-identifying as gay during the booking process, he was

automatically transferred to the ALT at WVDC. He subsequently was released and is now in state custody.

191.   During all times Mr. White was in custody at WVDC, he was confined to his cell for approximately 23 hours a day. He was only allowed out of his cell for approximately 45 minutes to one hour per day. He is informed and believes that straight inmates in general population either lived and continue to live in dormitory style units, where they are not confined to cells at all, or lived and continue to live in cells in which they were generally out of their cells during most non-sleeping hours. Non-GBT inmates placed in special housing due to their status, e.g. informants and gang members, were generally let out of their cells three hours or more daily.

192.   Unlike non-GBT inmates in the general population, Mr. White was not permitted to be a trustee, or work as an inmate in the ALT at WVDC. Because he was not permitted to work, he could not earn money or good time work credits. As a result, Mr. White will serve a longer sentence than he would have if he was able to work and receive early release credits. See Cal. Penal Code §4019.

193.   Mr. White was unable to participate in the Glen Helen "INROADS" program that would have reduced his sentence and given him drug rehabilitation treatment.

194.   Mr. White was unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC.

195.   Mr. White was unable to participate in religious services inside the ALT in person, and did not have access to religious services outside the ALT.

196.   Mr. White's cell in the ALT at WVDC was not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skipped cell checks and signed the log sheet, even though they never checked Mr. White's cell.

40

197.   Mr. White was subject to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC.

198.   As a result of the treatment and isolation of GBT inmates at WVDC, Mr. White has experienced severe emotional distress and depression.

199.   Mr. White tried to filed grievances about the conditions in the ALT but the guards would not give him grievance forms since they say ALT inmates' complaints about the conditions in the dorm are "not grievable."

200.   During all times Mr. White was in custody at WVDC, he was subjected to all the conditions of confinement explained in Section IV, *supra*.

**O.    MADISON HATFIELD**

201.   Madison Hatfield was arrested by the Fontana Police Department and booked into custody by the SBCSD at the WVDC on or about April 1, 2014. Upon self-identifying as transgender during the booking process, she was transferred to the ALT at WVDC. She was subsequently released to a sober living facility, and in October, 2014, was transferred back from the sober living facility to the ALT of the WVDC.

202.   During all times Ms. Hatfield was in custody at WVDC, she was confined to her cell for approximately 23 hours a day. She was only allowed out of her cell for approximately 45 minutes to one hour per day. She is informed and believes that non-GBT inmates in general population either lived and continue to live in dormitory style units, where they are not confined to cells at all, or lived and continue to live in cells in which they were generally out of their cells most non-sleeping hours. Non-GBT inmates placed in special housing due to their status, e.g. informants, gang members, were generally let out of their cells three hours or more daily.

203.   Unlike other non-GBT inmates in the general population, Ms. Hatfield was not permitted to be a trustee, or work as an inmate in the ALT at WVDC. Because she was not permitted to work, she could not earn money or good time work credits. As a result, Ms. Hatfield served a longer sentence than she would

have if she was able to work and receive early release credits. See Cal. Penal Code § 4019.

204.    Ms. Hatfield was unable to participate in regional occupational classes, vocational education classes, or GED classes along with the general population of inmates at WVDC.

205.    Ms. Hatfield was unable to participate in religious services inside the ALT in person, and did not have access to religious services outside the ALT.

206.    Ms. Hatfield's cell in the ALT at WVDC was not checked by deputies on a routine basis as required by Title 15 for safety walk-throughs. On a regular basis, deputies skipped cell checks and signed the log sheet, even though they never checked Ms. Hatfield's cell.

207.    Ms. Hatfield was subjected to harassment, name calling, neglect, and humiliation by employees of SBCSD at WVDC.

208.    She was retaliated against for complaining about her treatment. On April 30, 2014, Defendant Castillas asked her to sign a paper to go to general population where she would be responsible for her own safety, and she said no as being housed in general population and identified as GBT would subject her to violence. SBCSD offered the same transfer to Plaintiffs Crockan, Bagwell and Walker, and to class member Larry Meyer. All declined the offer due to safety concerns. Jail personnel then retaliated by placing these inmates on the bottom tier of the ALT and gave them less time out of their cells. All of these inmates had previously filed 910 administrative claims against the county.

