BARRETT S. LITT, SBN 45527
blitt@kmbllaw.com
DAVID S. McLANE, SBN 124952
dmclane@kmbllaw.com
LINDSAY BATTLES, SBN 262282
lbattles@kmbllaw.com
KAYE, MCLANE, BEDNARSKI & LITT
975 East Green Street
Pasadena, California 91106
Telephone: (626) 844-7600
Facsimile: (626) 844-7670

MELISSA GOODMAN, SBN 289464
MGoodman@aclusocal.org
BRENDAN M. HAMME, SBN 285293
BHamme@aclusocal.org
PETER J. ELIASBERG, SBN 189110
PEliasberg@aclusocal.org
AMANDA C. GOAD, SBN 297131
AGoad@aclusocal.org
ADITI FRUITWALA, SBN 300362
AFruitwala@aclusocal.org
ACLU Foundation of Southern CA
1313 West 8th Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN MCKIBBEN, et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>JOHN MCMAHON, et al.,<br><br>        Defendants. | Case No.14-2171-JGB-SP<br><br>[Hon. Jesus G. Bernal]<br><br>**DECLARATION OF BARRETT S. LITT IN SUPPORT OF MOTION FOR FEES AND COSTS**<br><br>**Date:    February 11, 2019**<br>**Time:    9:00 A.M._**<br>**Place:   Courtroom 1** |

# DECLARATION OF BARRETT S. LITT

I, Barrett S. Litt, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and the United States District Court for the Central District of California. This declaration is submitted in support of Plaintiffs' Motion for Fees and Costs. The facts set forth herein are within my personal knowledge or knowledge gained from review of the pertinent documents. If called upon, I could and would testify competently thereto.

## I.   BACKGROUND AND CIVIL RIGHTS/ATTORNEY FEE EXPERTISE

2. Since 1984, I have been the principal or senior partner in firms that operate for the specific purpose of developing and maintaining a civil rights and public interest law practice that operates in the private sector on the basis of self-generated fee awards and other recoveries. Since January 1, 2013, I have been a partner in the law firm of Kaye, McLane, Bednarski & Litt (referred to at times as "KMBL").  Between September 2010 and December 31, 2012, I was a partner in the law firm of Litt, Estuar, and Kitson, which still operates to some extent as an independent firm to complete certain old cases. From July 2004 to September 2010, I was a partner in the law firm of Litt, Estuar, Harrison, and Kitson. From 1998 to July 2004, I was the principal in the law firm of Litt & Associates, Inc. From September 1, 1991 to May 1, 1997, when my then partner left the law firm to become Deputy General Counsel for Civil Rights at the federal Department of Housing and Urban Development, I was a partner at the firm of Litt & Marquez. For the seven years prior to that, I was a partner in the firm of Litt & Stormer, Inc.

3. I graduated from the University of California at Berkeley in 1966 and from UCLA School of Law in 1969. For the first approximately ten years of my practice, I focused primarily in the area of criminal defense at the trial and appellate levels, mostly in federal courts. In that capacity, I handled hundreds of

matters, tried many cases ranging from immigration offenses to murders, and
handled numerous appeals. Since 1981, I have focused primarily on complex civil
litigation in the areas of constitutional law, civil rights law, class action litigation,
and complex multi-party litigation.

4. My former firm, Litt & Stormer, received the Pro Bono Firm of the Year
Award from Public Counsel in 1987 in recognition of its public interest and civil
rights work. Litt & Marquez received an award from the NAACP Legal Defense
Fund in July 1992, as civil rights firm of the year in recognition of its civil rights
work. I received an award from UCLA School of Law as its public interest
alumnus of the year in 1995 and received a CLAY award for my work in
*Goldstein v. City of Long Beach, et al.*, along with my co-counsel in the case,
described in ¶12 *infra*.

5. I have both spoken and written on the subject of civil rights training. I
published an article entitled "Class Certification in Police/Law Enforcement
Cases" in Civil Rights Litigation and Attorney's Fee Annual Handbook, Vol. 18,
Ch. 3 (West Publishing 2002) and one for the National Police Accountability
Project titled "Select Substantive Issues Regarding Class Action Litigation In The
Jail/Prison Setting", National Police Accountability Project, October 2006. I
published an article in the Los Angeles Lawyer regarding the use of minimum
statutory damages under the Unruh Act, particularly actions brought under Civil
Code §52.1, to enhance the prospects for certifying class actions. See "Rights for
Wrongs," Los Angeles Lawyer December 2005. In 2010, I published an article in
West's Civil Rights Litigation and Attorney's Fee Annual Handbook entitled,
"Obtaining Class Attorney's Fees." I am rated "AV" by Martindale-Hubbell. I
am, and have been for many years, listed in Super Lawyers Southern California in
the fields of civil rights and class actions.

6. My curriculum vitae is attached as Exhibit "A" to this declaration.

2

7. I am considered an expert in, among other things, attorneys' fees in civil rights and class action cases. I have frequently trained attorneys regarding obtaining and properly documenting statutory attorneys' fee awards. I have filed declarations on numerous occasions expressing expert opinions on the appropriate standards for awards of attorneys' fees in civil rights cases, which have been accepted by various courts.

8. In the State Bar proceeding *In re Yagman*, I was qualified as an expert in attorneys' fees under 42 U.S.C. §1988 and testified in person on whether or not Mr. Yagman's fee arrangement in a police shooting case was or was not unconscionable, as the State Bar contended in that case. I also recently testified in a State Bar proceeding as an expert on civil rights practice in the context of police and jail litigation.

9. In 2007, I testified as an attorneys' fee expert in a civil rights case on behalf of plaintiffs represented by a major law firm in Los Angeles. The case had a confidential settlement, with fees to be arbitrated by a former superior court judge then at JAMS. Because the settlement and arbitration were confidential, I do not feel at liberty to identify the issues, parties, firms or retired judge involved. However, there was a defense fee expert in that case who described me as "a prominent Los Angeles civil rights litigator experienced in fee issues arising from public interest litigation." The arbitrator described my testimony as "credible and reliable", and described me as having "had a wide exposure to fees at a number of major firms in Los Angeles doing complex civil litigation."

10. I have also on occasion represented other attorneys in their fee litigation seeking statutory attorneys' fees.

11. I litigate a wide range of civil rights cases, including police and jail abuse, wrongful conviction, housing and employment and other discrimination, and violation of a wide range of constitutional rights. My current emphases are civil rights class actions and wrongful convictions cases. I am currently lead or

co-lead counsel in pending civil rights class actions in the Los Angeles area and in other jurisdictions, including Washington D.C., Maryland and Georgia.

12. As I mentioned, my full curriculum vitae is attached. To give some sense of my experience, I mention here the largest civil rights cases in which I have been the, or one of the, lead counsel:

> *Williams v. Block*, Case No. CV97-03826 CW (C.D. Cal.) and related cases (a series of cases county jail overdetention and strip search cases, settled for $27 Million and a complete revamp of jail procedure);

> *McClure v. City of Long Beach* (fair housing case against City of Long Beach for preventing six group homes for the handicapped from opening; jury verdict before remittitur of $22.5 Million (exclusive of attorneys' fees) rendered 8/04/04; case recently settled for $20 Million);

> *Craft v. County of San Bernardino*, EDCV05-0359 SGL (C.D. Calif.) (reported at 2008 U.S.Dist. LEXIS 27526) (certified class action against the Sheriff of San Bernardino County for blanket strip searches of detainees, arrestees, and persons ordered released from custody; partial summary judgment decided for plaintiffs; $25.5 Million settlement plus injunctive relief in 2008);

> *MIWON v. City of Los Angeles*, Case No.: CV07-3072 AHM (FMMx) (class action on behalf of demonstrators attacked by LAPD in MacArthur Park on May 1, 2007; settled in 2009 for $12.75 Million plus injunctive relief);

> *Bynum v. District of Columbia*, Case No. 02-956 (RCL) (D.D.C.) (certified class action against the District of Columbia for overdetentions and strip searches of persons ordered released from custody, settled for $12 Million in 2006);

4

➤ *Nozzi v. Housing Authority of the City of Los Angeles*, Case No. CV 07-00380 PA (FFMx) (settlement of estimated $9.25 Million for failing to provide proper mandated notice prior to subsidy reduction to Section 8 Housing Choice Voucher Program holders pending);

➤ *O'Connell v. County of Los Angeles,* Case No. 13-CV-01905 MWF (PJWx)  ($15 Million settlement in wrongful conviction case);

➤ *Gamino v. County of Ventura*, Case No. CV02-9785 CBM (Ex) (C.D. Cal.) (settlement for putative class fund of approximately $12 Million for persons arrested on possession of drugs and strip searched);

➤ *Goldstein v. City of Long Beach*, et al., Case No. CV04-9692 AHM (Ex) (C.D. Cal.) (wrongful conviction case against Long Beach Police Department based on violation of *Brady v. Maryland* for man imprisoned for 24 years; $7.95 Million settlement in August 2010);

➤ *Lopez v. Youngblood*, 609 F.Supp.2d 1125 ((E.D. Cal. 2009) (Settlement approved for putative class fund of approximately $7 Million for inmates strip searched after becoming entitled to release, and strip searches in groups);

➤ *Barnes v. District of Columbia*, Case 1:06-cv-00315-RCL 02-956 (RCL) (D.D.C.) (*Bynum* follow-up certified class action against the District of Columbia for overdetentions and strip searches of persons ordered released from custody, settled for $6 Million in 2013).

13.  My qualifications have been noted by various courts or opposing experts. Following are a few examples:

a.      Central District Judge Consuelo Marshall, in a recent fee decision in *Rodriguez et al. v. County of Los Angeles et al.*, CV 10-6342-CBM (AJWx) (12/27/2014), found that "Barrett S. Litt, who served predominantly in a consulting role on this case, is considered one of the

5

leading civil rights attorneys in the country" and that the requested rate "of $975 per hour for Attorney Litt is supported by his strong reputation and experience." See also Judge Marshall's comments in *Gamino v. County of Ventura*, Case No. CV02-9785 CBM (Ex) ("Mr. Litt is widely known as one of the foremost civil rights attorneys in California, having a particular expertise in civil rights class actions and other complex multi-party civil rights cases, especially law enforcement class actions").

b.    Kenneth Moscaret, a well-known defense fee auditor, has stated in a declaration where he addressed my qualifications that I had "an outstanding background and reputation in civil rights/constitutional litigation in Los Angeles", that I was "one of the top litigators in [my] field" and that he believed that my "skill, experience, and reputation in his field are deserving of a premium rate" (although he thought a premium rate was lower than I do).

c.    Magistrate Judge Carla Woehrle, in awarding attorneys' fees in *Williams v. Block*, *supra*, commented that I am "considered one of the outstanding civil rights litigators in California, with special expertise in class actions, [and] the other attorneys involved in this litigation on behalf of the class are highly regarded, experienced and capable civil rights attorneys…."

d.    United States District Judge Stephen Larson, in awarding attorneys' fees in *Craft v. County of San Bernardino*, *supra*, commented that "Plaintiffs' counsel are experienced civil rights litigators who are at the top of their field of expertise – civil rights litigation with special expertise in civil rights class actions."

e.    In awarding attorneys' fees in *Gamino v. County of Ventura*, Case No. CV02-9785 CBM (Ex), the Court stated, "Mr. Litt is widely known as one of the foremost civil rights attorneys in California, having a

particular expertise in civil rights class actions and other complex multi-party civil rights cases, especially law enforcement class actions."

      f.     In *Molina v. Lexmark International Inc.*, LA Super. Ct. No. BC339177, Order Granting Plaintiff's Motion for Attorney's Fees and Costs in the Amount of $5,772,008.07, filed Oct. 28, 2011 at 4., where I submitted a declaration in support of a fee motion, Judge Gregory W. Alarcon described another attorney and me as "acknowledged experts in attorney fees in class action cases . . . ."

    14.  As my case list demonstrates, I have been involved with, and successful in, a wide range of complex civil rights cases, and have regularly brought fee motions under numerous federal and state fee shifting provisions. I frequently provide fee declarations in support of fee applications by other attorneys in civil rights cases, which have been cited in fee orders in the Central District to support fees that are in line with those that counsel for the Plaintiffs are seeking in this case. See, e.g., *Rauda v. City of Los Angeles*, CV08-3128 CAS (PJW), Fee Order dated 12/20/2010, p.10 ("With respect to the reasonableness of the fees requested, the Court finds that plaintiffs have sufficiently documented the fees requested. It further concludes, and is satisfied based on the declarations of Barrett S. Litt and Carol A. Sobel in support of plaintiffs' motion that the hourly rates requested by plaintiffs are consistent with those in the relevant legal community for individuals having the stature of plaintiffs' counsel."); *Lauderdale v. City of Long Beach*, No. CV 08-979 ABC (JWJx), Fee Order dated 1/11/2010, p.11 ("Barrett S. Litt, another experienced civil rights litigator, also testified that the rates are in line with the Southern California market, his own experience, and fee awards in similar cases.").

