**Exhibit A**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN MCKIBBEN, *et al.*,<br><br>       Plaintiffs,<br>vs.<br><br>JOHN MCMAHON, *et al.*,<br><br>       Defendants. | Case No.14-2171-JGB-SP<br><br>[Hon. Jesus G. Bernal]<br><br>**SETTLEMENT AGREEMENT** |

Plaintiffs[1] Pedro Guzman, Nick Ou, Sean Lint, Anthony Oliver, Timothy Walker, Ilich Vargas, William Kennedy, Jonathan Robertson, Steve Aka Lynn Price, Bryan Bagwell, Christopher Crawford, Frederick Crockan, Taheash White, Michael Aka Madison Hatfield, and Kevin Aka Veronica Pratt, (individually and on behalf of the classes to be certified in connection with this Settlement (collectively "Plaintiffs")) and Defendants County of San Bernardino, its Sheriff John McMahon, and San Bernardino Sheriff's Department personnel Greg Garland, Jeff Rose, James Mahan and Armando Castillo (collectively "Defendants"), by and through their respective counsel, hereby submit the following Settlement Agreement ("Settlement Agreement").

---

[1] Plaintiff Dan McKibben unfortunately passed away while this lawsuit was pending, and so is not listed as Class Representative Plaintiff, although we continue to use his name as the Case Name.

# I.    RECITALS

Plaintiffs are former or current (at the time of the filing of the complaint) inmates at the San Bernardino County Jail (hereafter "Jail"), operated by the San Bernardino County Sheriff's Department (hereafter "SBCSD"). The Jail maintained and maintains an "Alternative Lifestyle Tank" (hereafter "ALT") at the West Valley Detention Center (hereafter "WVDC"), which houses inmates who self-identify as gay, bisexual, and/or transgender (hereinafter "GBT inmates"). The WVDC is the only SBCSD jail facility that houses a separate unit for self-identified GBT inmates who were assigned male at birth.

Plaintiffs, and the classes they represent, contend that Defendants engage in systematic discrimination and denial of equal treatment against GBT inmates at the WVDC. Plaintiffs contend, inter alia, that GBT inmates 1) were automatically placed in the ALT if they self-identified as GBT; 2) would have been at risk for their safety if admitted to the general population as openly GBT inmates because SBCSD did not have any plans or programs to ensure their safety; 3) had no or inadequate PREA programs in place to protect GBT inmates or address particular vulnerabilities of GBT inmates placed in the general population; 4) were limited in their time-out-of-cell generally to an hour and a half per day, and often less, in contrast to similarly situated (by classification or sentencing status) general population inmates; 5) were denied the same work opportunities that were provided to similarly situated (by classification or sentencing status) general population inmates; 6) were denied the same programming opportunities[2] that were provided to similarly situated (by classification or sentencing status) general population inmates; and 7) a comparable range of religious services to those available to the

---

[2] Programming opportunities include classes in anger management, thinking for change, living skills, parenting skills, substance abuse, GED, high school diploma, literacy, automobile mechanics, bakery occupations, culinary/reading enrichment classes, computer skills, HVAC training, fire camp vocational training, employment readiness, substance abuse, "In-Roads", and re-entry services.

general population. Plaintiffs also contend that certain aspects of this disparate treatment continue to this day.

In the interest of avoiding expense, delay and inconvenience of further litigation of issues raised in this action, and without any admission of liability by Defendants, and in reliance upon the representations contained herein, and in consideration of the mutual promises, covenants and obligations in this Agreement, and for good and valuable consideration, Plaintiffs and Defendants, through their undersigned counsel, enter into this Settlement Agreement, subject to the approval of the Court.

In summary, this settlement provides for dismissal of this case with prejudice in exchange for 1) a variety of policy changes, 2) a damages settlement of $950,000, and, 3) an award of attorney's fees and costs of $1,100,000.

## II.    DEFINITIONS

The listed terms used throughout this Stipulation of Settlement and Dismissal are intended to have the following meanings:

1.  "Administrator" means the Class Administrator, as agreed upon (or to be agreed upon) by the Parties and appointed by the Court to review and determine the validity and amount of claims submitted by a Settlement Class Member ("SCM") (as defined herein), according to the procedures set forth herein. Plaintiffs' Counsel sent out for bids to qualified administrators and chose JND Legal Administration as the Class Administrator because they were most reasonably priced.

2.  The "Alternative Lifestyle Tank" (aka the "ALT") consists of two 16-cell housing sections in one of the jail units in the West Valley Detention Center jail facility operated by the San Bernardino County Sheriff's Department that is used to house gay, bisexual and transgender ("GBT") inmates.

3.  The "Bar Date" is the date by which any Damages Class Member who wishes to receive payment pursuant to the Settlement Agreement and therefore is a Settlement Class Member ("SCM") as defined below) must

file his/her Proof of Claim and Release Form, file objections to this
Settlement Agreement, or request to be excluded from the class (opt-out).
The Bar Date shall be calculated as the close of business on the 90th day
after the last day of mailing of the Class Notice which is up to two
consecutive business days from beginning to end, as is addressed in ¶ 33,
i.e., the Class Administrator must mail all notices within a two day period).