209.    As a result of the treatment and isolation of GBT inmates at WVDC, Ms. Hatfield has experienced severe emotional distress and depression.

210.    Ms. Hatfield filed grievances regarding the conditions of confinement for GBT inmates at WVDC, but all of her requests were denied.

211.    During all times Ms. Hatfield was in custody at WVDC, she was subjected to all the conditions of confinement explained in Section IV, *supra*.

## VI.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

212.    GBT inmates in the ALT, including Plaintiff class representatives, repeatedly have faced serious obstacles when they tried to utilize the grievance procedure to complain about their lack of access to work opportunities, programs, drug rehabilitation and other issues related to conditions and treatment.  Many GBT inmates have either attempted to file grievances and exhaust but have been prevented by the SBCSD from fully exhausting; been intimidated into not filing grievances and thereby have been prevented from exhausting since the SBCSD has made it clear through its actions that the inmates are not eligible for programs and filing grievances will be futile; or, nonetheless, have overcome intimidation by the SBCSD and have fully exhausted.  Because there are only two federal injunctive relief class representatives currently in custody in WVDC, Timothy Walker and Ilich Vargas, we focus on them. There are no Federal Damages Class Representatives, and thus the only Named Plaintiffs required to exhaust administrative remedies before filing suit are Walker and Vargas.

213.    In August 2014 Federal Injunctive Relief Class Representative Timothy Walker attempted to file a grievance with T.W., a deputy, about how little time GBT inmates got out of their cells, and their lack of access to work opportunities, educational opportunities, drug rehabilitation programming, and religious services; the lack of safety checks in the unit; and the harsher punishment imposed on GBT inmates. He had filed grievances in the past that were rejected without a legitimate basis, but wanted to file a grievance covering all GBT members in the ALT and to list all of his complaints concerning lack of time out of the cell, programing and rehabilitation, and work opportunities.  One or two days later, Sergeant Mahan approached Mr. Walker and told him that, if he processed the grievance, Mr. Walker would get an additional twenty days added to his sentence for allegedly "abusing" the grievance process. Because he did not want to risk serving extra time, Mr. Walker told Sgt. Mahan not to process the grievance.

214.    On the other hand, Ilich Vargas was able to exhaust, overcoming great odds, and after multiple attempts to do so.  On April 16, 2014, Vargas received a response to a grievance concerning discriminatory treatment of GBT inmates in the ALT. Among other things, the response stated that "portions of the complaint that are a mass grievance will not be investigated since mass grievance complaints are not investigated." Vargas was also informed that "[f]urther grievances on this matter may lead to disciplinary action." Despite being told that further grievances would lead to disciplinary action, Mr. Vargas filed a grievance over the denial of equal opportunities for GBT inmates in the WVDC, including a grievance over lack of time out of his cell, denial of programs, religious programs, and trustee opportunities.  On September 3, 2014, the SBCSD responded to his grievance by telling him that he was abusing the grievance process, that he had fully exhausted his complaints over the lack of opportunities and programming in the ALT of the WVDC, and that his grievance constituted an abuse of the grievance process and would subject him to discipline if he pursued it.  Because he would be disciplined for pursing his grievance, he decided not to pursue it.  Thus, even when a GBT inmate exhausts, a clear message is sent to all the GBT inmates not to pursue grievances over their discriminatory treatment in the WVDC.

215.    SBCSD has repeatedly intimidated GBT inmates away from filing grievances, mishandled grievances, provided misinformation about the grievance process and particularly group grievances, and rejected grievances about discriminatory conditions in the ALT. As a result, most GBT inmates in the ALT stopped filing grievances because they felt threatened or intimidated, or were unable to pursue their core claims of discrimination against those held in the ALT.