    15.  I regularly review a variety of material to keep abreast of rates charged and awarded for complex litigation in Southern California. I do this in a variety of ways, including contacting firms to provide (on either a public or confidential basis) current rate information; speaking with other attorneys familiar with

complex litigation rates; reviewing court filings and cases regarding attorneys' fees (including both fee applications and fee awards); and obtaining other sources of fee information. I have also reviewed rates reported in Court Express for bankruptcy work by California law firms for the year 2009. My review of selected billing rate information has included, at various times, review of rates from various large law corporate firms. In particular, I have recently collected a wide variety of civil rights awards (either lodestar awards or lodestar crosschecks in civil rights class action fee awards) and class action awards in consumer cases with lodestar crosschecks, the results of which are described further on in this declaration. This has included review of rates sought and awarded to such boutique civil rights firms as my own firm(s); the ACLU; the Disability Rights Legal Center; Disability Rights Advocates; Hadsell, Stormer et al.; the Law Offices of Carol Sobel; Schonbrun, DeSimone et al., and awards to various individual practitioners. In addition, to the extent I am able, I collect information regarding commercial rates; there are periodically reported decisions addressing fee awards in commercial cases, which I periodically review.

## II.    WORK PERFORMED ON THIS CASE

16.  My law firm, Kaye, McLane, Bednarski & Litt ("KMBL") began work on this case in early 2014. Because the issues in the case concerned the rights of incarcerated gay and transgender people, an area in which the ACLU had been very active, we approached the ACLU of Southern California, with whom we had co-counseled on numerous other occasions, regarding co-counseling the case with us, which they agreed to do.

17.  As the attorney on the team with the most class action experience, especially in cases seeking class damages as well as injunctive relief, and also the attorney with the highest billing rate, my role was primarily initial assessment of the legal issues, helping frame the complaint, working on the opposition to the motion to dismiss, general case strategy, participation in planning meetings on

work to be done and consultations with experts, mediation and settlement activities, and drafting the post-settlement in principle documents. I did not participate in document review and analysis (although I did review summaries of such analyses) and did not participate in traveling to the San Bernardino County Jail to interview class representatives and class members.

18. The other KMBL attorneys involved in this case on an ongoing basis were David McLane and Lindsay Battles. Julia White was the primary KMBL paralegal working on the case.

19. The ACLU attorneys primarily involved in this case on an ongoing basis were Melissa Goodman and Brendan Hamme. Amanda Goad became heavily involved after she joined the ACLU SoCal in April 2017. Diana Gonzalez was the primary ACLU paralegal working on the matter. In addition, attorneys Aditi Fruitwala and Tasha Hill worked actively on the case while they were at the ACLU.

20. KMBL attorneys, paralegals and law clerks worked on *McKibben* from January 2014 to the present.  ACLU attorneys and paralegals worked on *McKibben* from later in 2014 to the present. The tasks evolved as the litigation went from pre-filing investigation, filing of administrative claims, filing of the complaint, litigating a motion to dismiss, meetings with defense counsel and the SBCSD to focus the discovery and engage in discussions on injunctive relief, responding and analyzing discovery, engaging in mediation and settlement with the Honorable Carla M. Woerhle over a two year period, preparing and commencing depositions, filing the class certification and approval documents, and now class administration.

21. More detailed information regarding the civil rights and class action experience of the different Plaintiffs' counsel was provided in the declarations of Melissa Goodman and myself in support of the motion for class certification and will not be repeated here.

### A.    PRE-FILING INVESTIGATION:

22. Evan Ettinghoff, a law school graduate from Loyola Law School recommended by Laurie Levenson, was hired part-time specifically to assist with the pre-filing investigation in *McKibben*, spending his approximately 52 hours traveling to the West Valley Detention Center to interview GBT detainees in the ALT in order to substantiate claims made about the programming, work and conditions of confinement in the ALT.  Along with Mr. McLane, who also went to the ALT to interview detainees, they interviewed the detainees to gather information necessary to determine whether to file administrative 910 claims and a lawsuit.  Mr. McLane has the highest number of billable hours. Along with myself, he has been involved in the litigation from its inception in 2014 to the present, almost five years.

### B.    FILING OF ADMINISTRATIVE CLAIMS:

23. Mr. McLane, along with Julia White, senior paralegal on the case, and Esteban Gil, KMBL junior paralegal, spent substantial time on making 910 government claims for various class members.  Ms. White also spent hundreds of hours developing, maintaining and updating an Excel spread sheet of class members, organizing the file and documents received in discovery, and responding to class member inquiries.  Junior paralegals Esteban Gill and Rene Arriaza assisted with those efforts.

### C.    FILING OF COMPLAINT AND LITIGATING A MOTION TO DISMISS:

24. Along with the ACLU, Mr. Litt and Mr. McLane spent substantial hours drafting a class action complaint, which required careful analysis to have class representatives filing specific claims, for example, class representatives who were no longer in custody so they were not subject to the Prison Litigation Reform Act ("PLRA") for the federal damages class, state damages class representatives who timely filed after being denied administrative 910 claims, but

who were prisoners at the time of filing, class representatives who were inmates at the WVDC at the time of filing for state injunctive relief, and certain members who were federal injunctive relief class representatives who exhausted or attempted to exhaust administrative remedies.

25.    Substantial time was spent gathering the evidence to draft the complaint allegations, as well as formulating the causes of action since the lawsuit was novel in alleging equal protection violations based on GBT status and identity based on unequal access to programs, work, time out of cell, etc., as compared to general population inmates. Ms. Hill, who from 2015 to 2017 was a legal fellow with the ACLU SoCal focusing on LGBTQ criminal justice issues, as well as ACLU SoCal staff attorney Mr. Hamme, did extensive research on legal, constitutional, and factual issues during this time, while Ms. Goodman supervised their work.

26.  Additionally, Mr. Litt and Mr. McLane drafted the opposition to the motions to dismiss certain claims, and were successful in keeping the Bane Act claim, Civil Code §52.1, in the complaint.

### D.    MEETINGS WITH DEFENSE COUNSEL, EXCHANGE OF INFORMAL DISCOVERY, AND DISCUSSIONS ON INJUNCTIVE RELIEF

27.  Since SBCSD was receptive to attempting resolution of the case without full blown litigation,  the parties spent a substantial period of time meeting to discuss the facts on the ground at the ALT, the issues involved in the case, and attempting to reach compromise on various issues.  The parties also engaged in informal discovery to avoid the expenditure of resources in formal discovery where there were documents. facts and questions that could be produced and answered voluntarily.  These meetings commenced in 2015 and continued up to and including 2018.  Along with members of the ACLU team, particularly Ms. Goodman and Mr. Hamme, Messrs. Litt and McLane, along with Ms. Battles, participated in these meetings for KMBL, which required legal

analysis, analysis of the information provided, and strategizing and meeting with clients to determine areas of compromise.

### E.    RESPONDING TO AND ANALYZING DISCOVERY:

28.  Substantial time was spent by Mr. McLane, Ms. Battles, and Ms. Goodman, Mr. Hamme, and Ms. Hill for the ACLU, to prepare and propound document requests, and interrogatories, and to review and summarize the documents by subject matter so that Plaintiffs' counsel could fully understand the issues and policy changes needed with specificity. Ms. Gonzalez, as the ACLU's senior paralegal, also invested significant time in review, analysis, and organization of the documents produced.  Further, SBCSD propounded discovery to each of the 16 class representatives, document requests and interrogatories, which required the attorneys to meet with the class representatives, gather the required information, and draft formal written responses. Additionally, substantial time was expended by Ms. Battles to analyze the discovery propounded to the defense, and send discovery letters to the defense to obtain additional discovery.

29.    During this time, Ms. Battles and Mr. McLane spent substantial time with inmates at the ALT to determine current conditions of confinement, and Ronald O. Kaye, an attorney with KMBL, and Sujata Awasthi, a KMBL law clerk, assisted with those efforts. Mr. Hamme and Ms. Hill, as well as Ms. Gonzalez, similarly spent significant time visiting and corresponding with class representatives and other affected individuals to assess the conditions in the ALT. Several other ACLU paralegals and law clerks also contributed to this process but are not included here because their total documented time was less than 20 hours per person.

### F.    FORMAL MEDIATION WITH THE HONORABLE CARLA M. WOERHLE:

30.  The three primary KMBL attorneys (Litt, McLane and Battles), along with Ms. Goodman and Mr. Hamme from the ACLU, prepared for, and engaged in, lengthy mediation meetings with former Magistrate Judge Carla M. Woehrle

to see if there could be a settlement on 1) the injunctive relief, 2) damages, and 3) attorneys' fees.  The mediation was conducted in stages, first, seeing if the parties could work out an injunctive relief proposal, second, to determine agreement on a damages fund, and the final stage, statutory attorneys' fees.  The most important part of the mediation, and what took the longest to resolve, requiring several meetings with Judge Woehrle, was the injunctive relieve stage.  Once that was completed, there was still substantial work to be done on the damages and attorneys' fees, which were ultimately resolved.

31. Meetings on injunctive relief occurred in sessions in which Judge Woehrle was actively involved, as well as several joint sessions between Plaintiffs' and defense counsel. Memoranda of understanding were drafted and refined over several sessions, with certain issues ultimately resolved with the assistance of Judge Woehrle. Similar, although not as protracted, sessions occurred regarding damages and attorney's fees.

### G.    PREPARING FOR DEPOSITIONS AND LITIGATION

32. Because the case had not been settled in early 2018, the parties commenced to engage in formal litigation, and commenced the meet and confer process on outstanding discovery disputes, and also noticed depositions.  Two depositions were taken by the defense, after which the parties were able to finalize their differences and settle the case. David McLane and Amanda Goad defended these depositions after spending significant attorney time preparing for them.  Lindsay Battles and Brendan Hamme also spent time preparing for other depositions that were ultimately taken off calendar.  Julia White, senior paralegal, along with ACLU paralegals, spent substantial time organizing a file for each of the class representatives whose deposition was being taken by the defense. During this period, Aditi Fruitwala and Diana Gonzalez, among other team members, also spent significant time communicating with class representatives

regarding the status of the case, discovery process, what to expect in depositions, and deposition preparation.

### H.  SETTLEMENT

33. Primarily Mr. Litt, with the assistance and input of the other KMBL and ACLU attorneys, spent a substantial number of hours drafting the settlement agreement, the class certification motion and the motion for preliminary approval (as well as the instant fee motion, most of the time for which occurred after the September 21 cutoff for fees listed for this motion).  There were exchanges of drafts and follow-up discussions to finalize and agree on these documents.

34. Mr. McLane and Ms. Battles, and ACLU attorneys Mr. Hamme and Ms. Goad held extended discussions with the 15 class representatives to explain the proposed settlement and obtain their agreement to it.

35. KMBL attorneys are also currently coordinating with the class administrator and communicating with class members to explain the settlement and to optimize the number of class members filing a claim to the damages.  This involves communicating with the class members, as well as with the class administrator. The Class Administrator has advised that, as of October 26, there were 64 approved claims out of 660 class members; based on my experience with jail class actions, this is an above average claim rate in a jail class action for this stage of the process. To date, there have been no objections and no opt outs.

## III.  PARTICULAR CHALLENGES OF JAIL CLASS ACTIONS AND THE ISSUES PRESENTED IN THIS CASE

36. This was a complex case. First, class actions are generally considered one of the most complex types of litigation. "It is common knowledge that class action suits have a well-deserved reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Second, civil rights cases, even if not class actions, are generally considered complex

litigation. Indeed, Congress recognized the complexity of civil rights cases when the civil rights attorneys' fee statute (42 U.S.C. §1988) was passed in 1976. The legislative history states, "It is intended that the amount of fees awarded under S. 2278 (42 U.S.C. §1988) be governed by the same standards which prevail in other types of equally complex federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature." S.Rep.No. 94-1011, 1976 U.S.Code Cong. & Admin.News at 5913.

37.  The issues in this case involve complex issues of constitutional law, involving application of equal protection of the law standards to gay, bisexual and transgender individuals in a jail context. As a threshold matter, Plaintiffs faced the challenge of establishing a *Monell* violation, itself a challenge in any case. *See, e.g., Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (Justice Breyer, dissenting and calling for reexamination of *Monell* because it "*has generated a body of interpretive law that is so complex that the law has become difficult to apply*" and noting, *inter alia*, the difficulty of the concept that official action be "so likely to result in violations of constitutional rights that he [the policymaker] could reasonably [be] said to have been deliberately indifferent to the constitutional needs of the Plaintiff" and the difficulty of "decid[ing whether a failure to make policy was deliberately indifferent," or, "for example, whether it matters that some such failure occurred in the officer-training, rather than the officer-hiring, process") (emphasis supplied, internal quotation marks removed).