4. "Class Counsel" herein refers to Barrett S. Litt, David S. McLane and
Lindsay Battles of KAYE, McLANE, BEDNARSKI & LITT, and Melissa
Goodman, Amanda Goad, Brendan Hamme and Aditi Fruitwala of the
ACLU Foundation of Southern California.

5. "Class Counsel Attorneys' Fees" refers to the amount awarded by the Court
as their attorneys' fees in this case, which amount has been agreed to by the
parties as a separate award, to be approved by the Court.

6. "Class Counsel Litigation Costs" include, but are not limited to all
litigation costs, including the following: messenger and other delivery fees;
postage; photocopying; printing; scanning; document binding; parking;
regular or special postage expenses; travel expenses (including mileage,
airfare, lodging, meals, and ground transportation); consultants' fees;
mediation charges and fees; expert witness fees; regular witness fees;
deposition fees; transcript fees; investigation fees; on-line research costs;
long-distance telephone charges; facsimile transmissions and other costs or
expenses ordinarily charged by attorneys when representing clients, whether
or not the costs qualify to be reimbursed in a motion for attorneys' fees
and/or costs under either 42 U.S.C § 1988 or 28 U.S.C. § 1920. Certain
costs are to be paid from the agreed upon attorney's fee award and certain
costs are to come from the Damages Class Fund.

7. The "Class Damages Fund" refers to the amount of up to $950,000 as
damages compensation to the Class, to be paid by Defendants to the Class
Administrator, and out of which the costs of Class Administration,

4

Case 5:14-cv-02171-JGB-SP   Document 90-1   Filed 06/18/19   Page 6 of 27   Page ID #:1372

Plaintiffs' counsel expert/consulting and mediation fees, incentive awards and compensation to Damages Class members will be paid.

8. A "Class Member" means any member of the Injunctive Relief Class as defined above (which is broader than the Damages Class).

9. The "Class Notice" means the notice to the Class regarding settlement, to be sent to Class Members in a form substantially similar to that attached hereto as Exhibit B, or as otherwise approved by the Court, and such other summary notice to be published in accordance with the terms of this Settlement Agreement.

10. The "Damages Class" is composed of individuals who, between October 22, 2012 (two years prior to the filing of the original complaint, which is the statute of limitations period under 42 U.S.C. § 1983) and March 31, 2018 (the end of the month in which the settlement was reached in principle) were GBT inmates housed in the ALT of the San Bernardino County Jail facility known as West Valley Detention Center ("WVDC").

11. The "Damages Class Member List" shall consist of those persons identified as having been housed in the ALT during the Damages Class Period.

12. The "Damages Class Period" refers to October 22, 2012, through March 31, 2018.

13. The "Database" is the information provided in electronic form to the Administrator no later than five (5) days from the date the Court grants preliminary approval of the terms of this Settlement Agreement (if the data has not already been provided), which information has been compiled from the electronic records of the San Bernardino Sheriff's Department.

14. The "Defendants" are the County of San Bernardino, the San Bernardino Sheriff's Department, San Bernardino County Sheriff John McMahon, and San Bernardino County Sheriff's Department employees Greg Garland, Jeff Rose, James Mahan, and Armando Castillo.

15. The "Effective Date" means thirty days after the date upon which a judgment entered by the Court approving the Settlement Agreement becomes final. The Judgment will be deemed final only upon expiration of the time for a Damages Class member who files an objection to file a notice of appeal (30 days after entry of judgment) or, if a Notice of Appeal is filed by an objector, upon exhaustion of all appeals and petitions for writs of certiorari. If no Damages Class member files an objection, then the Judgment shall become final as of the entry of the Final Approval Order and Judgment.

16. The "Fairness Hearing" is the hearing on the fairness of this Settlement, which date will be set by the court.

17. The "Final Order of Approval and Settlement" is the Order finally approving the settlement, entered by the court (which may also be referred to herein as "Final Order").

18. The "Injunctive Relief Class" is composed of individuals who currently are, or in the future will be, GBT inmates housed in the San Bernardino County jails, including but not limited to those housed in the ALT.

19. The "Lawsuit" refers to the action styled *McKibben et al. v. County of San Bernardino et al.*, Case No. 14-2171-JGB-SP.

20. The "Motion for Attorneys' Fees and Costs" is Class Counsel's application for Attorneys' Fees and Costs.

21. The "Named Plaintiffs" or "Class Representatives" refers to the plaintiffs named in the Second Amended Complaint to this suit, who are: Pedro Guzman, Nick Ou, Sean Lint, Anthony Oliver, Timothy Walker, Ilich Vargas, William Kennedy, Jonathan Robertson, Steve Aka Lynn Price, Bryan Bagwell, Christopher Crawford, Frederick Crockan, Taheash White, Michael Aka Madison Hatfield, and Kevin Aka Veronica Pratt. (Although Dan McKibben was a Named Plaintiff, he is now deceased, and is therefore being treated purely as a class member and is not included as a Named

Plaintiff or Class Representative.)

22. "Preliminary Approval" is the Court's determination that the Settlement is within the range of possible approval and therefore that a notice should be sent to the Class and a hearing should be held with respect to fairness.

23. The "Preliminary Approval Order" is an order entered by the court preliminarily approving the settlement, after which Class Notice, the opportunity to object and opt out, and in a Final Approval hearing are to occur.