216.    Through intimidation, creating obstacles in attempting to file grievances, mishandling grievances, and by misinforming GBT inmates when or over what topics they could file grievances, the SBCSD has created insurmountable barriers in the grievance process.  When GBT inmates have filed grievances, or grievance denial appeals concerning conditions in the ALT, SBCSD

44

repeatedly has mishandled them or has given GBT inmates misinformation about their access to the grievance procedure. Many GBT inmates have filed grievances about matters that affect not only themselves, but all people in the ALT. SBCSD repeatedly told GBT inmates that such grievances are "ungrievable," and have explicitly stated in grievance responses and grievance appeal responses that inmates cannot submit group grievances, that "mass" grievance complaints are not investigated, and that "mass" grievances cannot be appealed. This has occurred despite the fact that "group" grievances are specifically allowed under the Title 15, Section 3084.2(h), which WVDC purports to follow and, in fact, there is a special form for group grievances. SBCSD does not make this form available to GBT inmates in the ALT.

217.   There are numerous instances where GBT inmates who are not Federal Injunctive Relief class representatives have been blocked from filing or pursuing grievances. For example, Larry Meyer, a GBT inmate who is a member of the class, filed a grievance on March 27, 2014, alleging discrimination against GBT inmates, including himself, by denying them opportunities to participate in educational and self-help classes available to other inmates. The findings on his grievance instructed him that the inmates shall not use the grievances on behalf of a group of inmates and that his complaint was unfounded. The grievance response stated that Department policy provides that "inmates shall NOT use this process to submit grievances or grievance appeals to represent another inmate, or group of inmates." Further, the findings on his grievance by SBCSD were that gay inmates are housed pursuant to departmental policy.

218.   As explained above, Defendants systematically thwarted and obstructed efforts to exhaust administrative remedies, or refused to allow the filing of grievances addressing discrimination against GBT inmates. The Federal Injunctive Relief Class Representatives and Class were not required to exhaust administrative remedies because SBCSD's administrative remedies were ineffective, unobtainable, unduly prolonged, inadequate, and/or obviously futile,

thereby rendering the exhaustion mechanism for GBT inmates effectively unavailable.

219. On May 2, 2014, 2014, attorneys for Plaintiffs sent a letter to SBCSD and Captain Jeff Rose, who is in charge of the WVDC, regarding this policy of refusing to hear grievances on behalf of a group of inmates. As of the filing of this Complaint, SBCSD has not responded.

220. SBCSD has retaliated against a number of GBT inmates who have filed grievances about conditions in the ALT. For example, very soon after filing grievances about discriminatory conditions in the ALT, Named Plaintiffs (and California State Damages Class Representatives Bagwell, Crockan and Hatfield, as well as Federal Injunctive Relief Class Representative Walker and class member Larry Meyer, were threatened with transfer to general population for filing grievances, which would have risked their safety. They were then were reclassified from top tier, the higher level of the ALT status with more privileges, to bottom tier, the lower level of the ALT status, with less privileges. Further, Larry Meyer was refused grievance forms on many occasions, and was punished and put into administrative segregation for purportedly "abusing" the grievance process.

221. SBCSD has repeatedly denied grievances about conditions in the ALT and treatment of GBT inmates by stating that GBT inmates are housed and treated according to Department policy.

222. On May 2, 2014, counsel for Plaintiffs sent a letter to Janice Rutherford, Chair of the Second District Board of Supervisors, Sheriff John McMahon, and Captain Jeff Rose, identifying the systemic discrimination against GBT inmates identified in this Complaint, identifying remedies they believed were necessary, and inquiring whether the County was interested in attempting to negotiate a resolution of the issues raised in the letter. The County, through counsel, indicated that it disputed and denied Plaintiffs' claims, and was not interested in a meeting to discuss or negotiate the claims. Thus, Plaintiffs' attempts to resolve the issues through pre-litigation efforts were unsuccessful.