38.  Additionally, in jail and prison cases, Plaintiffs must overcome the broad deference provided jail administrators in reaching judgments about the handling of prison conditions, rules and regulations. *See, e.g.*, *Bell v. Wolfish*, 441U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to

maintain institutional security."); *Procunier v. Martinez*, 416 U.S. 396, 404–05
(1974) (explaining that although the protections of the Constitution extend to
prisoners, "courts are ill equipped to deal with the increasingly urgent problems
of prison administration and reform"; questions of institutional competence and
the separation of powers counsel "a policy of judicial restraint" when it comes to
prisoners' rights), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S.
401, 411, 413 (1989); *see also Thornburgh*, 490 U.S. at 414 (overruling
*Procunier* because it could be read as extending *too little* deference to prison
administrators); *Turner v. Safley*, 482 U.S. 78, 84–85 (1987) (adopting a four
factor test to determine if prison action is "reasonably related to legitimate
penological interests"). As one commentator has explained, "[T]he *Turner*
Court's elaboration of each of [the factors underlying the reasonableness
standard] leaves no doubt that the test is intended to be extremely deferential, and
provides language for lower courts to draw on to frame this deference as a legal
mandate." Sharon Dolovich, *Forms of Deference in Prison Law*, 24 FED.
SENT'G REP. 245, 246 n.2 (2012).

39.  Any such risk is only compounded by the fact that the defendants are
government employees and entities. Such defendants often proceed with litigation
from the perspective that they are less concerned with money than protecting their
prerogatives, and thus do not engage in the same risk-benefit analysis that private
defendants do. This often makes settlement more difficult.

40.  These challenges intersect with the challenge from a trial perspective of
representing inmates, who are generally viewed by the public with greater
suspicion than other plaintiffs. *See Battle v. Anderson*, 564 F.2d 388, 398 (10th
Cir. 1977) (in prisoner civil rights class action, "plaintiffs' class are generally a
feared and despised class"); *Morales* Feliciano *v. Hernandez Colon*, 697 F.Supp.
51, 60 (D.P.R. 1988) ("The general population's attitude toward those who
commit or are accused of committing crimes is understandably one bordering in

16

despise. Many [] believe that since plaintiffs are criminals, they deserve the conditions under which they live in the prisons."). Although things have changed significantly in the past twenty years, community attitudes towards gay, bisexual and transgender individuals are mixed; it was, after all, only ten years ago that Proposition 8, banning gay marriage, was adopted by a majority of California voters.

41.    Finally, while it has been established that equal protection extends to sexual orientation, the reach of that protection and the level of scrutiny remains amorphous, confused and largely undeveloped. *See, e.g., United States v. Windsor*, 570 U.S. 744, 793, 133 S. Ct. 2675, 2706, 186 L. Ed. 2d 808 (2013) (striking down Defense of Marriage Act) (Scalia, J. dissenting) ("if this is meant to be an equal-protection opinion, it is a confusing one"); *Hively v. Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d 339, 342 (7th Cir. 2017) ("Especially since the Supreme Court's recognition that the Due Process and Equal Protection Clauses of the Constitution protect the right of same-sex couples to marry, *Obergefell v. Hodges*, 576 U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015), bizarre results ensue from the current regime"); Mary Ziegler, *Perceiving Orientation: Defining Sexuality After Obergefell*, 23 Duke J. Gender L. & Pol'y 223, 248–49 (2016) ("*Obergefell* leaves many questions unanswered. Kennedy does little to resolve the standard of scrutiny applied to sexual-orientation classifications. While *Obergefell* explicitly concludes that same-sex marriage bans in some way violate both the Due Process and Equal Protection Clauses, the decision provides no real map for lower courts dealing with sexual-orientation classifications"). While Plaintiffs believed that their case was strong, they also recognized the challenges given the still developing state of the law.

42.  Management of the case was complicated by the large number of class representatives and by keeping up to date on day to day developments. Due to the challenges posed by the PLRA, there was a need to have damages class

representatives who were no longer in jail, but injunctive relief representatives needed to be in jail. There were both federal and state claims, and timely §910 class claims had to be presented. Clients regularly contacted counsel regarding problems or new developments, and counsel spent hundreds of hours  visiting and communicating with the class representatives and class members.

43.  Data collection and analysis was also complicated. Because conditions changed over time, Plaintiffs ultimately had to analyze data broken into important time periods. Significant hours were required of both Plaintiffs' counsel and their expert, Brian Kriegler as is reflected in the thousands in expert fees advanced to Dr. Kriegler's firm, Econ One.

## IV.    THE RISK OF NON-RECOVERY IN CLASS ACTIONS IS WELL DOCUMENTED.

44.  In addition to the contingent risk in §1983 cases such as this, where the attorneys are only paid if they are successful, and cases are usually hotly litigated, another layer of risk exists because of the risk involved in class litigation, where the risk of non-recovery is greater due to the added layer of risk of non-recovery involved in class actions.

45. Class actions are by definition tailored to claims where the individual claims are so small that litigating the individual claim is not economically viable. Thus, in cases  "involving small claims…, there will either be a class action or there will be no litigation. A class action is not only superior to other forms of litigation; it is the only form of litigation." *2 Newberg on Class Actions* §4:87 (5th ed.) (§4:87. Comparing class actions to alternate forms of litigation—Small claims cases—No alternatives to class suit);  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617, 117 S. Ct. 2231 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry

potential recoveries into something worth someone's (usually an attorney's) labor").

46. Accordingly, in a class action there is a unique double risk. First, there is a risk that the class will not be certified, functionally dooming the economic rationale for the case even if the individual named Plaintiff's claim is meritorious. In civil rights class actions such as this, that risk is even greater because Plaintiffs must establish not only commonality but must demonstrate the existence of a custom and practice of constitutional violations to establish *Monell* liability. See also Section III regarding the complexity and risk of *Monell* litigation.

47. Second, there is a risk in all cases of losing on the merits.

48. That there is substantial risk of non-recovery in class action litigation is not just a matter of personal opinion. The Federal Judicial Center published a report in 1996, entitled "Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules" ("FJC Report").[1] The study was requested by the Judicial Conference Advisory Committee on Civil Rules when it was considering proposals to amend Rule 23 of the Federal Rules of Civil Procedure. The study is based on 407 class action lawsuits that either settled or went to verdict in the two year period from July 1, 1992 through June 30, 1994, in four federal district courts: the Eastern District of Pennsylvania (Philadelphia); the Southern District of Florida (Miami), the Northern District of Illinois (Chicago); and the Northern District of California (San Francisco). (FJC Report, pp. 3-4, 7-8.)

49. For the 407 class actions, the Report reports the following regarding class certification:

---

[1] The entire FJC Report is 187 pages, and will be made available to the court should it wish to have a copy.

a.    In 59 of the cases (14.5%), the class claims were certified for settlement purposes only. *Id.* at p. 35.

b.    In 93 of the cases (22.85%), the class claims were certified unconditionally. *Id.*

c.    Therefore, a total of 152 cases (37.35%) had certified classes, and the other 255 (62.65%) did not. *Id.*

d.    In at least 23 of the certified classes, the outcome was unfavorable to Plaintiffs. This is based on Table 39 of the FJC Report (at p. 179), which lists the following outcomes adverse to plaintiffs in certified class cases (excluding classes certified for settlement purposes only): nine dismissals by motion, one stipulated dismissal, one non-class settlement, and twelve summary judgments. *Id.* at p.179, Appendix C, Tables 39.

50.  Thus, in summary, the successful class claims from the total 407 filed class actions totaled 129 or less (152 minus 23). Using the number 129/407 to get a percentage, 31.7% or less of the filed class cases resulted in successful class outcomes for plaintiffs. This does not account for the degree of success (i.e., some cases could have resulted in minimal or partial success, and they would still be in the successful claim category).

51.  The Empirical Study also examined "the 'cynical belief' that ' many class actions serve only to confer benefits on class counsel.'"  (*Id.* at p.68.)  To do so, the recovery of attorneys' fees by class counsel was compared to the relief obtained for the class "where some form of monetary benefit was available for distribution to class members after payment of attorneys' fees and expenses, notice costs and other administrative expenses."  (*Id.*)  The Report found that:

"In most cases, the net monetary distribution to the class exceeded attorneys' fees by substantial margins.  The fee-recovery rate infrequently exceeded the traditional 33.3% contingency fee rate.  Median rates ranged from 27% to 30%.  Most fee awards in the study

20

were between 20% and 40% of gross monetary settlement." (*Id.* at pp. 68-69; citation and footnote omitted.)

52. The Report then concluded, "[W]e found that attorneys' fees were generally in the traditional range of approximately one-third of the total settlement. While attorneys clearly derived substantial benefits from settlements, the recoveries to the class in most cases were not trivial in comparison to the fees." (*Id.* at p. 90.)

## V.    SOURCE MATERIALS RELIED ON FOR RATE OPINIONS

53. The rate information on which I rely is set forth in full in Exhibit B to this Declaration, which is incorporated by this reference and is broken into three tables, described as follows:

> ➤ Table 1: *Civil Rights Lodestar Awards/Lodestar Crosschecks*. These are taken from reported attorney fee awards, or filed court orders, in civil rights cases where there was either a direct lodestar award or a lodestar crosscheck against a percentage of the settlement or award fee.

> ➤ Table 2: *Consumer/Wage & Hour Class Action Lodestar Crosschecks*. This is self-explanatory, and was taken from reported cases.

> ➤ Table 3: *Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports*. These are a firm's standard rates reported either in a court filing, referred to in a court decision, provided to counsel, or contained in the 2009 Court Express summary of bankruptcy filings referred to previously.

54. Exhibit B contains three cuts of the same information, each containing three tables, organized and designated as follows: 1) organized by case; 2) organized by years of graduation, most to least; and 3) organized by rates, highest to lowest (based on the adjusted rate for the year 2014, which concept is described

below). I draw on this rate information in addressing the reasonableness of the rates requested in the Defendant/Appellee's motion, and include what I consider the most relevant references in the body of this Declaration.

55. In the charts that I attach as Exhibit B, and incorporate as relevant into the body of this Declaration, I provide the following information:

| Term | Description |
|------|-------------|
| Attorney | The name of the attorney awarded the rate listed or, for the commercial firms, their normal rates (or indicate if the individual identity is unknown) |
| Firm | The firm listed |
| Practice Yrs | The years in practice at the time of the award or, if it could be clearly determined from the opinion or other available information, the years in practice when the fee application was made. In parentheses are the years of law school graduation |
| Rate | The rate awarded in the case of awards, or normally charged for commercial firms |
| Year | The year of the award or the year of the fee application if those rates were used. |
| Adjusted Rate | An adjustment to the fee award to compensate for the passage of time, the basis for which is described in ¶¶ 22-27 below. |

56. The name of the case in which the fee was awarded or, for commercial rates (where applicable) filed for, is noted by the use of a superscript number next to the name of the attorney. The superscript number represents the number assigned to the case in which that rate was addressed At the conclusion of the first set of

charts in Exhibit B, which I reproduce as an Appendix to this Declaration, I list each case's name and case number (if the source is from a public filing), and/or Westlaw cite of the case, and a brief description. If the source is not from a public filing, the non-public source is identified and/or attached. Cases not in Westlaw, documents from a case file, and non-public documents relied upon (with the exception of Court Express) that are referenced by a superscript number are available upon request; because they run to several hundred pages, I have stopped submitting them, but I have copies of each. So, for example, if the superscript uses the number "81" to designate the case, then the case name and description appears under the number "81" both at the end of the first set of tables in Exhibit B and in the Appendix at the end of this Declaration.

57. The years of practice for an attorney are based on either information directly provided by the source or, where it was not so provided, by checking the attorney's website or the California State Bar Member Search. In some cases, the year of admission to the Bar may not be completely reliable because there may be reasons that an attorney's years of admission to the California State Bar are less than the years of practice. For example, an attorney may have practiced in another state before California or may have delayed admission while clerking for a judge or for some other reason. Where the attorney graduated from a California law school, it is likely that person graduated the same year as the Bar admission.

58. With respect to my analysis of commercial rates in Table 3 of Exhibit B, it is well established that civil rights rates were intended by Congress to be comparable to complex commercial litigation such as antitrust. *See, e.g., Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122-23 (C.D. Cal. 2008) ("declarations establish that the hourly rates set are similar to those for attorneys of comparable skill and experience at the rates paid for complex federal litigation, which was Congress' intent for civil rights cases. *See City of Riverside v. Rivera*, 477 U.S. 561, 575-576, 106 S.Ct. 2686 (1986) (quoting Senate Report, at 6, U.S.