24. An "Opt-Out" is any Damages Class Member who files a timely request for exclusion, pursuant to the terms of this Settlement Agreement, to be excluded from the Settlement Class. (If used as a verb, it refers to the process of filing such exclusion.)

25. The "Proof of Claim Form" means the Proof of Claim and Release Form required to be used in order to make a claim for payment under this settlement. A copy of the proposed Proof of Claim Form is attached as Exhibit C. The pre-prepared Claim forms shall be bar coded to link with the Class member's database information and shall contain the damages to which the class member is entitled if s/he were to receive the full damages provided for in this agreement.

26. "Released Person" means the Defendants and their affiliates, subsidiaries, predecessors, successors, and/or assigns, together with past, present and future officials, employees, representatives, attorneys, and/or agents of San Bernardino County, including John McMahon, or any of them. "Released Persons" also includes any and all insurance carriers, and/or their representatives and attorneys, for the Released Persons.

27. The "Settlement" refers to this agreement.

28. A "Settlement Class Member" ("SCM") means any member of the Damages Class as defined above (whether or not s/he files a Timely Claim form), including representatives, successors and assigns, who does not file a

Case 5:14-cv-02171-JGB-SP   Document 90-1   Filed 04/18/19   Page 9 of 27   Page ID #:1375

valid and timely Request for Exclusion as provided for in this Settlement Agreement.

29. The "Settlement Fund" is the fund established by the Class Administrator with funds transferred from Defendants from which the damages to the Class Representatives and Damages Class members will be paid. The Defendants will pay all moneys they are obligated to pay under the Preliminary Approval Order, and the settlement approved by the Court, if any, into the Settlement Fund.

30. A "Timely Claim" is one filed a) within the 90-day window provided by the notice to be sent to the class, and b) to the extent the Court approves, late claims (i.e., claims filed after the Class Notice period) that are filed prior to the Final Approval Hearing.

## III.   DISCLAIMER OF LIABILITY

1. The Parties acknowledge and agree that all undertakings and agreements contained in this Settlement Agreement have been agreed to solely for the purpose of finally compromising all questions, disputes and issues between them relating to the litigation. This Settlement Agreement and any proceedings taken pursuant hereto shall not in any event be construed as, interpreted as, or deemed to be evidence of an admission or concession by either party for any purpose, or deemed to constitute a waiver of any legal position or any defenses or other rights which either of the Parties might otherwise assert in any context. Neither this Settlement Agreement nor any provision contained therein, nor any documents related hereto, nor any negotiations, statements or testimony taken in connection herewith may be offered or received as evidence, or used for any other purpose, or in any suit, action or legal proceeding which either of them have or in the future may have with any other person, as an admission or concession of liability or wrongdoing on the part of either party, except in connection with any action or legal proceeding to enforce this settlement agreement. The Parties have reached this settlement through arms-length negotiations and to avoid the costs and

delays of further disputes, litigation and negotiations among them and after extensive negotiations with an independent mediator, subject to approval by the Court. This Settlement Agreement has been entered into without any concession of liability or nonliability whatsoever and has no precedential or evidentiary value whatsoever.

## IV.   FINANCIAL TERMS OF SETTLEMENT AGREEMENT

2.    The "Class Fund" (defined previously) is the amount of $950,000. The Class Administration Costs (estimated at a maximum approximately $40,000 and likely less depending on certain factors) shall be paid out of that fund, as will the consultant/expert and mediation fees advanced by Plaintiffs' counsel and any incentive awards to the class representatives as approved by the Court. (Other litigation costs will be absorbed by counsel and included in the Attorney's Fees and Costs Award.) The remainder of the Class Fund shall be distributed to the class members (including Named Plaintiffs/Class Representatives) under the formula terms provided in this Agreement (hereafter referred to as the "Remainder").

3.    Plaintiffs' counsel will propose the following Incentive Awards to Named Plaintiffs, which vary according to counsel's assessment of the contribution made by each to the case:

| NAME | INCENTIVE AWARD |
| --- | --- |
| Bryan Bagwell | $5,000 |
| Christopher Crawford | $5,000 |
| Frederick Crockan | $5,000 |
| Pedro Guzman | $3,000 |
| Michael Aka Madison Hatfield | $5,000 |
| William Kennedy | $3,000 |
| Sean Lint | $2,000 |
| Anthony Oliver | $5,500 |
| Nick Ou | $3,000 |
| Kevin Aka Veronica Pratt | $5,500 |

| NAME | INCENTIVE AWARD |
|------|-----------------|
| Steven Aka Lynn Price | $3,000 |
| Jonathan Robertson | $3,000 |
| Illich Vargas | $5,500 |
| Tim Walker | $5,000 |
| Taheash White | $2,000 |
| **TOTAL** | **$60,500.00** |

4.    Plaintiffs estimate that the size of the Remainder is approximately $812,500, or slightly more. This is based on the foregoing cost for Inventive Awards, expert/consulting and mediation costs of approximately $37,000 and a Class Administration fee of a maximum approximately $40,000 and likely less, depending on a variety of factors. (The bid from the agreed to Class Administrator, JND Legal Administrator, along with its bid and related material, which are attached as Exhibit E.)