1    VII.   **CLASS DEFINITIONS AND RULE 23 PREREQUISITES**

2         *A*.    *CLASS DEFINITIONS*

3         223.   Plaintiffs bring this action on their own behalf, and on behalf of

4    various classes of all other persons similarly situated, pursuant to Rule 23 of the

5    Federal Rules of Civil Procedure. There are four classes alleged in this Complaint

6    – two Federal and two California classes. They are defined as follows:

7         a.   The California Damages Class is composed of individuals who

8              currently are, were in the past (within six months prior to the filing of

9              Veronica Pratt's Govt. Code §910 claim), or will be in future (until

10             such time as the unlawful policies and practices cease or judgment is

11             entered in this case), GBT inmates housed in the ALT. They bring

12             their claims against the various individual Defendants as explained

13             *infra* in the causes of action brought under California law. They seek

14             statutory damages of $4000 per violation for each class member

15             pursuant to California Civil Code §§52.1(b) and 52.

16        b.   The Federal Damages Class is composed of individuals who currently

17             are, were in the past (within two years of the filing of this complaint)

18             or will be in future (until such time as the unlawful policies and

19             practices cease or judgment is entered in this case), GBT inmates

20             housed in the ALT. They bring their claims against all Defendants

21             under 42 U.S.C. §1983.

22        c.   The California Injunctive Relief Class is composed of individuals who

23             currently are, or in the future without the intervention of this Court

24             will be, GBT inmates housed in the ALT and subject to the unlawful

25             treatment set forth in this Complaint. They bring their claims against

26             Defendants County, SBCSD and the individual Defendants under

27             California law.

28        d.   The Federal Injunctive Relief Class is composed of individuals who
               currently are, or in the future without the intervention of this court

47

will be, GBT inmates housed in the ALT and subject to the unlawful
treatment set forth in this Complaint. They bring their claims against
all Defendants under 42 U.S.C. §1983.

**B.** **NUMEROSITY**

224.    In accordance with F.R.Civ. P. Rule 23(a), the members of each class
are so numerous that joinder of all members is impracticable. Plaintiffs do not
know the exact number of class members. There are 32 GBT inmates who live in
the ALT at any given time, and there is constant change and turnover in who is
housed there. Plaintiffs are informed and believe, and thereon allege, that the
number of persons in each of the proposed damages classes is at least in the
hundreds, and that the number of persons in the proposed injunctive relief classes
is higher given that it covers future GBT inmates housed in the ALT.

225.    On information and belief, San Bernardino County jails (excluding
Adelanto) has a daily inmate population of approximately 5000-6000, of which the
majority are housed at WVDC
http://en.wikipedia.org/wiki/San_Bernardino_County_
Sheriff's_Department#Detentions_and_Corrections_Bureau).  In 2006, over
100,000 inmates were processed through the SBCSD jail system. Thus, the inmate
population turns over many times each year.

**C.** **COMMON ISSUES OF FACT OR LAW**

226.    In §IV of this Complaint, Plaintiffs set forth common factual
allegations for the treatment of GBT inmates in the ALT who comprise the
members of each class, which allegations are incorporated into this section of the
Complaint. In §V of this Complaint, Plaintiffs set forth factual allegations for the
Named Plaintiffs regarding their treatment as GBT inmates in the ALT, which are
also incorporated into this section of the complaint.[2]

---

[2] In ¶1, the term GBT inmates as used in this Complaint is limited to GBT inmates
housed in the ALT. Accordingly, we do not repeat each time the reference to being
in the ALT.

227.    In accordance with F.R. Civ. P. Rule 23(a), there are questions of fact common to the class. The common questions of fact include, but are not limited to the following:

        a.    Whether the SBCSD provides GBT inmates time outside of their cells equivalent to the time comparable non-GBT inmates housed in the general population receive outside of their cells;

        b.    Whether SBCSD allows GBT inmates to attend and participate in religious services while they are outside of their cell comparable to non-GBT inmates, and to receive religious materials and services inside their cells comparable to non-GBT inmates;

        c.    Whether SBCSD provides GBT inmates with educational programming, including regional occupational classes, vocational education classes, and GED classes comparable to non-GBT inmates;

        d.    Whether SBCSD allows pretrial GBT inmates the opportunity to work as trustees comparable to the opportunity provided non GBT inmates;

        e.    Whether SBCSD allows sentenced GBT inmates to participate in the inmate work program and receive good time work credits comparable to non-GBT inmates;

        f.    Whether SBCSD provides GBT inmates with access to the in person "INROADS" drug rehabilitation program, which is held at Glen Helen Rehabilitation Center, and allows them to receive time off their sentences for completing the program comparable to non-GBT inmates;

        g.    Whether SBCSD enforces hourly safety checks of GBT cells at WVDC comparable to non-GBT inmates;

49

h.      Whether SBCSD harasses, neglects, and humiliates GBT inmates due to their sexual orientation or gender identity.