Code Cong. & Admin. News 1976, p. 5913, *supra*, (Congress intended civil rights fees to be comparable to that for 'other types of equally complex Federal litigation, such as antitrust cases')"). I am aware of nothing to suggest that the legal work involved in the rates referenced in Table 3 is more complex than a complex civil rights case.

## VI.    ADJUSTMENT FACTOR

59. In this declaration and in the rate charts attached as Exhibit B, I use "Adjusted Rates" to compare the rates requested in this case to the historical rate data that I have presented. The "Adjusted Rate" is an inflation adjustment to show what a prior rate would be equivalent to in 2018 adjusted for the passage of time. The adjustment is based on the mean (numerical average) of the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor, which is reproduced by Dr. Michael Kavanaugh in his website for the "Updated Laffey Matrix." The "Updated Laffey Matrix" has been cited, and relied on, by courts in D.C.[2]

60. I used an adjustment factor of 3% per annum. I reached this number by taking the average (mean) annual rate increase of the Legal Services CPI for the ten years June 2008 to May 2018, which came to slightly below 3% (2.96%) per year, and which I rounded to 3%. *See* http://www.laffeymatrix.com/see.html. That

---

[2] *See Salazar v. Dist. of Columbia*, 123 F. Supp. 2d 8, 13 (D.D.C. 2000); *Smith v. Dist. of Columbia*, 466 F. Supp. 2d 151, 155 (D.D.C. 2006) (the use of the updated *Laffey* Matrix is reasonable and consistent with previous precedent from our Court of Appeals, as well as from this Court in *Salazar*" and is "more accurate in that the calculation was based on increases/decreases in legal services rather than increase/decreases in the entire CPI"); *McDowell v. District of Columbia*, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001) ("Plaintiffs may point to such evidence as an updated version of the Laffey matrix"); *Salazar v. Dist. of Columbia*, 750 F. Supp. 2d 70, 72 (D.D.C. 2011) (affirming use of the adjusted rate based on the national legal services data for monitoring work in the case, and rejecting Defendant's contention that the United States Attorney's matrix should be used instead).

24

this is a reliable and conservative national figure is confirmed by the fact that the

inflation rate calculated for these years was significantly lower than the average

inflation factor for the previous ten years which was more than 4.5%, as reflected

in the Updated Laffey Matrix.

61.  Further, other information indicates that the 3% inflation factor is

likely an understatement of the increase in rates over the past several years in

major metropolitan areas. The 3% adjustment is a national figure, and fees in

urban large metropolitan areas will likely have risen more rapidly. Thus, for

example, the Wall Street Journal reported in April 2013, that, in "the first quarter

of 2013, the 50 top-grossing U.S. law firms boosted their partner rates by as much

as 5.7%, billing on average between $879 and $882 an hour" and that, in 2012,

"legal fees in general rose 4.8% and associate billing rates rose by 7.4%,

according to a coming report by TyMetrix Legal Analytics, a unit of Wolters

Kluwer, and CEB, a research and advisory-services company. Those numbers are

based on legal-spending data from more than 17,000 law firms." *See* Jennifer

Smith, On Sale: the $1,150-Per-Hour-Lawyer, Wall St. J., Apr. 9, 2013, at

http://www.wsj.com/articles.  A 2016 article reported an average billing rate

increase of 3.2%. See Elizabeth Olson, Higher Fees Increase Law Firm Revenues

by 4.1 Percent, N.Y. Times, Aug. 15, 2016, at

www.nytimes.com/2016/08/16/business/dealbook/higher-fees-increase-law-firm-

revenue-by-4-1-percent.html. According to a March 2017 release from Wolters

Kluwer's ELM Solutions and CEB, 2016 rates rose 7.3% at the associate level

and 3.2% at the partner level. *See* also Forbes, July 7, 2016 ("According to data

from CEB, the average hourly rate charged by major law firm partners nearly

doubled since 2000").[3] These figures are considerably higher than the 3% adjustment factor that I have used.

62. The adjustment factor is important. It is not a valid comparison to take a fee from five years ago for, *e.g.*, a ten-year lawyer and compare it to a fee requested by a ten-year lawyer today because the five-year-old fee does not account for the change in rates in today's legal dollars. In other words, the adjustment factor is simply a measure of inflation and the present value of money. In the same way that one cannot rent a one-bedroom apartment in 2018 for the same monthly rate as a one-bedroom apartment in 2013, one cannot hire a ten-year attorney in 2018 for the same rate that was charged by a ten-year attorney in 2013.

63. The adjustment factor is a tool to approximate what the current rate for an attorney of the same years of experience would be awarded now, as opposed to when the award was actually made. It is important to understand, when looking at rates awarded to the same attorney in previous cases, that the adjustment factor does not account for increased experience or expertise. A five-year old award for a particular attorney must be adjusted for both inflation and increases and skill and experience. To illustrate the point, assume that attorney John Doe was awarded a fee in 2013 when he was a ten-year attorney. My Adjusted Rate for the 2013 award only accounts for what a similar ten-year attorney would receive

---

[3] *See also, e.g.*, Hildebrandt Institute, *Top Law Firms Still Tops in Rates, Billable Hours* at 22, January 10, 2013, available at http://hildebrandtblog.com/ 2013/01/10/top-law-firms-still-tops-in-rates-billable-hours ("A survey from The National Law Journal (NLJ) (registration required) found that median partner rates were up 4.5 percent from 2011 to $517 an hour in 2012, and the median associate rate rose 3.5 percent to $323, with hourly rates ranging from $130 to $1,285 and a median hourly rate of $432. This gibes with the findings of the Major Lindsey & Africa (MLA) "Partner Compensation Survey 2012," which recorded an hourly rate range from $115 to $1,265 and an average partner billing rate of $584 (up from $555 in 2010).")

today. It does not account for the fact that that John Doe is now a fifteen-year
attorney with five more years' experience.  Since both the U.S. and California
Supreme Courts have authorized payment of current rates to account for delay in
payment, a simple inflation adjustment will not adequately compensate that
attorney for the increased experience that s/he went unpaid. Thus, it is to be
expected that the current rate for attorneys who have received previous awards
will be meaningfully above the adjusted rate based on a prior award.

64. I have spent the time I have explaining the adjustment factor used
because, in analyzing the rates, the only way to compare rates from prior years to
the current year rates requested by Plaintiffs' counsel in this case is to neutralize
the effect of inflation and market changes over time.

65. At times I have been asked why I do not use generic surveys to
determine rates. The simple answer is that surveys do not provide the most useful
information for the relevant market. I principally rely on actual awarded rates in
civil right cases or class action lodestar cross checks in civil rights cases because
these are awards in the same market, i.e., the market for plaintiffs' complex civil
rights cases in the major markets in California (Los Angeles and the Bay Area).
*See, e.g., Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547 (1984) ("the
statute and legislative history establish that 'reasonable fees' under §1988 are to
be calculated according to the prevailing market rates in the relevant
community"); *Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996) ("the district
court should not have relied on the rates paid by the City to private attorneys for
defending excessive force cases as a starting point for the reasonable hourly
rate....Private attorneys hired by a government entity to defend excessive force
cases are not in the same legal market as private plaintiff's attorneys who litigate
civil rights cases."). The relevant community here is plaintiffs' lawyers in
complex civil rights cases in Los Angeles (and, because rates in Northern
California are comparable, Bay Area civil rights awards as well). Surveys do not

reflect that market. Class actions and commercial rates for complex litigation are used as comparators because Congress intended civil rights awards to be comparable. See discussion in ¶36.

## VII.    STANDARD BILLING PRACTICES

66. For all billers at KMBL, there is a standard record keeping procedure to account for time. All billers keep track of their time contemporaneously, and they enter it directly into the billing program. This happened in this case. The ACLU addresses its similar practices in the Declaration of Amanda Goad.

67. Because of my experience and specialization in public interest and civil rights litigation, I am especially familiar with the availability of attorneys in the Southern California area to handle complex civil rights class actions. Relatively few lawyers are available or willing to undertake such matters. It is the expectation in such cases that, if successful as here, counsel will receive an enhancement beyond their current billing rate. As previously explained, the fee requested here does not result in an enhancement if the rates claimed by Plaintiffs' counsel are used. However, even if these rates are discounted, the fee is well within the range of expected multipliers for such work in class actions, an issue addressed in the accompanying Memorandum of Law.

## VIII.    PLAINTIFFS' COUNSEL'S LODESTAR

68. Although the requested fee is based on a substantially reduced lodestar, we provide detailed timesheets in the event the Court wishes to review them. The detailed time records for the two sets of firms handling this case (KMBL and the ACLU) are attached as Exhibits C and E. All the time records submitted were contemporaneously maintained. Billers who billed under 20 hours of total time were eliminated in an exercise of billing judgment.

69. It is our usual practice for a senior lawyer on the case to review the entries, note those that are duplicative, improperly assigned to the matter, or otherwise unreasonable, and to delete such entries in an exercise of billing

judgment.  In this instance, given that Plaintiffs' counsel had already agreed as part of a mediated settlement to a substantial discount of over 50% of the unreviewed lodestar, we did not invest time in reviewing the records to exercise billing judgment.

70.  The tables below show each person for whom time has been billed, that person's position and years of practice, the hours worked (through September 21, 2018) and the hourly rate used to bill for that person's time (using current rates):

| KMBL LODESTAR | | | | |
|---|---|---|---|---|
| NAME | GRAD YR | HOURS | RATE | TOTAL |
| Barrett S. Litt | 1969 (49) | 475.8 | $1,150.00 | $547,170.00 |
| David McLane | 1986 (32) | 907 | $875.00 | $793,625.00 |
| Lindsay Battles | 2008 (10) | 558.4 | $600.00 | $335,040.00 |
| Ron Kaye | 1988 (30) | 20.4 | $875.00 | $17,850.00 |
| Julia White | Sr. Paralegal | 877 | $335.00 | $293,795.00 |
| Esteban Gil | Jr. Paralegal | 104.4 | $175.00 | $18,270.00 |
| Rene Arriaza | Jr. Paralegal | 26 | $175.00 | $4,550.00 |
| Sujata Awasthi | Law Clerk | 60.5 | $225.00 | $13,612.50 |
| Evan Ettinghoff | Law Clerk | 51.9 | $225.00 | $11,677.50 |
| TOTAL | | | | $2,035,590.00 |

| ACLU LODESTAR | | | | |
|---|---|---|---|---|
| NAME | GRAD YR | HOURS | RATE | TOTAL |
| Melissa Goodman | 2003 (15) | 246.66 | $715 | $176,361.90 |
| Amanda Goad | 2005 (13) | 43.62 | $640 | $27,916.80 |
| Brendan Hamme | 2012 (6) | 606.09 | $480 | $290,923.20 |
| Tasha Hill | 2014 (4) | 133.83 | $390 | $52,193.70 |
| Aditi Fruitwala | 2014 (4) | 23.83 | $390 | $9,293.70 |
| Diana Gonzalez | Sr. Paralegal | 281.99 | $195 | $54,988.05 |
| TOTAL | | 1,343.68 | | $611,677.35 |

71.  As reflected by Exhibit B, the rates sought in this case are well within the range of the rates charged by attorneys of comparable experience in the

29

Southern California area for complex federal and civil rights work. Below I address the rates sought in this case and compare them to attorneys of comparable or lesser experience, skill and reputation seeking or charging comparable or lesser rates. In the paragraphs below, I use information from Exhibit B. Because it would consume an undue amount of space to list the cases, rate sources etc. relied upon in the body of this Declaration, I do not list them in the Declaration for any of the tables. Exhibit B contains the full name of each reference used, and the source referred to, by superscript number. (For example, using the reference from Table 1 to Katherine Weed, superscript #13 refers to the Fee award in *Communities Actively Living Independent and Free v. City of Los Angeles*, 2:090cv-00287 CBM-RZ-Doc # 255 (C.D. Cal. 6/10/13) (lodestar award in settlement of ADA injunctive relief class action), the citation to which may be found at page 19 of Exhibit B.)

I.    **BARRETT S. LITT**

72.  The highest listed rate is for me. My current rate is $1150 per hour. This rate is well in line with the rates for highly experienced attorneys in complex litigation. Although I virtually never do retained work, my fee for work where I am not being paid an hourly fee plus a negotiated percentage of the recovery, is $1150. I was recently retained to consult and draft a declaration in a civil rights case in which I was not counsel, and that was the fee I charged and was paid.

73.  Below I list awards or rates identified as reasonable in a lodestar cross-check for myself or for attorneys of comparable or close years of experience who have been awarded or receive similar rates.