5.    The formula for distribution of the Remainder has been developed by Plaintiffs' Counsel and, if approved by the court, will be that summarized in the Class Notice to be sent to class members. The formula is designed to account for the fact that the alleged severity of challenged conditions varied: (1) over time (with the most allegedly discriminatory and restrictive conditions occurring before October 2014); and, (2) depending, in part, on inmates' sentencing status, security classification, and work eligibility (with sentenced, work-eligible inmates allegedly experiencing the most discriminatory conditions).

6.    To briefly summarize Plaintiffs' counsel's assessment of these variations in conditions, which are factored into the class damages allocation formula, are as follows:

a.    Inmates incarcerated before 10/14/2014 endured substantially less out-of-cell time than similarly situated inmates housed outside of the ALT. (Whereas non-ALT inmates received out-of-cell time based on their security classification level,

ALT-housed inmates were generally segregated even from each other, resulting in 23-hour lockdown on many days).

b. Inmates designated as low security risk were most adversely affected by SBCSD's policies because they would have received the most out-of-cell time had they been housed outside of the ALT; inmates designated as higher security risk would have received less out-of-cell time and were therefore less adversely impacted. Accordingly, for the pre-10/14/14 time period, security classification is relevant to determining conditions of confinement and damages.

c. Throughout the class period, program access varied depending on sentencing status and work eligibility. All ALT inmates, regardless of sentencing status, security classification or incarceration dates, were denied access to certain substance abuse rehab programs (AA/NA), "In-Roads" programs, religious services, and volunteer work programs available to similarly-situated, general population inmates housed outside of the ALT.

d. In addition, *sentenced* inmates (a minority of the class) were deprived of access to GED, high school diploma courses, and other educational programs available to similarly-situated, sentenced inmates housed outside of the ALT.

e. Depending on their security classification, disciplinary history, and other factors, some sentenced inmates would also have been eligible for both vocational training courses and job assignments, had they not been housed in the ALT. A small minority of ALT-housed, work-eligible inmates received inferior job assignments but were denied access to vocational training.

11

7.     Defendants have a different interpretation of the factual assessment made by Plaintiffs' counsel in paragraph 6, but Defendants agree that Plaintiffs' counsel's division of points based on temporal changes in the conditions of confinement is a reasonable means of distributing settlement proceeds to the class members.

8.     Based on these considerations, Plaintiffs' counsel divide conditions of confinement into nine categories. Each of the nine categories is assigned a point-value, which will translate to a per-diem dollar value at the time of distribution. The chart below shows the daily categories, conditions associated with each category, and points assigned to each condition. Class members receive the designated number of points for each day they were incarcerated in a given category (some inmates may have incarceration days in multiple categories depending on whether their security classification, sentencing status or work-eligibility changed; inmates may also have been incarcerated before and after 10/14/14). Each day of incarceration can qualify for only one category.

| # | Per Diem Category | Disparate Conditions of Confinement | Total Per Diem Points |
|---|---|---|---|
| **PRE-OCTOBER 1, 2014 (DISPARATE REDUCTION IN TIER TIME)** | | | |
| 1. | Sentenced, work-eligible inmates | • Excluded from jobs **and** vocational training available to similarly-situated, non-ALT inmates (30)<br>• Excluded from GED, high-school diploma and other educational programs available to similarly situated, *sentenced* inmates (15)<br>• Excluded from alcohol/drug rehab, religious services, and volunteer worker positions available to non-ALT, general population inmates (20)<br>• Drastic reduction in tier time due to mixing of classification levels, often resulting in 23-hour lockdown.[3] (35) | 100 |

---

[3]Plaintiffs' counsel have presumed that all work-eligible inmates were deemed a low security risk because only those inmates with security classification scores and minimal disciplinary history were entitled to work assignments. Accordingly, we group work-eligible inmates among those most affected by the reduction in tier time.

| # | Per Diem Category | Disparate Conditions of Confinement | Total Per Diem Points |
|---|---|---|---|
| 2. | **Sentenced inmates (not work-eligible)** | • Excluded from GED, high-school diploma and other educational programs available to similarly-situated, sentenced inmates.  (15)<br>• Excluded from alcohol/drug rehab, religious services, and volunteer worker positions available to non-ALT, general population inmates. (20)<br>• Substantial reduction in tier time due to mixing of classification levels, often resulting in 23-hour lockdown.[4] (25) | **60** |
| 3. | **Pre-sentenced inmates, lower security risk (GP 6, 7)** | • Excluded from alcohol/drug rehab, religious services, and volunteer worker positions available to non-ALT, general population inmates. (20)<br>• Drastic reduction in tier time due to mixing of classification levels, often resulting in 23-hour lockdown. (35) | **55** |
| 4. | **Pre-sentenced inmates; higher security risk (GP 3,4,5)** | • Excluded from alcohol/drug rehab, religious services, and volunteer worker positions available to non-ALT, general population inmates. (20)<br>• Substantial reduction in tier time due to mixing of classification levels, often resulting in 23-hour lockdown. (25) | **45** |
| 5. | **Pre-sentenced inmates; unknown security risk** | • Excluded from alcohol/drug rehab, religious services, and volunteer worker positions available to non-ALT, general population inmates. (20)<br>• Substantial reduction in tier time due to mixing of classification levels, often resulting in 23-hour lockdown.[5] (25) | **45** |
| | **POST-OCTOBER 1, 2014** | | |