228.    In accordance with F.R. Civ. P. Rule 23(a), there are questions of law common to the class. Plaintiffs are informed and believe and, thereon allege, that the common questions of law include but are not limited to the following:

a.      Whether the SBCSD has violated the equal protection rights of GBT inmates by allowing them less time out of their cell, regardless of their custody level, than non-GBT inmates.

b.      Whether the SBCSD has violated the equal protection rights of GBT inmates in their exercise of religious freedom.

c.      Whether the SBCSD has violated the equal protection rights of GBT inmates by failing to provide GBT inmates with educational programming, including regional occupational classes, vocational education classes, and GED classes comparable to non-GBT inmates.

d.      Whether the SBCSD has violated the equal protection rights of GBT inmates by failing to allow pre-trial GBT inmates to work as trustees comparable to non-GBT inmates.

e.      Whether the SBCSD has violated the equal protection rights of GBT inmates by failing to allow sentenced GBT inmates to participate in the inmate work program and receive good time work credits comparable to non-GBT inmates.

f.      Whether the SBCSD has violated the equal protection rights of GBT inmates by failing to allow them access to the in person "INROADS" drug rehabilitation program, which is held at Glen Helen Rehabilitation Center, and to receive time off their sentences for completing the program comparable to non-GBT inmates.

g.  Whether the SBCSD has violated the equal protection rights of GBT inmates by failing to enforce hourly safety checks of the ALT comparable to those for non-GBT inmates.

h.  Whether SBCSD has violated the equal protection rights of GBT inmates by harassing, neglecting and humiliating GBT inmates due to their sexual orientation or gender identity, unlike non-GBT inmates.

i.  Regardless of whether sub-paragraphs a-h, above, constitute violations of the equal protection of the law taken individually, whether the overall treatment of GBT inmates at WVDC violates their right to equal protection of the law under the totality of the circumstances.

j.  Whether the conduct described above constitutes a policy or custom of Defendants.

k.  Whether any individual Defendant is entitled to qualified immunity on the federal claims, or state law immunity on the state law claims, for the practices complained of herein.

l.  Whether the conduct described above violates the equal protection rights of class members under the California Constitution Article I, §1, 7 and/or the Fourteenth Amendment to the United States Constitution.

m.  Whether the conduct described above violates California Civil Code §§52.1 or 815.6.

n.  Whether the level of scrutiny under the applicable law is strict scrutiny or heightened scrutiny or some other level of scrutiny;

o.  Whether there is a lawful justification for any of the discriminatory treatment sufficient under the applicable level(s) of scrutiny.

51

p.    Whether class wide statutory damages are available under California Civil Code §§52.1 and 52(a).

q.    Whether presumed or general class wide damages are available under 42 U.S.C. §1983.

**D.   *TYPICALITY***

229.   In accordance with F.R. Civ. P. Rule 23(a), the claims of the representative Plaintiffs are typical of each class. All Named Plaintiffs were in SBCSD custody when they were subjected to unequal treatment in the ALT, which unequal treatment applied and applies to all inmates who are housed in the ALT. Named Plaintiffs were denied access to educational programming, religious services, work programs and good time release credits, and trustee programs; were treated differently from non-GBT inmates with respect to time outside of their cell, hourly safety checks; were subjected to harassment, name calling, neglect, and humiliation by SBCSD deputies based on their sexual orientation or gender identity; and were otherwise subjected to the discriminatory treatment alleged in the Complaint.