74.  Below I list awards or rates for attorneys of comparable or fewer years who have these or similar rates in civil rights cases. In doing so, as I mention above, I rely on the adjusted rate in order to compare apples to apples. I supply these in the three different tables previously described – civil rights awards, consumer class actions lodestar crosschecks, and commercial rates. (Because only

30

one of the lawyers in the consumer class actions has comparable years (Paul
Kiesel), he is included in the first table.) Many of the awards are for myself in
prior years. As described in paragraph 63 *supra*, the adjusted rates below only
account for inflation, they do not reflect gains in experience. Notably, there are
several categories of fee awards or lodestar cross-checks where the adjusted rate
is higher than my $1150 rate. The table is organized beginning with the highest
adjusted rates and covers lawyers between 49 to as low as 26 years.

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Firm** | **Pract Yrs (Grad Yr)** | **Rate** | **Year** | **Adjusted Rate** |
| Ian Herzog[24] | Law Office of Ian Herzog | 44 (1967) | $1,000 | 2011 | $1,230 |
| Jose R. Allen[35] | Skadden, Arps | 31 (1985) | $1150 | 2016 | $1,220 |
| Paul Kiesel[59] | Kiesel Law LLP | 30 [1985] | $1,100 | 2015 | $1,202 |
| Barrett S. Litt[38] | Kaye, McLane, Bednarski & Litt | 49 (1969) | $1,150 | 2018 | $1,185 |
| Barrett S. Litt[34] | Kaye, McLane, Bednarski & Litt | 45 (1969) | $975 | 2014 | $1,097 |
| Paul R. Fine[24] | Daniels, Fine, Israel, Schonbuch & Lebovits | 39 (1972) | $850 | 2011 | $1,045 |
| Barrett S. Litt[6] | Litt, Estuar & Kitson | 40 (1969) | $800 | 2009 | $1,044 |
| Barrett S. Litt[8] | Litt, Estuar & Kitson | 43 (1969) | $850 | 2012 | $1,015 |
| Barrett S. Litt[15] | Litt, Estuar & Kitson | 39 (1969) | $750 | 2008 | $1,008 |
| Barrett S. Litt[7] | Litt, Estuar & Kitson | 38 (1969) | $725 | 2007 | $1,004 |
| Dan Stormer[8] | HSKRR**** | 38 (1974) | $825 | 2012 | $985 |
| Bill Lann Lee[18] | Lewis, Feinberg, Lee, Renaker, & Jackson | 38 (1974) | $825 | 2012 | $985 |
| Stephen Glick[24] | Law Offices of Stephen Glick | 37 (1974) | $800 | 2011 | $984 |

31

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| Attorney | Firm | Pract Yrs (Grad Yr) | Rate | Year | Adjusted Rate |
| Paul L. Hoffman[6] | Schonbrun, de Simone | 33 (1976) | $750 | 2009 | $979 |
| Mark Rosenbaum[2] | ACLU | 35 (1974) | $740 | 2009 | $966 |
| Larry Paradis[13] | DRA* | 27 (1985) | $800 | 2012 | $955 |
| Daniel B. Kohrman[4] | AFL***** | 26 (1984) | $740 | 2010 | $937 |
| Carol Sobel[2] | Law Ofc Carol Sobel | 31 (1978) | $710 | 2009 | $926 |
| Carol A. Sobel[6] | Law Offices of Carol Sobel | 31 (1978) | $710 | 2009 | $926 |
| Carol Sobel[21] | Law Office of Carol Sobel | 32 (1978) | $725 | 2010 | $918 |
| Paula Pearlman[37] | DRLC | 32 (1982) | $875 | 2017 | $901 |
| Unnamed[10] | Prison Law Office | 32 (1978) | $700 | 2010 | $887 |
| Unnamed[10] | Bingham, McCutcheon | 32 (1978) | $700 | 2010 | $887 |

75. Commercial adjusted rates are considerably higher than those sought here for complex litigation, as the following chart demonstrates. Many commercial lawyers with far fewer years of experience (including some with under 20 years) have comparable or higher rates. (The following Commercial Rate table is organized by adjusted rate, starting with the highest.) This is especially significant because many of the cases for which rates are listed are not class actions, and some are not even particularly complex, and substantially higher rates are charged. By the standard of commercial rates, there rates are well in the middle of the pack.

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Daniel Perry[93] | Milbank, Tweed | 14 (2000) | $1135 | 2014 | $1,277 |
| Jason D. Russell[82] | Skadden Arps | 18 (1993) | $1030 | 2011 | $1,267 |
| Unnamed[92] | Davis, Polk & Wardwell | 23 (1986) | $960 | 2009 | $1,253 |
| Unnamed[92] | Davis, Polk & Wardwell | 19 (1990) | $955 | 2009 | $1,246 |
| Marc Becker[81] | Quinn Emanuel | 24 (1988) | $1035 | 2012 | $1,236 |
| Unnamed[91] | Paul Hastings | 36 (1974) | $940 | 2010 | $1,191 |
| Wayne Barsky[86] | Gibson Dunn | 26 (1983) | $905 | 2009 | $1,181 |
| Unnamed[85] | Paul Hastings | 33 (1978) | $940 | 2011 | $1,156 |
| Gordon Kirscher[90] | O'Melveny &Myers | 38 (1971) | $860 | 2009 | $1,122 |
| Unnamed[92] | O'Melveny & Myers | 34 (1975) | $860 | 2009 | $1,122 |
| Unnamed[92] | Klee, Tuchin, Bogdanoff, & Stern | 19 (1990) | $850 | 2009 | $1,109 |
| Arturo Gonzalez[83] | MoFo | 28 (1985) | $950 | 2013 | $1,101 |
| Daniel Kolkey[86] | Gibson Dunn | 32 (1977) | $840 | 2009 | $1,096 |
| Unnamed[84] | Lieff Cabraser | 42 (1970) | $900 | 2012 | $1,075 |
| Unnamed[84] | Lieff Cabraser | 38 (1974) | $900 | 2012 | $1,075 |
| Unnamed[11] | Arnold & Porter | 39 (1974) | $910 | 2013 | $1,055 |
| Unnamed[85] | Paul Hastings | 23 (1998) | $850 | 2011 | $1,045 |
| Unnamed[92] | Weil, Gotscahl & Manges | 23 (1986) | $799 | 2009 | $1,043 |
| Brian J. Hennigan[89] | Irell & Manella | 25 (1983) | $775 | 2008 | $1,042 |
| Unnamed[92] | Gibson Dunn & Crutcher | 25 (1974) | $790 | 2009 | $1,031 |
| Marcellus McRae[86] | Gibson Dunn | 21 (1988) | $785 | 2009 | $1,024 |

33

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Delilah Vinzon[93] | Milbank, Tweed | 12 (2002) | $900 | 2014 | $1,013 |
| Alejandro Mayorkas[90] | O'Melveny &Myers | 23 (1986) | $770 | 2009 | $1,005 |
| Unnamed[92] | Hennigan, Bennett & Dorman | 30 (1979) | $760 | 2009 | $992 |
| Unnamed[92] | Pachulski, Stang et al. | 27 (1982) | $750 | 2009 | $979 |
| Unnamed[92] | White & Case | 24 (1985) | $750 | 2009 | $979 |
| Unnamed[92] | Morrison & Foerster | 24 (1985) | $750 | 2009 | $979 |
| Victoria Maroulis[81] | Quinn Emanuel | 13 (1999) | $815 | 2012 | $973 |
| Christopher Cox[95] | Weil Gotshal | 23 (1991) | $850 | 2014 | $957 |
| Unnamed[84] | Lieff Cabraser | 34 (1978) | $800 | 2012 | $955 |
| Unnamed[11] | Quinn Emanuel | | $821 | 2013 | $952 |
| Unnamed[92] | Pachulski, Stang et al. | 22 (1987) | $725 | 2009 | $946 |
| Unnamed[92] | Munger, Tolles & Olson | 22 (1987) | $725 | 2009 | $946 |
| Diane Hutnyan[81] | Quinn Emanuel | 15 (1997) | $790 | 2012 | $943 |
| Amy Lalley[94] | Sidley Austin | 16 (1998) | $825 | 2014 | $929 |
| Unnamed[84] | Lieff Cabraser | 29 (1983) | $775 | 2012 | $925 |
| Unnamed[84] | Lieff Cabraser | 24 (1988) | $775 | 2012 | $925 |
| Danielle Gilmore[87] | Quinn Emanuel | 15 (1993) | $685 | 2008 | $921 |
| Unnamed[91] | Paul Hastings | 16 (1994) | $725 | 2010 | $918 |
| Mark D. Kemple[88] | Greenberg Traurig | 20 (1989) | $675 | 2009 | $907 |

### J.    1986-1988 LAW SCHOOL GRADUATES (30-32 YEARS' EXPERIENCE) – DAVID MCLANE AND RONALD KAYE

76. Below I list other awards or rates for attorneys of comparable or fewer years who have similar rates to those requested in this case for David McLane and Ronald Kaye (32 and 30 years' respectively). In doing so, as I mentioned above, I rely on the adjusted rate in order to compare apples to apples. I supply these in the three different tables previously described – civil rights awards, consumer class actions lodestar crosschecks, and commercial rates.  Note that these tables duplicate some entries from rates listed in the tables for my fees. These tables are organized by years of experience.

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Firm** | **Pract Yrs (Grad Yr)** | **Rate** | **Year** | **Adjusted Rate** |
| Paul L. Hoffman[6] | Schonbrun, de Simone | 33 (1976) | $750 | 2009 | $979 |
| Paula Pearlman[37] | DRLC | 32 (1982) | $875 | 2017 | $901 |
| Carol Sobel[21] | Law Office of Carol Sobel | 32 (1978) | $725 | 2010 | $918 |
| Jose R. Allen[35] | Skadden, Arps | 31 (1985) | $1150 | 2016 | $1,220 |
| Carol Sobel[2] | Law Ofc Carol Sobel | 31 (1978) | $710 | 2009 | $926 |
| Carol A. Sobel[6] | Law Offices of Carol Sobel | 31 (1978) | $710 | 2009 | $926 |
| Anne Richardson[38] | Public Counsel | 29 (1989) | $850 | 2017 | $876 |
| Michael Bien[9] | Rosen Bien Galvan & Grunfeld | 28 (2008) | $640 | 2008 | $860 |
| David M. McLane[34] | Kaye, McLane, Bednarski & Litt | 28 (1988) | $775 | 2014 | $872 |
| Jim DeSimone[28] | Schonbrun, de Simone | 28 (1985) | $725 | 2013 | $840 |

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| Attorney | Firm | Pract Yrs (Grad Yr) | Rate | Year | Adjusted Rate |
| Susan Abitanta[24] | Law Office of Ian Herzog | 28 (1983) | $600 | 2011 | $738 |
| Robert Rubin[20] | LCCR | 28 (1978) | $625 | 2006 | $891 |
| Larry Paradis[13] | DRA* | 27 (1985) | $800 | 2012 | $955 |
| Matthew Righetti[19] | Righetti Glugoski | 27 (1985) | $750 | 2012 | $896 |
| James de Simone[3] | Schonbrun, de Simon | 27 (1985) | $695 | 2012 | $830 |
| Ronald O. Kaye[34] | Kaye, McLane, Bednarski & Litt | 26 (1988) | $775 | 2014 | $872 |
| Humberto Guizar[16] |  | 26 (1986) | $500 | 2012 | $597 |
| Laurence Paradis[4] | DRA* | 26 (1985) | $730 | 2010 | $925 |
| Daniel B. Kohrman[4] | AFL***** | 26 (1984) | $740 | 2010 | $937 |
| Paul Estuar[38] | Kaye, McLane, Bednarski & Litt | 25 (1993) | $765 | 2018 | $788 |
| Dale Galipo[32] | Law Ofc Dale Galipo | 25 (1989) | $800 | 2014 | $900 |
| Dale Galipo[33] | Law Ofc Dale Galipo | 25 (1989) | $800 | 2014 | $900 |
| Ron Elsberry[13] | DRA* | 25 (1987) | $725 | 2012 | $866 |
| Jose R. Allen[4] | Skadden Arps | 25 (1985) | $930 | 2010 | $1,178 |
| Ben Schonbrun[5] | Schonbrun, de Simone | 25 (1985) | $650 | 2010 | $823 |
| Michael Haddad[27] | Haddad & Sherwin | 23 91991) | $725 | 2014 | $816 |
| Guy Wallace[35] | Schneider Wallace | 23 (1993) | $750 | 2016 | $796 |
| Chritopher Cox[29] | Weill Gotschall | 23 (1991) | $850 | 2014 | $957 |