---

[4] SBCSD data does not indicate the security classification for all sentenced inmates during this time period. Some inmates were deemed ineligible to work for reasons having nothing to do with security classification or disciplinary history (e.g. some were deemed ineligible to work due to medical conditions). However, because security classification was a common reason for inmates to be deemed ineligible to work, we assume many non-work-eligible sentenced inmates were higher security risk inmates and therefore assign fewer points for time-out-of-cell (inmates with a higher security risk were less adversely impacted because they would have received less time-out-of-cell than low risk inmates had they been housed outside of the ALT).

[5] Because there is no way to distinguish from the available data, Plaintiffs' counsel have conservatively treated these inmates the same as those with 3-5 classification levels although presumably there are 6 and 7 classifications among them who would be entitled to a greater value.

| # | Per Diem Category | Disparate Conditions of Confinement | Total Per Diem Points |
|---|---|---|---|
| 6. | Sentenced, work-eligible inmates, with **no** job assignment | • Excluded from jobs **and** vocational training available to similarly situated non-ALT inmates. (30) <br> • Excluded from GED, high-school diploma and other educational programs available to similarly situated, sentenced inmates. (15) <br> • Excluded from alcohol/drug rehab, religious services, and volunteer worker positions available to non-ALT inmates. (20) | **65** |
| 7. | Sentenced, work-eligible inmates, with (inferior) job assignment | • Excluded from vocational training available to similarly situated non-ALT inmates.[6] (15) <br> • Excluded from GED, high-school diploma and other educational programs available to similarly situated, sentenced inmates. (15) <br> • Excluded from alcohol/drug rehab, religious services, and volunteer worker positions available to non-ALT inmates. (20) | **50** |
| 8. | Sentenced inmates (not work-eligible) | • Excluded from GED, high-school diploma and other educational programs available to similarly situated, sentenced inmates. (15) <br> • Excluded from alcohol/drug rehab, religious services, and volunteer worker positions available to non-ALT inmates. (20) | **35** |
| 9. | Pre-sentenced inmates | • Excluded from alcohol/drug rehab, religious services, and volunteer worker positions available to non-ALT inmates. (20) | **20** |

9.      Each class member will receive a certain number of points for each incarceration day. That class member's point total is the sum of all their daily points. The total points for each class member will then be added together, from which the class member's percentage share of the recovery can be determined. Because it is anticipated that not all class members will make Timely Claims, and this is a non-reversionary fund, a claiming class member's percentage of the Remainder will be determined based on that class member's percentage of the total points for class members who made Timely Claims. (If, for example, there was a

---

[6] Work eligible inmates were limited to the law library position, which did not include a vocational training component similar to the job assignments provided to similarly situated non-ALT inmates.

total of 1,000,000 points for the aggregated timely claims, and Class member X had a total of 2000 points, and the Remainder was $810,000, Class member X would receive .2% (or .002) of $810,000 (which is $1,620)).

10.    Despite the foregoing, no class member who filed a Timely Claim will receive less than $40 or more than a total of $10,000. The purpose of the Maximum provision is to ensure that outliers who have outsized claims do not distort the meaningfulness of the recovery to the remaining class members. (Such outliers would be entitled to opt out and pursue their own claims if they so chose.)

11.    None of the $950,000 Damages Class Fund shall revert to the County. Accordingly, as explained above, the money per class member making a Timely Claim will increase proportionately to the extent that fewer class members make a claim.

12.    The "Attorneys' Fees and Costs" is the amount of $1,100,000 as compensation for statutory fees and certain costs pursuant to 42 U.S.C. § 1988. (The costs included in this award shall include all costs incurred except for mediation costs, consultant/expert costs and Class Administration costs.) This fee shall be the subject of a separate Motion for Attorneys' Fees to be heard at the Final Approval Hearing, to be analyzed under the standards for an award of fees and costs to a prevailing plaintiff under 42 U.S.C. § 1988 and Civil Code § 52.1(h). The Class Notice will advise class members of this motion and their right to object to it.

13.    The parties agree that these fees were independently negotiated with the assistance of a professional mediator and that, in order to effectuate this settlement, the fees were substantially discounted below the amounts that Plaintiffs would have sought in an attorney's fee motion filed by Plaintiffs as the prevailing parties.

14.    The County represents that it has provided all the electronic data in its possession regarding class members necessary to both identify and contact class members. Within ten (10) days of the Court's grant of the Preliminary Approval of this settlement, the County shall provide, to the extent that such information has not

15

already been provided, any such additional information in its possession. Such information shall be confidential, and may not be disclosed to anyone except counsel of record, the Class Administrator, and designated representatives of the Parties.

## V.    INJUNCTION

15.    The Final Approval Order shall include an order granting Plaintiffs an injunction for a three-year period, after final approval by the Court of the settlement and the settlement is implemented by the County, the terms of which are set forth in Exhibit D. The injunctive relief provisions include the development of policies not yet drafted. To the extent the parties cannot agree on a policy or policies to implement the provisions of Exhibit D, the matter shall be resolved by the court.