230.   Thus, Named Plaintiffs have the same interests, and have suffered the same type of damages as the class members. Named Plaintiffs' claims are based upon the same or similar legal theories as the claims of the class members. Each class member suffered actual damages as a result of the Defendants' discriminatory policies. The actual damages suffered by Plaintiffs are similar in type and amount to the actual damages suffered by each class member.

231.   In accordance with F.R. Civ. P. Rule 23(a), the Named Plaintiffs will fairly and adequately protect the interests of the class. The interests of the Named Plaintiffs are consistent with and not antagonistic to the interests of the class.

**E.   *MAINTENANCE AND SUPERIORITY***

232.   In accordance with Fed.R.Civ.P. Rule 23(b)(1)(A), prosecutions of separate actions by individual members of the class would create a risk that inconsistent or varying adjudications with respect to individual members of the

1    class would establish incompatible standards of conduct for the parties opposing

2    the class.

3        233.   In accordance with Fed.R.Civ.P. Rule 23(b)(1)(B), prosecutions of

4    separate actions by individual members of the class would create a risk of

5    adjudications with respect to individual members of the class that would, as a

6    practical matter, substantially impair or impede the interests of the other members

7    of the class to protect their interests.

8        234.   In accordance with Fed.R.Civ.P. Rule 23(b)(2), Plaintiffs are

9    informed and believe, and thereon allege that Defendants have acted on grounds

10   generally applicable to the class.

11       235.   In accordance with Fed.R.Civ.P. Rule 23(b)(3), the questions of law

12   or fact common to the members of the class predominate over any questions

13   affecting only individual members, and this class action is superior to other

14   available methods for the fair and efficient adjudication of the controversy between

15   the parties. The interests of class members in individually controlling the

16   prosecution of a separate action is low in that most class members would be unable

17   to individually prosecute any action at all. The amounts at stake for individuals are

18   such that separate suits would be impracticable in that most members of the class

19   will not be able to find counsel to represent them. It is desirable to concentrate all

20   litigation in one forum because all of the claims arise in the same location, i.e., the

21   County of San Bernardino. It will promote judicial efficiency to resolve the

22   common questions of law and fact in one forum rather than in multiple courts.

23   Because the discrimination alleged herein is systemic, it is particularly well suited

24   to resolution on a class basis, as the critical questions in the case may be answered

25   on a class wide basis.

26       236.   Plaintiffs do not know the identities of the class members. Plaintiffs

27   are informed and believe, and thereon allege, that the identities of the class

28   members are ascertainable from SBCSD records, in particular the SBCSD

     computer systems used to track and identify SBCSD inmates. Plaintiffs are

                                          53

informed and believe, and thereon allege, that the SBCSD computer records reflect the identities, including addresses and telephone numbers, of the persons who have been held in custody by SBCSD; when and on what charges inmates were arrested and booked, taken to court, returned from court; when and why inmates were released; what programs, work assignments and the like inmates participated in; and where inmates were housed.

237.   Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The class action is superior to any other available means to resolve the issues raised on behalf of the classes. The class action will be manageable because so many different records systems exist from which to ascertain the members of the class and to ascertain some of the proof relevant to Plaintiffs' claims. Liability can be determined on a class-wide basis based on class wide evidence because the Plaintiffs complain of systemic and widespread discriminatory policies and practices. Named Plaintiffs and the class members are entitled to statutory damages under state law, and to presumed damages under federal law; and, in any event, individualization or variability in damages is not a bar to a liability certification based on common liability issues.

238.   In accordance with Fed.R.Civ.P. Rule 23(b)(3), class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Plaintiffs are informed and believe that SBCSD computer records contain a last known address for class members. Plaintiffs contemplate that individual notice be given to class members at such last known address by first class mail. Plaintiffs contemplate that the notice inform class members of the following:

A.   The pendency of the class action, and the issues common to the class;

B.   The nature of the action;

54

C.    Their right to 'opt out' of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

D.    Their right, if they do not 'opt out,' to be represented by their own counsel and enter an appearance in the case; otherwise, they will be represented by the named Plaintiffs and their counsel; and

E.    Their right, if they do not 'opt out,' to share in any recovery in favor of the class, and conversely to be bound by any judgment on the common issues, adverse to the class.