36

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Firm** | **Pract Yrs (Grad Yr)** | **Rate** | **Year** | **Adjusted Rate** |
| Dale Galipo[16] | Law Ofc of Dale Galipo | 23 (1989) | $700 | 2012 | $836 |

77. Many of the commercial rates shown in the previous commercial rate chart are for attorneys with comparable or lesser experience and higher rates than the public interest attorneys here. (Again, the Commercial Rate table is organized by adjusted rate, with the highest beginning at $900. Adjusted rates above $900 are not duplicated in this table.) Notably, attorneys with very half or less years' experience with comparable rates, especially when the previous commercial rate table is included. The table below is applicable both to this group, and the bulk of it also applies to the 10-15 year attorneys discussed in the next section:

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** |
| Unnamed[92] | Pachulski, Stang et al. | 24 (1985) | $675 | 2009 | $881 |
| Unnamed[11] | Quinn Emanuel | 20 | $700 | 2013 | $811 |
| Unnamed[92] | Gibson Dunn & Crutcher | 18 (1991) | $610 | 2009 | $796 |
| Michal H. Strub[89] | Irell & Manella | 18 (1990) | $670 | 2008 | $900 |
| Unnamed[85] | Paul Hastings | 17 (1994) | $725 | 2011 | $892 |
| Unnamed[92] | Morrison & Foerster | 17 (1992) | $650 | 2009 | $848 |
| Unnamed[85] | Paul Hastings | 15 (1996) | $725 | 2011 | $892 |
| Amy Lalley[94] | Sidley Austin | 14 (1998) | $700 | 2012 | $836 |
| Thomas M. Riordan[90] | O'Melveny &Myers | 14 (1995) | $675 | 2009 | $881 |
| Todd Briggs[81] | Quinn Emanuel | 12 (2000) | $735 | 2012 | $878 |
| Melissa Dalziel[81] | Quinn Emanuel | 12 (2000) | $730 | 2012 | $872 |

37

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Unnamed[85] | Paul Hastings | 12 (1999) | $670 | 2011 | $824 |
| Unnamed[92] | Klee, Tuchin, Bogdanoff, & Stern | 12 (1997) | $650 | 2009 | $848 |
| Unnamed[92] | Gibson Dunn & Crutcher | 12 (1997) | $635 | 2009 | $829 |
| Unnamed[91] | Paul Hastings | 11 (1999) | $670 | 2010 | $849 |
| Hillary A. Hamilton[82] | Skadden Arps | 10 (2001) | $710 | 2011 | $873 |
| Unnamed[91] | Paul Hastings | 10 (2000) | $660 | 2010 | $836 |
| Jorge DeNeve[90] | O'Melveny &Myers | 10 (1998) | $620 | 2009 | $809 |
| Unnamed[85] | Paul Hastings | 09 (2002) | $630 | 2011 | $775 |
| Hannah Cannom[93] | Milbank, Tweed | 08 (2006) | $760 | 2014 | $855 |
| Unnamed[92] | White & Case | 08 (2001) | $655 | 2009 | $855 |
| Revi-Ruth Enriquez[93] | Milbank, Tweed | 06 (2008) | $800 | 2014 | $900 |
| Caitlin Hawks[93] | Milbank, Tweed | 06 (2008) | $760 | 2014 | $855 |
| Alex Doherty[94] | Sidley Austin | 06 (2008) | $700 | 2014 | $788 |
| Unnamed[92] | White & Case | 06 (2003) | $600 | 2009 | $783 |
| Unnamed[92] | Davis, Polk & Wardwell | 04 (2005) | $680 | 2009 | $887 |
| Unnamed[92] | White & Case | 04 (2004) | $600 | 2009 | $783 |

**K.    10-15 YEAR ATTORNEYS - MELISSA GOODMAN, AMANDA GOAD AND LINDSAY BATTLES**

78.  This section addresses 10-15 year attorneys Melissa Goodman (15 years, $715 rate), Amanda Goad (13 years, $640 rate) and Lindsay Battles (10 years, $600 rate). Relevant Table 1 rates for Civil Rights lawyers include:

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| Attorney | Firm | Pract Yrs (Grad Yr) | Rate | Year | Adjusted Rate |
| Matthew McNicholas[17] | McNicholas & McNicholas | 15 (1997) | $700 | 2012 | $836 |
| Angela Padilla[20] | MoFo | 15 (1991) | $600 | 2006 | $855 |
| Maronel Barajas[37] | DRLC | 14 (2003) | $675 | 2017 | $695 |
| Gene J. Stonebarger[31] | Stonebarger Law, APC | 14 (2000) | $650 | 2014 | $732 |
| Matthew Stugar[37] | DRLC | 13 (2004) | $660 | 2017 | $680 |
| Shawna Parks[13] | DRA* | 13 (1999) | $665 | 2012 | $794 |
| Unnamed[10] | Bingham, McCutcheon | 13 (1997) | $655 | 2010 | $830 |
| Unnamed[10] | Rosen Bien & Galvan | 13 (1997) | $560 | 2010 | $709 |
| Umbreen Bhatti[37] | DRLC | 12 (2005) | $640 | 2017 | $659 |
| John Glugoski[19] | Righetti Glugoski | 12 (1997) | $650 | 2012 | $776 |
| Carly Munson | DRLC | 11 (2006) | $625 | 2017 | $644 |
| Belinda Escobosa Helzer[1] | ACLU | 11 (2000) | $525 | 2011 | $646 |
| Paul Hughes[38] | Mayer, Brown | 10 (2008) | $730 | 2018 | $752 |
| Jennifer Lee[13] | DRLC*** | 09 (2003) | $550 | 2012 | $657 |
| Peter Bibring[1] | ACLU | 09 (2002) | $490 | 2011 | $603 |
| Roger Heller[4] | DRA* | 09 (2001) | $560 | 2010 | $709 |

79. Given the commercial rates for attorneys within this same range of experience, it is unnecessary to provide additional commercial rates.

### L.    4-6 YEAR ATTORNEYS - Brendan Hamme, Tasha Hill, and Aditi Fruitwala

80.  This section addresses 4-6 year attorneys Brendan Hamme (6 years, $480 rate), Tasha Hill (4 years, $390 rate) and Aditi Fruitwala (4 years, $390 rate). Relevant Table 1 rates for Civil Rights lawyers include:

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Firm** | **Pract Yrs (Grad Yr)** | **Rate** | **Year** | **Adjusted Rate** |
| Caitlin Weisberg[34] | Kaye, McLane, Bednarski & Litt | 06 (2008) | $500 | 2014 | $563 |
| Anna Canning[3] | Schonbrun, de Simon | 06 (2006) | $450 | 2012 | $537 |
| Kasey Corbit[4] | DRA* | 06 (2004) | $500 | 2010 | $633 |
| Genevieve Guertin[27] | Haddad & Sherwin | 05 (2009) | $400 | 2014 | $450 |
| Debra Patkin[13] | DRLC*** | 05 (2007) | $450 | 2012 | $537 |
| Karla Gilbride[13] | DRA* | 05 (2007) | $430 | 2012 | $513 |
| Stephanie Biedermann[13] | DRA* | 05 (2007) | $430 | 2012 | $513 |
| Christine Chuang[13] | DRA* | 05 (2007) | $430 | 2012 | $513 |
| Laura D. Smolowe[1] | MTO** | 05 (2006) | $460 | 2011 | $566 |
| Mary–Lee Kimber[4] | DRA* | 05 (2005) | $475 | 2010 | $602 |
| Sheryl Wu Leung[4] | Skadden Arps | 05 (2005) | $395 | 2010 | $500 |
| Matthew Strugar[14] | DRLC | 05 (2004) | $400 | 2009 | $522 |
| Bambo Obarro[29] | Weill Gotschall | 04 (2010) | $400 | 2014 | $450 |
| Gina Altomare[27] | Haddad & Sherwin | 04 (2010) | $350 | 2014 | $394 |
| Heather McGunigle[22] | DRLC | 04 (2009) | $375 | 2009 | $489 |

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Firm** | **Pract Yrs (Grad Yr)** | **Rate** | **Year** | **Adjusted Rate** |
| Bethany Woodard[14] | MTO** | 04 (2005) | $395 | 2009 | $515 |
| Marina A. Torres[1] | MTO** | 03 (2008) | $385 | 2011 | $474 |
| Sarala V. Nagala[1] | MTO** | 03 (2008) | $385 | 2011 | $474 |
| Stephanie Biedermann[4] | DRA* | 03 (2007) | $350 | 2010 | $443 |
| Kristina Wilson[14] | MTO** | 03 (2006) | $350 | 2009 | $457 |
| Thomas Kennedy Helm[27] | Haddad & Sherwin | 02 (2012) | $325 | 2014 | $366 |
| Kara Janssen[13] | DRA* | 02 (2010) | $330 | 2012 | $394 |
| Nathaniel Fisher[4] | Skadden Arps | 02 (2008) | $530 | 2010 | $671 |
| Unnamed[10] | Bingham, McCutcheon | 02 (2008) | $400 | 2010 | $507 |
| Becca von Behren[4] | DRA* | 02 (2008) | $265 | 2010 | $336 |
| Mahogany Jenkins[20] | MoFo | 02 (2004) | $285 | 2006 | $406 |
| Unnamed[10] | Prison Law Office | 01 (2009) | $275 | 2010 | $348 |
| Stacey Brown[7] | Litt, Estuar & Kitson | 01 (2006) | $275 | 2007 | $381 |

81. Below are commercial rates, again establishing that the rates here are far below comparable commercial rates.

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| **Atty** | **Firm** | **Practice Yrs [Grad Yr]** | **Rate** | **Year** | **Adjusted Rate** |
| Revi-Ruth Enriquez[93] | Milbank, Tweed | 06 (2008) | $800 | 2014 | $900 |

41

| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
|---|---|---|---|---|---|
| Caitlin Hawks[93] | Milbank, Tweed | 06 (2008) | $760 | 2014 | $855 |
| Alex Doherty[94] | Sidley Austin | 06 (2008) | $700 | 2014 | $788 |
| Unnamed[84] | Lieff Cabraser | 06 (2006) | $435 | 2012 | $519 |
| Unnamed[85] | Paul Hastings | 06 (2005) | $565 | 2011 | $695 |
| Unnamed[92] | White & Case | 06 (2003) | $600 | 2009 | $783 |
| Unnamed[92] | Weil, Gotscahl & Manges | 06 (2003) | $580 | 2009 | $757 |
| Unnamed[92] | Gibson Dunn & Crutcher | 06 (2003) | $570 | 2009 | $744 |
| Katherine Eklund[93] | Milbank, Tweed | 05 (2009) | $550 | 2014 | $619 |
| Unnamed[85] | Paul Hastings | 05 (2006) | $530 | 2011 | $652 |
| Danielle Katzir[86] | Gibson Dunn | 05 (2004) | $525 | 2009 | $685 |
| Dena G. Kaplan[89] | Irell & Manella | 05 (2003) | $475 | 2008 | $638 |
| Alex Doherty[94] | Sidley Austin | 04 (2008) | $520 | 2012 | $621 |
| Unnamed[85] | Paul Hastings | 04 (2007) | $500 | 2011 | $615 |
| Unnamed[92] | Davis, Polk & Wardwell | 04 (2005) | $680 | 2009 | $887 |
| Unnamed[92] | Weil, Gotscahl & Manges | 04 (2005) | $500 | 2009 | $652 |
| Multiple associates[86] | Gibson Dunn | 04 (2005) | $495 | 2009 | $646 |
| Unnamed[92] | Munger, Tolles & Olson | 04 (2005) | $450 | 2009 | $587 |
| Unnamed[92] | Munger, Tolles & Olson | 04 (2005) | $435 | 2009 | $568 |
| Unnamed[92] | White & Case | 04 (2004) | $600 | 2009 | $783 |
| Kimberly A. Svendsen[89] | Irell & Manella | 04 (2004) | $410 | 2008 | $551 |
| Unnamed[92] | Munger, Tolles & Olson | 04 (2004) | $395 | 2009 | $515 |
| Unnamed[85] | Paul Hastings | 03 (2008) | $450 | 2011 | $553 |

Above the table (title rows):

**Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports**

42

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Melissa Barshop[86] | Gibson Dunn | 03 (2006) | $470 | 2009 | $613 |
| Unnamed[92] | Gibson Dunn & Crutcher | 03 (2006) | $470 | 2009 | $613 |
| Unnamed[92] | Weil, Gotscahl & Manges | 03 (2006) | $465 | 2009 | $607 |
| Abby Schwartz[90] | O'Melveny &Myers | 03 (2006) | $450 | 2009 | $587 |
| Hirad Dadgostar[88] | Greenberg Traurig | 03 (2006) | $400 | 2008 | $538 |
| Unnamed[92] | Munger, Tolles & Olson | 03 (2006) | $400 | 2009 | $522 |
| Unnamed[92] | O'Melveny & Myers | 03 (2006) | $395 | 2009 | $515 |
| Multiple associates[86] | Gibson Dunn | 02 (2007) | $400 | 2009 | $522 |
| Sara Brenner[87] | Quinn Emanuel | 02 (2006) | $340 | 2008 | $457 |
| Lauren McCray[94] | Sidley Austin | 02 (1998) | $495 | 2014 | $557 |
| Unnamed[84] | Lieff Cabraser | 01 (2011) | $325 | 2012 | $388 |
| Jessica Mohr[95] | Weil Gotshal | 01 (2013) | $300 | 2014 | $338 |
| Unnamed[85] | Paul Hastings | 01 (2010) | $360 | 2011 | $443 |
| Unnamed[92] | Weil, Gotscahl & Manges | 01 (2008) | $355 | 2009 | $463 |
| Multiple associates[86] | Gibson Dunn | 01 (2008) | $345 | 2009 | $450 |
| Lauren McCray[94] | Sidley Austin | 01 (1998) | $340 | 2012 | $406 |
| Unnamed[11] | Quinn Emanuel | | $821 | 2013 | $952 |
| Unnamed[11] | Quinn Emanuel | | $448 | 2013 | $519 |

43

## M.   PARALEGALS

82.  There are billings for two senior paralegals (one with over 30 years' experience) and two junior paralegals. The senior paralegal rate is $335 per hour and $195 respectively, and the junior rate is $175. Below are either civil rights awards or commercial rates from my Tables 1 and 3 to support the rates used.