16.    Defendants estimate that the various added resources associated with the injunctive relief changes amount to an annual expenditure of approximately $500,000 in current dollars.

17.     In the event of a change in relevant law during the three-year period that this injunction remains in effect, the County will be required to comply with any and all provisions that are more protective of class members' rights than the terms of Exhibit D.  A change in relevant law shall be defined as an amendment to the U.S. or California Constitutions, a change in federal or California statutory law, a change in applicable regulations (e.g., PREA regulations) or a binding decision of the U.S. Supreme Court, Ninth Circuit Court of Appeals, California Supreme Court, or California Court of Appeal.

18.    To the extent that Plaintiffs contend that a change in relevant law implicates the protections of paragraph 17, Plaintiffs' counsel shall notify Defendants' counsel in writing of the change in relevant law.  If the parties are unable to reach an agreement on whether there has been a change in relevant law within 30 days of the initial notification by Plaintiffs' counsel, the dispute shall be submitted for judicial review by the Court.

## VI.  OTHER SETTLEMENT TERMS

19.     The Parties enter into this agreement solely for the purposes of this settlement and implementation of the settlement. If the settlement fails to be approved or otherwise fails consummation, then this Settlement Agreement is hereby withdrawn and Defendants reserve the right to seek decertification of the class.  Any such motion for decertification would be evaluated under a de novo standard with Plaintiffs bearing the burden of establishing the requisite elements for class certification. Since Plaintiffs would bear the burden in such a motion, the parties agree that, upon notice to the Court and Plaintiffs that Defendants seek decertification of the class, the Plaintiffs would timely file a regularly noticed new motion for class certification.

20.     An SCM who complies with the requirements set forth in this Settlement Agreement and files a Timely Claim form will be paid specified sums determined by the settlement distribution process set forth above, which payment shall be in full satisfaction of all claims of that SCM.

21.     The Settlement Agreement, as of the Effective Date, resolves in full all claims against the Released Persons by all of the SCMs, including the Named Plaintiffs, involving violations of law or constitutional rights, including, without limitation, their equal protection rights under federal and California law, their rights under California Civil Code § 52.1, any other rights under any other federal, state or local law, regulation, duty, or obligation, or any other legal theory, action or cause of action, which arise from the class-wide factual allegations alleged in the complaint , as well as any claim regarding the bus transportation of transgender inmates (hereafter "Covered Claims").

22.     When the Settlement Agreement is final, as of the Effective Date, all SCMs, including the Named Plaintiffs, waive all rights to any and all claims relating to damages or reimbursement of any kind for the Covered Claims. This waiver and release shall include a full release and waiver of unknown rights regarding the Covered Claims that may exist as of the Effective Date.

23.     As of the Effective Date, the SCMs, including the Named Plaintiffs, hereby waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency or other tribunal, or to file any complaint regarding acts or omissions by the Released Persons with respect to the Covered Claims during the Class Period that fit within the definition of the Damages Class; and further, as it relates to this waiver or Release, expressly waive the provisions of California Civil Code § 1542, which provides that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

24.     This Settlement Agreement, together with its exhibits, contains all the terms and conditions agreed upon by the Parties regarding the subject matter of the instant proceeding, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Settlement Agreement shall be deemed to exist, or to bind the Parties, or to vary the terms and conditions contained herein, except as expressly provided herein.

25.     Each SCM shall be deemed to have submitted to the jurisdiction of the Court.

26.     This Settlement Agreement is subject to and conditioned on a Final Approval Hearing conducted by the Court and the final approval of this Settlement Agreement and the issuance of the final order and judgment of dismissal by the Court, providing the specified relief as set forth below, which relief shall be pursuant to the terms and conditions of this Settlement Agreement and the Parties' performance of their continuing rights and obligations hereunder. The Order and Judgment shall be deemed final on the Effective Date as defined previously. Such Final Order and Judgment shall:

   a. Dismiss with prejudice all claims in the action as to the Released Persons including all claims for monetary damages, declaratory relief and injunctive relief, except as to the terms of the injunction to be entered,

which terms are set forth *infra*, each side to bear its own costs and fees except as otherwise provided for in this Settlement Agreement;

b. Order that all SCMs are enjoined from asserting against any Released Person any and all claims that any SCM had, has or may have in the future arising out of the facts alleged in the Complaint;

c. Release each Released Person from the claims that any SCM has, had or may have in the future against such Released Person arising out of the facts alleged in the Complaint;

d. Determine that this Settlement Agreement is entered into in good faith, is reasonable, fair and adequate, and in the best interest of the Class; and

e. Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Settlement Agreement, including Defendants and SCMs, to administer, supervise, construe and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of all Parties, and to enforce the terms of the injunction described *infra*.

The Parties will take all necessary and appropriate steps to obtain preliminary and final approvals of the Settlement Agreement, and dismissal of the action with prejudice, all parties bearing their own fees and costs unless otherwise set forth in this Settlement Agreement. If the Court gives final approval of this Settlement Agreement, and if there is an appeal from such decision, the Parties will defend the Settlement Agreement.