239.    Plaintiffs restate and incorporate by reference each of the foregoing and ensuing paragraphs in each of the following causes of action as if each paragraph was fully set forth therein.

## VIII.  COUNT ONE – 42 U.S.C. §1983 [EQUAL PROTECTION] (ALL DEFENDANTS)

240.    Plaintiffs re-allege all the preceding and following paragraphs of, and allegations in, this Complaint.

241.    The unequal treatment of GBT inmates, based on sexual orientation and gender identity as alleged herein, deprives them of the protections afforded by the 14th Amendment's Equal Protection guarantee. Therefore, the Federal Damages Class Representatives and Class are entitled to damages, and the Federal Injunctive Relief Class Representatives and Class are entitled to injunctive relief, pursuant to 42 U.S.C. §1983.

242.    The aforementioned acts of Defendants proximately caused Plaintiffs to be deprived of their rights as stated above, thereby entitling the Federal Damages Class Representatives and Class to damages in an amount to be proven at trial, including punitive damages against the individual defendants.

243.    The Federal Injunctive Relief Class Representatives and Class are currently subject to, and will continue to be subject to, absent the intervention of

55

1  this Court, the unlawful treatment alleged herein and, therefore, seek injunctive

2  relief on behalf of themselves and the class of similarly situated individuals as

3  previously defined.

4  **IX.    COUNT TWO - CAL. CIV. CODE §52.1 (ALL INDIVIDUAL**

5  **DEFENDANTS)**

6      244.    Plaintiffs re-allege all the preceding and following paragraphs of, and

7  allegations in, this Complaint.

8      245.    The Defendants interfered with the California Damages Class

9  Representatives' and Class', and the California Injunctive Relief Class

10  Representatives' and Class', rights to equal protection of the law under the

11  California Constitutions, as previously alleged, by threat, intimidation or coercion.

12      246.    The aforementioned acts of Defendants proximately caused Plaintiffs

13  to be deprived of their rights as stated above, thereby entitling the California

14  Damages Class Representatives and Class to statutory damages as provided by

15  Civil Code §§ 52.1(b) and 52(a) and/or actual damages in an amount to be proven

16  at trial, and to punitive damages.

17      247.    The California Injunctive Relief Class Representatives and Class are

18  currently subject to, and will continue to be subject to, absent the intervention of

19  this court, the unlawful treatment alleged herein, and therefore, seek injunctive

20  relief on behalf of themselves and the class of similarly situated individuals.

21  **X.    COUNT THREE – VIOLATION OF CIVIL CODE §815.6 (AGAINST**

22  **DEFENDANTS COUNTY AND SBCSD)**

23      248.    Plaintiffs re-allege all the preceding and following paragraphs of, and

24  allegations in, this Complaint.

25      249.    The Federal and State Constitutional rights to equal protection of the

26  law are enactments as defined by, and within the meaning of, Cal. Govt. Code

27  §§810.6, 815.6.

28      250.    All California constitutional provisions are mandatory.

56

251.   All Federal constitutional provisions are mandatory.

252.   These constitutional provisions protect all members of the general public, including Plaintiffs, and were designed to prevent the kind of injuries alleged herein.

253.   Defendants did not exercise reasonable diligence in discharging their duty to refrain from violating the constitutional rights of Plaintiffs and class members.

254.   Governmental entities are directly liable under Civil Code §815.6 for violations meeting the statute's requirements, which the violations here alleged do.

255.   The aforementioned acts of Defendants proximately caused Plaintiffs to be deprived of their rights as stated above, thereby entitling the California Damages Class Representatives and Class to compensatory damages in an amount to be proven at trial, and to punitive damages.

256.   The California Injunctive Relief Class Representatives and Class are currently subject to, and will continue to be subject to, absent the intervention of this court, the unlawful treatment alleged herein, and therefore, seek injunctive relief on behalf of themselves and the class of similarly situated individuals.