83.Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks

| Attorney | Firm | Pract Yrs (Grad Yr) | Rate | Year | Adjusted Rate |
|---|---|---|---|---|---|
| Legal assistant[4] | Skadden Arps | | $285 | 2010 | $361 |
| Julia White[38] [Sr. Paralegal] | Kaye, McLane, Bednarski & Litt | | $335 | 2017 | $345 |
| Senior paralegals[4] | DRA* | | $265 | 2010 | $336 |
| Julia White[34] [Sr. Paralegal] | Kaye, McLane, Bednarski & Litt | | $295 | 2014 | $332 |
| Sr. Paralegal[15] | Litt, Estuar & Kitson | | $235 | 2008 | $316 |
| Senior Paralegals[7] | Litt, Estuar & Kitson | | $225 | 2007 | $311 |
| Sr. paralegal[10] | Rosen Bien & Galvan | | $240 | 2010 | $304 |
| Sr. paralegal[8] | Litt, Estuar & Kitson | | $250 | 2012 | $299 |
| Paralegal | DRA* | | $240 | 2012 | $299 |

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Sr. Paralegal[91] | Paul Hastings | | $330 | 2010 | $418 |
| Paralegal[86] | Gibson Dunn | | $315 | 2009 | $411 |

44

| Table 3: Commercial or Reported Standardized Rates Reflected in Select Attorney Fee Awards, Declarations or Reports | | | | | |
|---|---|---|---|---|---|
| Atty | Firm | Practice Yrs [Grad Yr] | Rate | Year | Adjusted Rate |
| Paralegal[90] | O'Melveny &Myers | 17 (2004) | $310 | 2009 | $404 |
| Paralegal[86] | Gibson Dunn | | $300 | 2009 | $391 |
| Paralegal[86] | Gibson Dunn | | $295 | 2009 | $385 |
| Legal Assistant[82] | Skadden Arps | | $295 | 2011 | $363 |
| Paralegal[90] | O'Melveny &Myers | 12 (1997) | $245 | 2009 | $320 |
| Paralegal[87] | Quinn Emanuel | | $235 | 2008 | $316 |
| Paralegal[90] | O'Melveny &Myers | 05 (2004) | $225 | 2009 | $294 |

### N.    LAW CLERKS

84. My firms regularly employed summer associates over the years of this litigation. They were assigned discrete legal research or interview projects. Public Counsel had volunteer law students and volunteer attorneys whose time accordingly is not being billed. Our billing rate for law students is $250, d. I don't have specific rates for summer associates from my commercial table, but I am aware that commercial firms bill for the work of summer associates.

| Table 1: Civil Rights Lodestar Awards/Lodestar Crosschecks | | | | |
|---|---|---|---|---|
| Position | Firm | Rate | Year | Adjusted Rate |
| Law Clerks[14] | MTO** | $220 | 2009 | $279 |
| Summer Associates[13] | DRA* | $250 | 2012 | $278 |
| Law Clerk[13] | DRLC*** | $230 | 2012 | $267 |
| Law student interns[8] | Litt, Estuar & Kitson | $225 | 2012 | $261 |
| Law student interns[3] | Schoenbrun, de Simon | $200 | 2012 | $232 |
| Law clerks[4] | DRA* | $175 | 2010 | $215 |

45

## IX.    COSTS BILLED TO THE CASE***

85.  In connection with my own practice of law in Los Angeles, and in investigating the practice of law firms in the Los Angeles area regarding standard billing practices, I have determined that it is the routine and common practice of firms handling complex litigation to charge fee-paying clients separately for copying, facsimile, long distance telephone charges, transportation and travel costs including airfare, car rental, parking and mileage, postal charges, overnight courier and messenger fees, fees for service of process and attorney service, court filing fees, computerized legal and database research, deposition transcripts and court reporter fees, witness fees, expert or consultant fees, mediation costs and other necessary out-of-pocket expenses. In both contingent fee retainers, and on the rare occasions that my office does retained civil rights cases, all of these are defined as costs for which the client is responsible to reimburse separately from the attorneys' and other billers' charges for their time. Although expert fees are not recoverable under 42 U.S.C §1988, they are in class actions, where the class, not the Defendants in a statutory fee case, are paying the costs from the available fund. The costs requested here are for all such costs, including expert fees. As noted, some costs are included in the $1,100,000 agreed upon attorneys' fees and some will be paid from the Class Fund.

86.  All costs are either out of pocket costs paid to third parties (e.g., experts and mediation), or in house costs regularly billed to clients (e.g., for copying/printing). The costs are regularly entered into our electronic bookkeeping system as they are paid (for external costs) or as they are incurred (for internal costs). The Tables below shows the costs through September 21, 2018 for both KMBL and the ACLU. Since expert costs and mediation costs are not expected to increase, and other costs are part of the fixed fees and costs, we do not anticipate a need to supplement this information for the Final Approval hearing, but will do so if there are additional expert costs.

46

| KMBL COSTS – FROM ATTORNEYS' FEES AND COSTS AWARDED | |
| --- | --- |
| **CostItem** | **Amount** |
| E101-Copy/Print | $5,700.53 |
| E105-Phone | $501.17 |
| E106-Research | $2,389.54 |
| E107-Delivery | $2,374.35 |
| E108-Postage | $392.25 |
| E109-LocTravel | $992.28 |
| E110-FarTravel | $364.00 |
| E111-Meals | $121.39 |
| E112-FeesCrt | $700.00 |
| E120-Pis | $766.00 |
| E128-Records | $209.30 |
| E134-Parking | $64.00 |
| E146-Scans | $216.30 |
| **Sub-Total From Fee Award** | **$14,791.11** |

| KMBL COSTS – FROM CLASS FUND | |
| --- | --- |
| **CostItem** | **Amount** |
| E119-Experts | $30,059.49 |
| E121-Arb/Medi | $6,245.00 |
| **Sub-Total From Class Fund** | **$36,304.49** |

| ACLU COSTS – FROM ATTORNEYS' FEES AND COSTS AWARDED | |
| --- | --- |
| **Category** | **Amount** |
| Collect Calls | $208.00 |
| Correspondence | $401.39 |
| Court Fees | $103.67 |
| Online Research | $163.00 |
| Mileage | $2,322.57 |
| Parking | $125.00 |
| Meals | $501.67 |
| Transportation | $163.13 |
| **TOTAL:** | **$3,988.43** |

47

87.  These costs are exclusive of payment to the class administrator, the final amount of which will be reflected in the proposed Final Approval Order, and which are being paid from the Class Fund.

88.  The cost detail for KMBL and the ACLU are attached as Exhibits D and F respectively.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at Pasadena, California on November 2, 2018.

_____

# APPENDIX OF SOURCED REFERENCES

*DRA stands for Disability Rights Advocates
**MTO stands for Munger, Tolles & Olson
***DRLC stands for Disability Rights Legal Center
****HSKRR stands for Hadsell, Stormer, Keeny, Richardson & Renick
*****AFL stands for AARP Foundation Litigation

## CIVIL RIGHTS LODESTAR AWARD SOURCES

[1] – *Vasquez v. Rackauckas*, SACV 09-1090 VBF, 2011 WL 1791091 (C.D. Cal. May 10, 2011) *aff'd in part, rev'd in part and remanded,* 734 F.3d 1025 (9th Cir. 2013) (lodestar award in civil rights injunctive relief class action regarding modification of state gang injunctions) (remand did not affect fee award)

[2] – *Fitzgerald v. City of Los Angeles*, CV 03-01876DDP(RZX), 2009 WL 960825 (C.D. Cal. Apr. 7, 2009) (lodestar award in civil rights Skid Row litigation)

[3] – *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC ANX, 2012 WL 2449849 (C.D. Cal. May 30, 2012) (lodestar award in settlement of ADA case)

[4] – *Californians for Disability Rights v. California Dep't of Transp.,* C 06-05125 SBA MEJ, 2010 WL 8746910 (N.D. Cal. Dec. 13, 2010) *report and recommendation adopted sub nom. Californians for Disability Rights, Inc. v. California Dep't of Transp.,* C 06-5125 SBA, 2011 WL 8180376 (N.D. Cal. Feb. 2, 2011) (lodestar award in settlement of ADA case)

[5] – *Rauda v. City of Los Angeles,* CV08-3128-CAS PJW, 2010 WL 5375958 (C.D. Cal. Dec. 20, 2010) (lodestar award in civil rights police misconduct case)

[6] – *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles,* CV 07-3072 AHM FMMX, 2009 WL 9100391 (C.D. Cal. June 24, 2009) ) (lodestar cross-check in protest excessive force civil rights class action)

[7] – *Craft v. Cnty. Of San Bernardino,* 624 F. Supp. 2d 1113, 1122-23 (C.D. Cal. 2008) (lodestar cross-check in jail civil rights class action)

[8] – *Pierce v. Cnty. Of Orange,* 905 F. Supp. 2d 1017, 1035-39, 1049  (C.D. Cal. 2012) (lodestar award in jail ADA class action)

[9] – *L.H. v. Schwarzenegger,* 645 F. Supp. 2d 888, 893-96 (E.D. Cal. 2009) (lodestar award in settlement of prison injunctive relief class action)

[10] – *Armstrong v. Brown,* 805 F. Supp. 2d 918, 920-21 (N.D. Cal. 2011)) (lodestar award in prison class action for monitoring work)

[11] – *A.D. v. State of California Highway Patrol,* C 07-5483 SI, 2013 WL 6199577 (N.D. Cal. Nov. 27, 2013) (civil rights lodestar award for police killing) [Arnold & Porter and Quinn Emmanuel rates were described in opinion as support for

awarded rates, and are contained in the commercial rates table with the attorney as
)"Unnamed"]

[12] – *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 455 (9th Cir. 2010),
*upholding award in Prison Legal News v. Schwarzenegger,* 561 F. Supp. 2d 1095,
1106 (N.D. Cal. 2008) (post –settlement lodestar award in prisoner First
Amendment injunctive relief case)

[13] – *Communities Actively Living Independent and Free v. City of Los Angeles,*
2:090cv-00287 CBM-RZ-Doc # 255 (C.D. Cal. 6/10/13) (lodestar award in
settlement of ADA injunctive relief class action) [ATTACHED AS EXHIBIT 13]

[14] – *Lauderdale v. City of Long Beach,* CV 08-979 ABC (JWJx) (C.D.Cal. 1/11/10)
(lodestar award after settlement of ADA injunctive relief class action against jail)
[ATTACHED AS EXHIBIT 14]

[15] – *Gamino v. County of Ventura,* CV 02-9785-CBM (Ex), Doc # 185 (C.D.Cal.
2/5/09) (lodestar cross-check in jail civil rights class action) [ATTACHED AS
EXHIBIT 15]

[16] – *P.C. v. City of Los Angeles,* 2:090cv-06495-PLA Doc # 77  (C.D. Cal. 9/4/12)
(lodestar award in civil rights suit against police for excessive force resulting in
death) [ATTACHED AS EXHIBIT 16]

[17] – *Avila v. LAPD*, No. CV 11-01326 sjo (FMOX) (C.D.Cal. 8/2/12) (lodestar
award for retaliatory termination for testifying for FLSA plaintiff) [ATTACHED
AS EXHIBIT 17]