## VII.   RESOLUTION AND PAYMENT OF CLAIMS

27.     Released Parties shall not prefund the Settlement Fund. Instead, funds will be deposited by the Released Parties to the Class Administrator as necessary to pay the class administration costs, and the SCMs (including the Named Plaintiff) claims. (Attorney's fees and costs are addressed separately.)

28.     Defendants agree to the division of funds between Incentive Awards and the Remainder as proposed by Plaintiffs' Counsel subject to the approval of the Court.

29.     The County of San Bernardino will make a single wire transfer to the Class Administrator of the Damages Class Fund, less the amount of that Fund previously advanced under the terms of this Agreement. This transfer shall be made within ten (10) days of the Effective Date of the Settlement.

## VIII.  PAYMENT OF CLASS COUNSEL FEES

30.     In addition to and separate from any other payments called for in this Agreement, the County of San Bernardino shall pay a one-time-only lump sum payment of the Class Counsel attorneys' fees plus litigation costs (exclusive of expert/consultant and mediation fees, which are paid from the $950,000 Damages Class Fund)  in the amount of $1,100,000, payable by wire transfer to the KMBL Client Trust Account within ten (10) days after the Effective Date of the Settlement. This payment represents a full and final settlement of all past, present and future attorneys' fees and all past, present and future ordinary and extraordinary costs. Class counsel will file a Motion for Attorney's Fees and Costs, and the payment of said fees and costs is subject to court approval. Defendants agree that Plaintiffs satisfy the prevailing party element for such a motion.

## IX.    CLASS ADMINISTRATION COSTS

31.     Requests for bids were sent to established Class Administrators (KCC, CPT Group, and JND Legal Administration), and were to be chosen by Class Counsel based upon assessing the most reasonable bid, taking into account the combination of the price and scope of the services provided, and the capabilities and reputation of the Administrator.  (That has now occurred, and Plaintiffs' counsel has chosen JND based on the conclusion that it was the most reasonably priced.)

32.     The Administrator shall be responsible for providing Class Notice. This duty shall comprise mailing Class Notice and a Claim Form by regular mail to all Class Members' last known address. The Administrator shall also use normal and customary means to search for a Damages Class Member's last known address, including the use of a postal database, when mail is returned, or do whatever else is

reasonably appropriate in order to reasonably notify Class Members (including making reasonable efforts to determine class members who are now incarcerated in California state prisons). Class Counsel may also take whatever steps they deem appropriate to notify the Class Members of their rights to file claims and to assist them in doing so. The Summary Notice will also be posted by the Defendants in the ALT throughout the Class Notice period, including a statement that the full notice will be provided to the inmate upon request.

33.    The Class Administrator will include in its bid a line item for the cost of obtaining from California Department of Corrections and Rehabilitation the identities of class members in CDCR custody to whom notices should be sent at their CDCR housing location.

34.    The Class Notice shall describe the particulars of the case, provide the class definition, provide information for claimants to contact the Administrator for a claim form, notify Damages Class Members of establishment of a case website, and contain other usual and customary information. The proposed Class Notice is attached to this Settlement Agreement as Exhibit B.

35.    The Administrator shall complete the mailing of Class Notice within two consecutive business days. The second day of such mailing is the first day of the period for calculating the "Bar Date" (defined previously). That mailing shall occur as soon as practicable after the settlement has been preliminarily approved no later than the date set by the Court.

36.    In lieu of publishing a summary Class Notice in local newspapers as a form of reaching class members who do not receive the mailing, which experience has shown does not effectively reach class members, the Administrator shall gather email addresses to the extent reasonably possible and cost effective. Given the relatively small size of the class (655 people), the Class Administrator shall propose other cost-effective means of outreach.

X.    **CLASS ADMINISTRATION FOR PROOF OF CLAIM FORMS**

37.    The Administrator shall be responsible for providing and receiving

Proof of Claim Forms. The Administrator shall determine class membership and the amount of Damages due each timely claiming class member based on the formula contained in Section IV.

38.    A Proof of Claim Form shall be deemed timely submitted under subsection (a) of Definition # 30 (Timely Claim) when received by the Administrator, or postmarked, on or before the Bar Date. Facsimile or electronic mail filings are acceptable and timely so long as they clearly indicate the case on which the claim is filed and are received on or before the Bar Date.

39.    If a Damages Class Member submits a Claim form that is deficient in some respect, the Administrator shall provide written notice by First Class Mail and a 30-day time limit to provide a proper claim form, which notice shall inform the Class Member of what s/he must do in order to submit a proper claim. Failure to cure the deficiency within the 30-day time limit will bar any further rights for consideration of eligibility. So long as the original claim is received on or before the Bar Date, it shall be considered timely under sub-section (a) of Definition # 30 (Timely Claim) if any deficiency is cured within 30 days of the mailing of a notice of deficiency.

40.    Claim Forms received after the Bar Date shall be processed by the Administrator and paid as ultimately ordered by the Court. The Administrator will notify claimants of the rejection of untimely Claims.

41.    The Administrator shall make payments to SCMs who have filed Timely Claims as ultimately determined by the Court in accordance with this Settlement Agreement within a reasonable time not to exceed 90 days after the Effective Date.