## XI.   COUNT FOUR – INJUNCTIVE RELIEF PURSUANT TO ARTICLE 1, §7 OF THE CALIFORNIA CONSTITUTION [EQUAL PROTECTION] AND CAL. GOVT. CODE § 11135(A) (AGAINST DEFENDANTS COUNTY, SBCSD AND MCMAHON)

257.   Plaintiffs re-allege all the preceding and following paragraphs of, and allegations in, this Complaint.

258.   The Defendants interfered with the California Federal Injunctive Relief Class Representatives' and Class' rights to equal protection of the law under Article 1 §7 of the California Constitution, as previously alleged.

259.   California Government Code Section 11135(a) provides that no person, on the basis of sexual orientation or gender identity, shall be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to

57

discrimination under any program or activity operated or funded directly by the State.

260.    Plaintiffs are informed and believe that the County of San Bernardino and the San Bernardino County Jail receives financial assistance from the State of California.

261.    The aforementioned acts of Defendants proximately caused the California Injunctive Relief Class Representatives and Class to be denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, programs or activities receiving financial assistance from the State of California.

262.    The California Injunctive Relief Class Representatives and Class are currently subject to, and will continue to be subject to, absent the intervention of this court, the unlawful treatment alleged herein, and therefore, seek injunctive relief under the foregoing Constitutional provisions and statutes on behalf of themselves and the class of similarly situated individuals.

## XII.   APPROPRIATENESS OF EQUITABLE RELIEF

263.    The Federal and California Injunctive Relief Class Representatives and Classes are currently (or will in the future be) incarcerated at the WVDC and will continue to be discriminated against into the foreseeable future, absent intervention of this Court. Further, the SBCSD has informed Plaintiffs in response to complaints about the discriminatory treatment that they treat GBT inmates according to policy and deny any discriminatory treatment, thus they will not change how they discriminate against GBT inmates.

264.    SBCDC's continuing discrimination and unequal treatment of GBT inmates violates the Federal and California Injunctive Relief Class Representatives' and Classes' constitutional rights, and causes them continuing, sweeping and irreparable harm.

265.    Because no adequate remedy at law exists for the injuries alleged herein, Plaintiffs seek injunctive relief under both federal and state law.

## XIII. PRAYER

WHEREFORE, Plaintiffs, on behalf of themselves and the class members they represent, request damages against each defendant as follows:

1. General and special damages according to proof;

2. Temporary, preliminary and permanent injunctive relief prohibiting Defendants from continuing to engage in the unlawful practices complained of herein;

3. As against the individual Defendants only, punitive damages according to proof;

4. In addition to actual damages, statutory damages as allowed by law, including statutory and treble damages under California Civil Code §§52 and 52.1;

5. Attorneys' fees and costs under 42 U.S.C. §1988; California Civil Code §§52(b)(3), 52.1(h); California Code of Civil Procedure §1021.5, and whatever other statute or law may be applicable;

6. The costs of this suit; and

7. Such other relief as is just and proper.

Dated: October 22, 2014        KAYE, McLANE, BEDNARSKI & LITT, LLP

                                       By: _/s/ Barrett S. Litt_____
                                            David S. McLane
                                            Ronald O. Kaye
                                            Attorneys for Plaintiffs

Dated: October 22, 2014        American Civil Liberties Union of Southern California

                                         By: _/s/ Melissa Goodman_____
                                            Brendan M. Hamme
                                            Peter J. Eliasberg
                                            Attorneys for Plaintiffs

1

2

**DEMAND FOR JURY TRIAL**

3

Plaintiffs, on behalf of themselves individually and on behalf of the class,

4

demand a jury trial.

5

6   Dated: October 22, 2014                    KAYE, McLANE, BEDNARSKI &

7                                              LITT, LLP

8                                              By: _/s/ Barrett S. Litt_____

9                                                   David S. McLane

10                                                  Ronald O. Kaye

11                                                  Attorneys for Plaintiffs

12  Dated: October 22, 2014                    American Civil Liberties Union of

                                               Southern California

13

14                                             By: _/s/ Melissa Goodman_____

15                                                  Brendan M. Hamme

                                                    Peter J. Eliasberg

16                                                  Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28