[18] – *Vallabhapurapu v. Burger King Corp*., Case No. C11-00667 WHA (JSC)
(N.D.Cal. 10/26/2012) (lodestar award with multiplier of 1.29 in ADA
accessibility class action; opinion refers to rates used to calculate the lodestar of up
to $825; Lee Dec dated 8/27/2012 sets forth the rates used to calculate the lodestar,
including a rate of $825 for him) [ATTACHED AS EXHIBIT 18]

[19] – *Rutti v. Lojack Corp., Inc.*, SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D.
Cal. July 31, 2012) (FLSA lodestar crosscheck)

[20] – Fee award in *Comite De Jornaleros De Redondo Beach v. City of Redondo
Beach,* CV 04-9396 CBMJTLX, 2006 WL 4081215 (C.D. Cal. Dec. 12, 2006)
rev'd, 607 F.3d 1178 (9th Cir. 2010) on reh'g en banc, 657 F.3d 936 (9th Cir. 2011)
and aff'd, 657 F.3d 936 (9th Cir. 2011) (civil rights case successfully challenging
day laborer ordinance on First Amendment grounds)

[21] – Fee award in *Long Beach Area Peace Network v. City of Long Beach,* No. CV
04-08510 JSO (SSx) (C.D.Calif.) (Doc # 64) (civil rights case successfully
challenging parade ordinance on First Amendment grounds) (rates based on
personal knowledge from fee declaration filed by Mr. Litt in the case)
[ATTACHED AS EXHIBIT 21]

22 – 2/22/10 Fee Order in *Riverside County Dept. of Mental Health v. A.S.*, No. CV 08-00511 ABC  (C.D.Calif.) (IDEA fee award) (2009 used because it is clear from the timing of the order that 2009 rates were used)

23 – Fee order in *Dugan v. County of Los Angeles*, 2:11-cv-08145-CAS-SHx (C.D.Cal. 3/3/14) (4th Amendment, malicious prosecution § 1983 action; background as criminal defense lawyer; no evidence of prior experience litigating civil rights cases, but knowledge of 4th Amendment law and trial experience should be reflected in the rate) [**ATTACHED AS EXHIBIT 23**]

24 – Fee order in *Heyen v. Safeway Inc.*, B243610, 2014 WL 2154676 (Cal. Ct. App. May 23, 2014) upheld (individual wage and hour case after denial of class certification, with damages award of approximately $26,000; full hourly rate awarded to determine lodestar, then reduced due to limited success because received only 25% of overtime sought; fee award was in 2012, based on 2011 rates [since fee application was filed in 2011]).

25 – Lodestar fee award in *Echague v. Metro. Life Ins.* Co., No. 12-CV-00640-WHO, 2014 WL 4746115, at *2 (N.D. Cal. Sept. 24, 2014) – ERISA case.

26 – Fee award in *Contreras v. City of Los Angeles*, 2:11-CV-1480-SVW-SH, 2013 WL 1296763 (C.D. Cal. Mar. 28, 2013) – individual police case

27 – Fee order in *Dixon v. City of Oakland*, No. C-12-05207 DMR, 2014 WL 6951260, at *8 (N.D. Cal. Dec. 8, 2014) – individual police case (1.1 multiplier awarded under Civil Code § 52.1).

28 – Fee order in *Xue Lu v. United States*, No. CV 01-01758 CBM EX, 2014 WL 2468826, at *5 (C.D. Cal. May 23, 2014) – EAJA market rate award (available due to government's bad faith).

29 – Fee order in *Xu v. Yamanaka*, No. 13-CV-3240 YGR, 2014 WL 3840105 (N.D. Cal. Aug. 1, 2014); award was for successful Anti-SLAPP motion; defendants voluntarily reduced rate sought by 10%

30 – Fee order in *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG CWX, 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) objections overruled, No. CV 11-7667 PSG CWX, 2014 WL 4090512 (C.D. Cal. June 20, 2014) – consumer class action in which award was court determined lodestar, not percentage of fund.

31 – Fee order in *Morey v. Louis Vuitton N. Am., Inc., No. 11CV1517 WQH BLM*, 2014 WL 109194, at *10 (S.D. Cal. Jan. 9, 2014) – consumer class action in which award was court determined lodestar, not percentage of fund; 1.51 multiplier..

32 – Fee order in *Sanchez v. County of San Bernardino*, 10-09384 MMM (Opx) [3/1/14] – individual police case [**ATTACHED AS EXHIBIT 32**]

33 – Fee order in *Howard v. County of Riverside,* EDCV 12-00700 VAP (Opx) [8/27/14] – individual police case [**ATTACHED AS EXHIBIT 33**].

34 – Fee order in *Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012 (C.D. Cal. 2014)  [12/29/2014] – multi-plaintiff prisoners for guard brutality; award primarily

under California state law for Civil Code 52.1 claim, with part of award on exclusively federal claims under PLRA; multiplier of two for state fee award.

[35] – Fee Order in *Willits v. City of Los Angeles*, CV 10-5782 CBM (RZx) (8/25/16) – class action injunctive relief case under ADA, RA [**ATTACHED AS EXHIBIT 35**].

[36] – *Woods v. Fagan*, CV 14-8374-VAP (SPx) (C.D. Cal.) (9/21/16 Fee Order) [**ATTACHED AS EXHIBIT 36**].

[37] – *Garcia v. Los Angeles County Sheriff's Dept.*, No. CV 09-8943-DMG (SHx), 7/28/17 Order approving settlement and fees, Anna Rivera Dec. in support (dated 6/8/17) - special education in LA County Jail, (rates listed in Doc. 452 [**ATTACHED AS EXHIBIT 37**].

[38] – *Nozzi v. HACLA*, Case No. 2:07 cv 00380 PA (FFMx) (C.D. Cal.) (/15/18 Final Approval Order), Litt and Richardson Fee Declarations in support of motion for fees (12/22/17 Declarations of Barret S. Litt and Anne Richardson in support of Plaintiffs' Motion for Final Approval of Settlement in *Nozzi v. Housing Authority of the City of Los Angeles,* CV 07-380-PA-FFM (Dkt. #s 323 and 324); 2/15/18 Order re: Motion for Final Approval (Dkt. # 331) (Because the fee motion was filed in 2017, using 2017 rates, the year listed is 2017 although the order was in early 2018.

OF THE 39 CIVIL RIGHTS CASES, 29 ARE FROM THE CENTRAL DISTRICT, 8 FROM THE NORTHERN DISTRICT, 1 FROM THE EASTERN DISTRICT, 1 FROM THE SOUTHERN DISTRICT AND 1 FROM LOS ANGELES COUNTY SUPERIOR COURT. AT LEAST THE CENTRAL AND NORTHERN DISTRICT RATES ARE COMPARABLE, AND MANY FIRMS PRACTICE IN BOTH. (FOR THIS PURPOSE, ERISA AND ANTI-SLAPP ARE INCLUDED]

### CLASS ACTION LODESTAR CROSS CHECK SOURCES

[51] – *Wren v. RGIS Inventory Specialists,* C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) *supplemented,* C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011)

[52] – *Bolton v. U.S. Nursing Corp.*, C 12-4466 LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013)

[53] – *Johansson-Dohrmann v. Cbr Sys., Inc.,* 12-CV-1115-MMA BGS, 2013 WL 3864341 (S.D. Cal. July 24, 2013)

[54] – *Thieriot v. Celtic Ins. Co.,* C-10-04462-LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011)

55– *Browne v. Am. Honda Motor Co., Inc.,* CV 09-06750 MMM DTBX, 2010 WL 9499073 (C.D. Cal. Oct. 5, 2010)

56– *Parkinson v. Hyundai Motor Am.,* 796 F. Supp. 2d 1160, 1164-66,  1170-73 (C.D. Cal. 2010)

57– *Pelletz v. Weyerhaeuser Co.,* 592 F. Supp. 2d 1322, 1326-27 (W.D. Wash. 2009)

58– *Gonzalez v. S. Wine & Spirits of Am. Inc*., No. 2:11-CV-05849-ODW, 2014 WL 1630674, at *2 (C.D. Cal. Apr. 24, 2014))

58– *G. F. v. Contra Costa Cty.*, 2015 WL 7571789, at *13 (N.D. Cal. Nov. 25, 2015)

59– *Stone v Howard Johnson,* Case No. 12-CV-01684 PSG (MANx) (C.D. Cal.), Fee Declaration of Matthew A. Young in support of Class Fee Application, **ATTACHED AS EXHIBIT 59**

## COMMERCIAL LITIGATION SOURCES

81 – *Apple, Inc. v. Samsung Electronics Co., Ltd*., C 11-1846 LHK PSG, 2012 WL 5451411 (N.D. Cal. Nov. 7, 2012)). The rates listed reflect what Quinn Emmanuel indicated were its standard rates for the attorneys being billed; the court award was lower as follows: Marc Becker - $800; Diane Hutnyan - $700; Victoria Maroulis - $700; Todd Briggs - $700; Melissa Dalziel - $681. Because Mr. Becker is based in London he was marked  for whether he was designated as a SuperLawyer.

82– Skadden Arps bill Bill to MGA Entertainment Inc. in *Mattel v. MGA Entertainment*, Case No. 04 CV 09049-DOC (C.D.Cal.), filed 7/11/1, Doc 10684-50; rates accepted without objection and ordered in Doc. 10703 (8/4/11) [ATTACHED AS EXHIBIT 82]

83 – Declaration of Arturo Gonzalez in *Bullis Charter School v. Los Altos School District et al.* , Case No. 109 CV144569 (Santa Clara Sup. Ct., filed 10/19/13). Although *Bullis* is arguably a public interest case, we are presenting this as a reflection of Mr. Gonzalez's and Ms. Brickman's normal rates, which is what Mr. Gonzalez explains in his declaration. [ATTACHED AS EXHIBIT 83]

84 – The Lieff Cabraser rates were provided in a 3/21/2012 email from firm partner as their standard rates for 2012; Lieff Cabraser is a contingent fee firm specializing in class actions.

85 – Email from ACLU to Barry Litt of 7/26/11 with Paul Hastings rate information provided to ACLU by former Paul Hastings associate.

86 – 4/9/09 Gibson Dunn partner Wayne Barsky Declaration in *Rogel v. Development Agency of City of Lynwood*, Case No. BS106592 (reflecting Gibson Dunn standard rates) [ATTACHED AS EXHIBIT 86]

[87] – 11/27/08 Dec. of Quinn Emmanuel partner Danielle Gilmore in *Monrovia Nursing Co. v. Rosedale*, Case No. BC 351140  (LA Sup. Ct.) (reflecting Gibson Dunn standard rates) [ATTACHED AS EXHIBIT 87]

[88] – 10/16/09 Fee Order for Greenberg Taurig attorneys in *Santa Fe Pointe, L.P. v. Greystone Servicing Corp.*, C-07-5454 MMC, 2009 WL 3353449 (N.D. Cal. 10/16/09) (reflecting rates billed to client)

[89] – 11/21/08 Dec. of O'Irell & Manella partner Brian Hennigan in *Monrovia Nursery Co.  v. Rosedale*, No. BC351140 (Los Angeles Superior Court) (reflecting customary rates, which were billed to client in the case) (rates rounded down to the closest $5)[ATTACHED AS EXHIBIT 89]

[90] – 1/09/09 Bankruptcy Fee Application in *In re Three A's Holdings, L.L.C.*, No CV-04-07131- SVW (D. Del.) [bankruptcy fee application; only adversarial (litigation) rates relied on]

[91] – 11/17/10 Declaration of James Gillian in support of fee application in *La Asociacion De Trabajadores De Lake Forest v. City of Lake Forest*, CA 9 Case #09-55215 (Dkt. # 43-7) [ATTACHED AS EXHIBIT 91]

[92] – Selected rates compiled from 2009 Westlaw Court Express

[93] – Milbank Tweed rates being sought for DRLC co-counsel in *LAUSD v. Michael Garcia*, Case No. 10-55879 (9th Cir.); listed in email from DRLC counsel Anna Rivera on 2/24/14 [not yet in other tables as of 2/24]

[94] – Sidley Austin rates listed in Declaration of Amy Lalley for fee motion in Jones v. Upland Housing Authority, NO.: EDCV 12-2074 VAP (Opx) (Dkt. # 46 2/24/14) [**ATTACHED AS EXHIBIT 94**]

 [95] – Fee award in anti-SLAPP motion in *Xu v. Yamanaka*, 2014 WL 3840105 (N.D. Cal. Aug. 1, 2014)

[96] – *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 71, 171 Cal. Rptr. 3d 714, 750 (2014),  review denied (Aug. 20, 2014) [Trade secrets litigation; lodestar award]

54