42.    If a check to an SCM is not cashed within three months of its mailing, the Administrator shall hold the funds for nine additional months, during which time it shall make reasonable efforts to contact the person to whom the uncashed check was written to make arrangements for its cashing or reissuance. The Administrator shall not make payment to any SCM until all claims have been

submitted to the Administrator pursuant to the terms of this Settlement Agreement. Any such funds not cashed within one year of the check's initial mailing shall be distributed pro rata to SCMs whose checks were cashed. If there are remaining funds after that second round of distribution, they shall be given as a *cy pres* donation to Inland Region Equality Network.

## XI.  EXCLUSION FROM SETTLEMENT CLASS—OPT OUTS

43.  Any Damages Class Member who wishes to be excluded from the Settlement Class must submit a request to be excluded from the class, a process defined herein as "Opt-Out." The request for exclusion must be delivered to the Administrator, or postmarked, on or before the Bar Date or as the Court may otherwise direct.

44.  Each member of the Settlement Class who chooses to Opt-Out from or object to this settlement shall be deemed to have submitted to the jurisdiction of the Court with respect to his/her claim and to any dispute resolution process conducted by a Special Master as set forth in this Settlement Agreement.

45.  Any Class Member who does not Opt-Out as set forth in this Settlement Agreement, shall be deemed conclusively to have become an SCM and to be bound by the Settlement Agreement and all subsequent proceedings, orders and judgments herein, regardless of whether s/he files a claim form.

46.  Any Class Member who exercises an Opt-Out shall not share in any monetary benefits provided by this Settlement Agreement.

47.  The Administrator will periodically report to Defendants' counsel and Class Counsel all Opt-Outs received, and will determine and report to counsel the total number of Opt-Outs no later than 10 days after the Bar Date.

48.  In the event that the number of Opt Outs exceeds ten (10) but is less than twenty-five (25), i.e., where the number of Opt Outs is between 11-24, the parties agree that, Defendants will receive a credit against the Class Damages Fund based on the amount that each Opt Out was due under the initial class distribution formula (explained in ¶ 8) when applied to the Damages Class and as calculated by

Plaintiffs' counsel, i.e., the amount due that class member if all class members filed claims. (To the extent that the final distribution formula results in different allocations because not all class members filed claims, the credit would be based on the initial distribution formula, not the formula adjusted to the claims made.) This credit is only available if the number of Opt Outs exceeds ten.

49. If the number of Opt Outs amounts to 25 or more or if any Named Plaintiff opts out, Defendants shall have the option of using the same credit formula as set out in the previous paragraph where the number of Opt Outs is between 11-24, or of rescinding the Agreement.

50. If Defendants decide to exercise their this right of rescission as provided in the previous paragraph, Defendants shall provide the Administrator and Class Counsel with written notice of rescission within 20 days after receipt of the Administrator's report providing the total number of Opt-Outs. In the event Defendants exercise the right of rescission, any funds paid or deposited pursuant to this Settlement Agreement shall be returned to Defendants within 10 days of the rescission, less any expenses, fees and costs incurred by the Administrator. Rescission shall return the Case to active litigation status.

## XII. APPROVALS REQUIRED

51. The San Bernardino County Board of Supervisors and the surviving Named Plaintiffs have all approved this settlement.

## XIII. DISPUTE RESOLUTION

52. In the event of any disputes regarding implementation of the Settlement Agreement as set forth herein, they shall be resolved by the Court.

## XIV. INTEGRATION

53. This Settlement Agreement supersedes all prior communications regarding the matters contained herein between the Parties or their representatives. This Settlement Agreement is an integrated agreement and contains the entire agreement regarding the matters herein between the Parties, and no representations, warranties or promises have been made or relied on by any party hereto other than

as set forth herein. This Settlement Agreement was drafted by counsel for the parties hereto, and there shall be no presumption or construction against any party.

## XV.   FAIRNESS HEARING AND FINAL ORDER OF APPROVAL

54.    Before this settlement agreement becomes final and binding on the Parties, the Court shall hold a Fairness Hearing to determine whether to enter the Final Order of Approval. A proposed Final Order of Approval shall be submitted to the Court incorporating the terms of this Settlement Agreement and addressing related information such as Objections and Opt-Outs.

## XVI.  NO THIRD PARTY BENEFICIARIES INTENDED

55.    This Settlement Agreement does not and is not intended to create any rights with respect to any third parties, except as otherwise provided herein.

## XVII. COUNTERPARTS

56.    This Settlement Agreement may be signed in counterparts.


DATED: August 13, 2018                     KAYE, MCLANE, BEDNARSKI & LITT
                                           ACLU FOUNDATION OF SOUTHERN CALIFORNIA

                                           By: _/s/ Barrett S. Litt_____
                                               Barrett S. Litt
                                               Attorneys for Plaintiffs


DATED: August 13, 2018                     BURKE, WILLIAMS & SORENSEN

                                           By: _/s/ Nathan A. Oyster_____
                                               Nathan A. Oyster
                                               Attorneys for Defendants

LIST OF EXHIBITS TO SETTLEMENT AGREEMENT

| | |
|---|---|
| Exhibit B | Class Notice |
| Exhibit C | Proof of Claim and Release Form |
| Exhibit D | Injunctive Relief Agreement |
| Exhibit E | JND Class Administration Bid |